1  Jack Shaw (Bar No. 309382)
   E-mail: jack.shaw@procopio.com
2  PROCOPIO, CORY, HARGREAVES
        & SAVITCH LLP
3  3000 El Camino Real
   Five Palo Alto Square, Suite 400
4  Palo Alto, CA 94306
   Telephone: 650.645.9000
5  Facsimile: 619.235.0398

6  J. Benjamin Bai (*pro hac vice forthcoming*)
   benjamin.bai@cn.kwm.com
7  King & Wood Mallesons LLP
   50th Floor, 500 Fifth Avenue
8  New York, NY 10110
   Tel.: (212) 319-4755
9  Fax: (917) 591-8167

   Haolu Feng (*pro hac vice forthcoming*)
   harry.feng@cn.kwm.com
   King & Wood Mallesons
   17th Floor, One ICC, Shanghai ICC
   999 Middle Huai Hai Road, Xuhui District
   Shanghai 200031 China
   Tel.: +86 21 2352 6585
   Fax: +86 21 2412 6150

10 *Attorneys for Defendants*
   *YUNJING INTELLIGENT INNOVATION*
11 *(SHENZHEN) CO., LTD., et al.*

12                **UNITED STATES DISTRICT COURT**

13          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14 CADENCE DESIGN SYSTEMS, INC.,          Case No. 5:25-cv-00317-AMO

15              Plaintiff,                 **DEFENDANTS' NOTICE OF MOTION**
                                           **AND MOTION TO DISMISS**
16 v.                                      **COMPLAINT; MEMORANDUM OF**
                                           **POINTS AND AUTHORITIES**
17 YUNJING INTELLIGENT INNOVATION
   (SHENZHEN) CO., LTD. (D/B/A NARWAL),
18 YUNJING INTELLIGENCE ROBOTICS           Judge: Hon. Araceli Martínez-Olguín
   (DONGGUAN) CO., LTD. (D/B/A NARWAL),    Date: Thursday, August 28, 2025
19 YUNJING INTELLIGENCE TECHNOLOGY         Time: 2:00 PM
   DEVELOPMENT (DONGGUAN) CO., LTD.        Courtroom: 10 (19th Floor)
20 (D/B/A NARWAL), JINGZHI INTELLIGENCE
   SUPPLY CHAIN (SHENZHEN) CO., LTD.
21 (D/B/A NARWAL), YUNJING
   INTELLIGENCE (SHENZHEN) CO., LTD.
22 (D/B/A NARWAL),

23              Defendants.

24

25

26

27

28

                                    1

**TO PLAINTIFF AND PLAINTIFF'S ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 28, 2025 at 2:00 PM, or as soon thereafter as the matter may be heard, before the Honorable Araceli Martínez-Olguín, United States District Judge, in the United States District Court for the Northern District of California, Yunjing Intelligent Innovation (Shenzhen) Co., Ltd., Yunjing Intelligence Robotics (Dongguan) Co., Ltd., Yunjing Intelligence Technology Development (Dongguan) Co., Ltd., Jingzhi Intelligence Supply Chain (Shenzhen) Co., Ltd., and Yunjing Intelligence (Shenzhen) Co., Ltd. (collectively, "Defendants" or "Yunjing") will and hereby do move to dismiss Plaintiff's Complaint (Dkt. 1) with prejudice for lack of personal jurisdiction, improper venue, and failure to state a claim, based on the indisputable fact that all the alleged activities occurred in China.

First, Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(2) for dismissal based on lack of personal jurisdiction because none of Defendants have meaningful contacts with the forum and Plaintiff's various theories of personal jurisdiction fail.

Second, Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(3) for dismissal based on improper venue because this Court lacks personal jurisdiction over Defendants.

Third, Defendants, without waiving challenges to personal jurisdiction, move pursuant to Federal Rule of Civil Procedure 12(b)(6) for dismissal for failure to state a claim because Plaintiff failed to plausibly allege DMCA violations within the United States and failed to plausibly identify a valid contract between Plaintiff and any of Defendants.

This motion is based upon the accompanying Memorandum of Points and Authorities, any subsequent briefing, the record in this action, all matters in which the Court may take notice, and any arguments presented at the time of hearing.

DATED: April 21, 2025                    PROCOPIO, CORY, HARGREAVES &
                                         SAVITCH LLP


                                  By:    _/s/ Jack Shaw_____
                                         Jack Shaw

                                         *Attorney for Defendants Yunjing Intelligent*
                                         *Innovation (Shenzhen) Co., Ltd., Yunjing*
                                         *Intelligence Robotics (Dongguan) Co., Ltd.,*
                                         *Yunjing Intelligence Technology*
                                         *Development (Dongguan) Co., Ltd., Jingzhi*
                                         *Intelligence Supply Chain (Shenzhen) Co.,*
                                         *Ltd., and Yunjing Intelligence (Shenzhen)*
                                         *Co., Ltd.*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................. 2

III.    RELEVANT LAW .............................................................................................. 3

        A.      Legal Standard on Motion to Dismiss ................................................... 3

        B.      Legal Standard for Establishing Personal Jurisdiction ......................... 3

        C.      Legal Standard for the *Forum Non Conveniens Doctrine* ..................... 5

        D.      Authorities on No Extraterritoriality of DMCA ................................... 6

        E.      Authorities on Mutual Assent to Contract ............................................ 6

IV.     ARGUMENT ...................................................................................................... 7

        A.      Cadence Failed to Sufficiently Plead Facts to Establish Personal Jurisdiction over
                Defendants ............................................................................................. 7

                1.      Cadence Failed to Adequately Plead Binding Forum Selection Clause ............ 8

                2.      Cadence Failed to Adequately Plead "Purposeful Direction" to This Forum .... 8

                3.      Cadence Failed to Adequately Plead Specific Jurisdiction Even if it
                        Sufficiently Plead "Purposeful Direction" ........................................ 10

        B.      Cadence Failed to Plead Facts to Establish Proper Venue ...................... 11

        C.      Cadence Failed to State Any Plausible Claims ...................................... 12

                1.      Cadence Failed to Adequately Plead DMCA Violations in the United States . 13

                2.      Cadence Failed to Adequately Plead Breach of Contract ................... 18

V.      CONCLUSION ................................................................................................. 25

1

## **TABLE OF AUTHORITIES**

2

3
## **CASE**

4
*Abramson v. Jupiter Networks,* Inc., 115 Cal.App. 4th 638, 664 (2004) ........................................ 23

5
*Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 960 (N.D. Cal. 2015) .................... 8

6
*Alamilla v. Hain Celestial Group, Inc.*, 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014) ................. 18, 19

7
*Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 387 (9th Cir. 1995) ............ 6

8
*Armendariz v. Foundation Health Psychcare Servs., Inc.,* 24 Cal.4th 83, 114 (2000) ................... 23

9
*Asahi Metal Indus. Co. Ltd. v. Super. Ct. of Cal., Solano Cty*., 480 U.S. 102, 114 (1987)............... 4

10
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................... 3, 13

11
*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011) ............................................ 23

12
*Avaya Inc. v. Pearce*, No. 19-CV-00565-SI, 2019 WL 6311383, at *6–7 (N.D. Cal. Nov. 25, 2019) ................................................................................................................... 8

13

14
*Axiom Foods, Inc. v. Acerchem International, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017)............... 8

15
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)................................................... 3, 12

16
*Berlanga v. Univ. of San Francisco*, 100 Cal. App. 5th 75, 82, *reh'g denied* (Cal. Ct. App. 2024).. 7

17
*Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017) .................................... 4

18
*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) ............................................... 4

19
*Bushell v. JPMorgan Chase Bank, N.A.*, 220 Cal. App. 4th 915, 921 (Cal. Ct. App. 2013) ............ 7

20
*Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 209 (2006) ........................................... 22

21
*California Lettuce Growers v. Union Sugar Co.*, 45 Cal. 2d 474, 481 (1955) .............................. 22

22
*Cardenas v. AmeriCredit Fin. Servs. Inc.*, No. C 09-04978 SBA, 2010 WL 3619851, at *4 (N.D. Cal. Sept. 13, 2010).................................................................................................... 24

23

24
*Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir. 1983)................................................. 5

25
*Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.,* 918 F.2d 1446, 1449 (9th Cir.1990)............ 5

26
*Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 701 (9th Cir. 1995)............................ 5

27

28

ii

*Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014)................................................................ 4

*Danjaq, S.A. v. MGM/UA Comms., Co.*, 773 F. Supp. 194, 202-03 (C.D. Cal. 1991)................... 17

*Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)........................ 4

*Davaloo v. State Farm Ins. Co.*, 135 Cal.App.4th 409, 418 (2005).................................. 22

*Dole Foods Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)................................ 8

*Fredianelli v. Jenkins*, 931 F. Supp.2d 1001, 1017-19 (N.D. Cal. 2013)........................... 21

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ................. 10

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).................................................... 5

Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 458 (9th Cir. 2007) .......... 8

*Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) ............................................. 4

*Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013) ......................................... 13

*Little v. Auto Stiegler, Inc.,* 29 Cal.4th 1064, 1071-72 (2003) ..................................... 23

*M Seven Sys. Ltd. v. Leap Wireless Int'l, Inc.*, No. 12-CV-1424-CAB (RBB), 2014 WL 12026065 (S.D. Cal. June 4, 2014) ...................................................................................... 6

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1050, *as modified* (Cal. Ct. App. 2001)................................................................. 7

*Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010)......................................... 13

*Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1321-22 (S.D. Fla. 2010).... 21

*New Name, Inc. v. Walt Disney Co.*, 2007 WL 5061697, at *2-4 (C.D. Cal. Dec. 3, 2007)............ 18

*Nexon Am., Inc. v. S.H.*, No. CV 10-9689 PA (JCX), 2011 WL 13217951, at *8 (C.D. Cal. Dec. 13, 2011).............................................................................................................. 21

*Nissan Motor Co. v. Nissan Computer Corp.*, 246 F.3d 675, 675 (9th Cir. 2000)......................... 8

*Pacific Bay Recovery, Inc. v. California Physicians' Services, Inc.*, 12 Cal. App. 5th 200, 215 (Cal. Ct. App. 2017) ................................................................................................. 7

*Pardee Constr. Co. v. Superior Ct.*, 100 Cal. App. 4th 1081, 1088 (2002) ...................... 23

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981) .............................................. 5

*Poponin v. Virtual Pro, Inc.*, No. C 06-4019 PJH, 2006 WL 2691418, at *9 (N.D. Cal. Sept. 20, 2006).............................................................................................................. 24

iii

*RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 325–26 (2016) ............................................... 13

*Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004) ........................ 4, 8

*Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986)......................................................... 4

*Shroyer v. New Cingular Wireless Servs., Inc.,* 498 F.3d 976, 981–82 (9th Cir.2007) ................. 23

*Snukal v. Flightways Mfg. Inc.*, 23 Cal. 4th 754, 779 (2000)............................................... 21

*Sound N Light Animatronics Co., LTD. v. Cloud b, Inc.*, 2016 WL 7635950, at *5 (C.D. Cal. Nov. 10, 2016)...................................................................................................... 17

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) .................................................................................. 18

*Subafilms, Ltd. v. MGM–Pathe Comm.,* 24 F.3d 1088, 1097 (9th Cir.1994)............................ 11

*Subafilms, Ltd. v. MGM–Pathe Communications Co.,* 24 F.3d 1088, 1095–98 (9th Cir.1994) ...... 13

*Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, No. 23-55001, 2024 WL 3616945, at *2 (9th Cir. Aug. 1, 2024) ................................................................................... 6

*Synopsys, Inc. v. AzurEngine Techs., Inc.*, 401 F. Supp. 3d 1068, 1073 (S.D. Cal. 2019) ............. 13

*Synopsys, Inc. v. InnoGrit, Corp.*, 2019 WL 2617091, at *3 (N.D. Cal. 2019) ............................ 15

*Title Guarantee & Trust Co. v. Hammond Lumber Co.*, 62 Cal. App. 245, 254-55 (1923) ............ 21

*Valjakka v. Netflix Inc.*, No. 22-cv-01490-JST, 2022 WL 19975412, at *1 (N.D. Cal. Oct. 11, 2022) ............................................................................................................. 3

*Vander Music v. Azteca Int'l Corp.*, 2011 WL 13177301, at *3-4 (C.D. Cal. Jan. 21, 2011) ......... 17

*Walden v. Fiore*, 571 U.S. 277, 289 (2014) ..................................................................... 9

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012) ................... 9

*WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407, 413 (2018)..................................... 13

*Williams v. Yamaha Motor Co. Ltd*., 851 F.3d 1015, 1023 (9th Cir. 2017)............................... 7, 10

*Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 835 (9th Cir. 1996).......................................... 6

*Zipfel v. Halliburton Co.*, 832 F.2d 1477, 1485 (9th Cir. 1987) ........................................... 5

## STATUTES

17 U.S.C. § 1201 ....................................................................................................... 2, 6

17 U.S.C. § 1201(a) ................................................................................................. 14, 15

iv

1

17 U.S.C. § 1201(a)(1) ......................................................................................... 13

2

17 U.S.C. § 1201(a)(3) ......................................................................................... 15

3

17 U.S.C. § 1201(a)(3)(A) .................................................................................... 14

4

17 U.S.C. § 1201(a)(3)(B) ........................................................................... 9, 14, 15

5

Cal. Civ. Code § 1729 .......................................................................................... 23

6

Cal. Code Civ. Proc., §§ 1550, 1565 ..................................................................... 7

7

Copyright Law of the People's Republic of China, Art. 49 ................................. 12

8

**RULES**

9

Berne, Art. V. ....................................................................................................... 12

10

Federal Rule of Civil Procedure 12(b)(2) .............................................................. ii

11

Federal Rule of Civil Procedure 12(b)(3) .............................................................. ii

12

Federal Rule of Civil Procedure 12(b)(6) .............................................................. ii

13

Rule 12(b)(6) ..................................................................................................... 6, 12

14

U.C.C. Art. II ....................................................................................................... 12

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

This is an action for DMCA circumvention and breach of contract. Defendants, Yunjing Intelligent Innovation (Shenzhen) Co., Ltd., Yunjing Intelligence Robotics (Dongguan) Co., Ltd., Yunjing Intelligence Technology Development (Dongguan) Co., Ltd., Jingzhi Intelligence Supply Chain (Shenzhen) Co., Ltd., Yunjing Intelligence (Shenzhen) Co., Ltd. (collectively, "Defendants" or "Yunjing"), submit the Memorandum of Points and Authorities in Support of its Motion to Dismiss the Complaint (Dkt. 1; "Complaint" or, at times, "Compl.") filed by Plaintiff, Cadence Design Systems, Inc. ("Plaintiff" or "Cadence").

This action must fail for several indisputable facts. All of the accused activities occurred entirely in China, none being in the United States. Second, Plaintiff clearly stated that Defendants are not customers of Cadence, and no valid contract has ever formed between Plaintiff and Defendants. Accordingly, there cannot be effective consent to jurisdiction in California by any of Defendants. Specifically:

- Cadence fails to plead any facts for the alleged Digital Millennium Copyright Act ("DMCA") violation **within the United States** and cannot amend the Complaint to include them because (1) United States copyright law, including the DMCA, has no extraterritorial application, (2) all alleged conducts relevant to the DMCA's focus were all wholly extraterritorial conducts, and (3) none of Defendants have employees in the U.S. and therefore could have not carried any of the accused activities in the U.S., let alone in this District.

- Cadence fails to plead any facts for identifying any valid contract with any of Defendants and cannot amend the Complaint to include them because (1) Cadence's allegation that Defendants **are not** customers of and **never** had a valid license from Cadence is factually true, and (2) it is logically inconsistent and legally impermissible to sue for breach of contract where there is no valid

contract.

- Cadence fails to plead any facts for establishing personal jurisdiction or proper venue in this Court over any of Defendants, and cannot amend the Complaint to include them because the accused activities by Defendants did not occur in California and none of Defendants have any meaningful contacts with the forum, and Plaintiff's various theories of personal jurisdiction fail.

## II.    STATEMENT OF FACTS

Founded in 2016, Yunjing focuses on household robots and is dedicated to the research and development of revolutionary technological products. Defendants operate in China and currently have no U.S. employees. *See* Declaration of Panbing Lu in Support of Defendants' Motion to Dismiss Complaint ("Lu Decl.") at ¶ 2–7. Defendants' product research and development, design, or manufacturing activities (as applicable to a particular defendant) occur entirely in China. *See* Lu Decl. at ¶ 5.

On January 9, 2025, Cadence filed the instant Complaint with two counts. The first count premises its DMCA claim under 17 U.S.C. § 1201 on the allegations that Defendants circumvented the technological measures that control access to Cadence's proprietary software (*i.e.*, Cadence Allegro®, Cadence OrCAD®, Cadence PSpice®, and Cadence Sigrity®, collectively "Cadence Software") by "bypassing" the required entry of a license file and/or using "counterfeit" license files. Compl. at ¶¶ 3, 15 & 48. In a thinly-veiled effort to bootstrap extraterritorial conduct into this forum, Cadence further asserts that Defendants breach the clickwrap Software License and Maintenance Agreement ("SLMA") allegedly associated with the Cadence Software and the Cadence License Manager (described as "a software management tool that controls use of the Cadence Software"), specifically, the "Reasonable Steps Provision," the "Audit Provision," and the "Notification Provision." *Id.* at ¶¶ 12, 21, 27, 31–32 & 55–57.

2

DEFENDANTS' MOTION TO DISMISS

Cadence claims its "Phone Home System"—a tracking technology—revealed Defendants' alleged DMCA violations. *Id.* at ¶¶ 26 & 42. This system purportedly "detects, identifies, and collects information" about unauthorized software use, including instances where users "bypass" "technological security measures" with "counterfeit" licenses or altered software. *Id.* at ¶ 26. Cadence further asserts the system transmits this data to them via the internet. *Id.*

The Complaint's second count is a breach of contract claim that hinges on the bare assertion that Defendants "accepted" SLMA terms by installing unauthorized software versions 16.5 and 16.6. *Id.* at ¶ 28. Notably, there are two glaring omissions: it does not allege any valid offer under applicable law; and it does not allege that Defendants' employees had authority to bind their respective employers to the SLMAs. *Id.*

## III.    RELEVANT LAW

### A.    Legal Standard on Motion to Dismiss

To survive a motion to dismiss, a Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *See Valjakka v. Netflix Inc.*, No. 22-cv-01490-JST, 2022 WL 19975412, at *1 (N.D. Cal. Oct. 11, 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This plausibility turns on providing enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Factual allegations fail to meet the plausibility standard when they provide threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. *See Iqbal*, 556 U.S. at 678. When a plaintiff makes such recitals and statements, courts are not bound to accept them as true. *Id.*

### B.    Legal Standard for Establishing Personal Jurisdiction

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the

3

plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004). To satisfy this burden, "the plaintiff cannot 'simply rest on the bare allegations of its complaint.'" *Id*. (citation omitted). Rather, where, as here, the defendant has submitted evidence controverting the plaintiff's allegations, the plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citation omitted); *see also Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) ("we may not assume the truth of allegations in a pleading which are contradicted by affidavit").

A plaintiff's burden is particularly high where the plaintiff is seeking to establish personal jurisdiction over a party from a foreign country. *See, e.g., Asahi Metal Indus. Co. Ltd. v. Super. Ct. of Cal., Solano Cty*., 480 U.S. 102, 114 (1987). The Due Process Clause of the U.S. Constitution protects non-residents from being bound by judgments of a forum with which they have no meaningful contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Due process, therefore, requires that a non-resident defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

Such "minimum contacts" must satisfy one of two requirements. First, where a defendant's contacts are so "continuous and systematic" as to render it essentially at home in the forum state, a court is said to have general jurisdiction over the defendant. *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014). Second, if a defendant's contacts are not sufficiently "continuous and systematic" to exercise general jurisdiction, a defendant may still be subject to specific jurisdiction, but only with respect to claims that relate to or arise out of the defendant's alleged activities in the forum. *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017).

4
DEFENDANTS' MOTION TO DISMISS

5:25-cv-00317-AMO

**C.    Legal Standard for the *Forum Non Conveniens Doctrine***

"United States nationals alleging violations of United States copyright law are subject to *forum non conveniens* analysis." *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 701 (9th Cir. 1995). Plaintiffs presumptively may choose their forums. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). "The presence of American plaintiffs, however, is not in and of itself sufficient to bar a district court from dismissing a case on the ground of *forum non conveniens.*" *Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir. 1983).

"The party moving for *forum non conveniens* dismissal must demonstrate two things: (1) the existence of an adequate alternative forum; and (2) that the balance of relevant private and public interest factors favor dismissal." *Creative Tech*, 61 F.3d at 699 (citing *Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.,* 918 F.2d 1446, 1449 (9th Cir.1990)). The first step is generally satisfied if the defendant is amenable to service of process in the alternative forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981); *see also id.* at n. 22. An inadequate forum is one which "does not permit litigation of the subject matter of the dispute." *Id.* at 254. In the second step, the private interest factors include: (1) relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses, and cost of obtaining attendance of willing witnesses; (3) possibility of viewing subject premises; (4) all other factors that render trial of the case expeditious and inexpensive. *Zipfel v. Halliburton Co.*, 832 F.2d 1477, 1485 (9th Cir. 1987) (citing *Gulf Oil*, 330 U.S. at 508). The public interest factors include: (1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action: (5) the avoidance of unnecessary problems in conflicts of law. *Id.*

5

### D.    Authorities on No Extraterritoriality of DMCA[1]

The law is clear: A DMCA circumvention claim under 17 U.S.C. § 1201 cannot apply to wholly extraterritorial conduct. *See Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, No. 23-55001, 2024 WL 3616945, at *2 (9th Cir. Aug. 1, 2024) (affirming district court's ruling that wholly extraterritorial conduct does not give rise to a DMCA circumvention claim). "It is axiomatic that United States copyright law does not apply extraterritorially." *Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 835 (9th Cir. 1996) (citing 3 David Nimmer & Melville B. Nimmer, Nimmer on Copyright, § 17.02 (1996)). In an *en banc* review, the Ninth Circuit held that copyright infringement must be completed entirely within the United States to trigger application of U.S. copyright law. *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 387 (9th Cir. 1995) (holding that the Copyright Act did not apply to broadcasting of infringing material from the United States into Canada because the infringing acts were not complete until the signal was received in Canada).

District Courts in California have long recognized that United States' copyright laws have no application to extraterritorial infringement. *See, e.g., M Seven Sys. Ltd. v. Leap Wireless Int'l, Inc.*, No. 12-CV-1424-CAB (RBB), 2014 WL 12026065 (S.D. Cal. June 4, 2014) (precluding South Korean plaintiff's DMCA claim because plaintiff failed to clearly identify where the circumvention geographically occurred).

### E.    Authorities on Mutual Assent to Contract

To state a cause of action for breach of contract, Cadence must allege (1) a valid contract; (2)

---

[1] Although implicating the Court's subject-matter jurisdiction, courts typically review the territoriality requirement under Rule 12(b)(6). *See, e.g., Litecubes, LLC v. Northern Light Products, Inc.*, 523 F. 3d 1353, 1368 (Fed. Cir. 2008) (reviewing the case law, including Ninth Circuit authority, and explaining that territoriality should be reviewed as an element of a copyright claim under Rule 12(b)(6)); *Shropshire v. Canning*, 809 F.Supp.2d 1139, 1144 (N.D. Cal. 2011).

DEFENDANTS' MOTION TO DISMISS

5:25-cv-00317-AMO

its performance or excuse for nonperformance; (3) Defendants' breach; and (4) the resulting damage. *Bushell v. JPMorgan Chase Bank, N.A.*, 220 Cal. App. 4th 915, 921 (Cal. Ct. App. 2013). It is well established that for any contract claim, the "key" or "essential element" is the parties' mutual assent to the contract, which is generally established through an offer and acceptance. Cal. Code Civ. Proc., §§ 1550, 1565; *Berlanga v. Univ. of San Francisco*, 100 Cal. App. 5th 75, 82, *reh'g denied* (Cal. Ct. App. 2024) (quoting *Pacific Bay Recovery, Inc. v. California Physicians' Services, Inc.*, 12 Cal. App. 5th 200, 215 (Cal. Ct. App. 2017)). "The test is whether a reasonable person would, from the conduct of the parties, conclude that there was a mutual agreement." *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1050, *as modified* (Cal. Ct. App. 2001).

## IV.    ARGUMENT

### A.    Cadence Failed to Sufficiently Plead Facts to Establish Personal Jurisdiction over Defendants

Cadence does not even attempt to plead general jurisdiction over Defendants. This is no accident: Cadence itself admits all Defendants are Chinese entities. Compl. ¶¶ 5–9. Thus, the sole jurisdictional question is whether specific jurisdiction exists.[2]

To establish "specific jurisdiction," a plaintiff must demonstrate that: (1) the defendant either "purposefully direct[ed]" its activities or "purposefully avail[ed]" itself of the benefits afforded by the forum's laws; (2) the claim "arises out of or relates to the defendant's forum-related activities"; and (3) the exercise of jurisdiction "comports with fair play and substantial justice, *i.e.*, it is reasonable." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (citation omitted); *see also Bristol-Myers Squibb*, 137 S. Ct. at 1781. "The plaintiff bears the burden of

---

[2] Defendants note that, as a matter of judicial economy, until and unless Cadence is able to plead DMCA violations within the United States, it may not be necessary for the Court to analyze the jurisdictional arguments specific to Defendants.

DEFENDANTS' MOTION TO DISMISS

5:25-cv-00317-AMO

satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff meets that burden, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King*, 471 U.S. at 476–78).

      1.   <u>Cadence Failed to Adequately Plead Binding Forum Selection Clause</u>

      As will be discussed in Section IV.C.2.i, Cadence failed to plead any valid contract between it and Defendants, and thus failed to plead any binding forum selection clause. See *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007) (forum selection clause "may give rise to waiver of objections to personal jurisdiction" but only "provided that the defendant agrees to be so bound").

      2.   <u>Cadence Failed to Adequately Plead "Purposeful Direction" to This Forum</u>

      Cadence also attempts to plead specific jurisdiction under a "purposeful direction" theory. For tort actions, the Ninth Circuit requires a showing of purposeful direction. *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 960 (N.D. Cal. 2015) (citing *Nissan Motor Co. v. Nissan Computer Corp.*, 246 F.3d 675, 675 (9th Cir. 2000)). A defendant purposefully directs activity at the forum state when the defendant "(1) [has] committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm the defendant knows is likely to be suffered in the forum state." *Dole Foods Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Bancroft*, 223 F.3d at 1087); *Axiom Foods, Inc. v. Acerchem International, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017); *see also Avaya Inc. v. Pearce*, No. 19-CV-00565-SI, 2019 WL 6311383, at *6–7 (N.D. Cal. Nov. 25, 2019).

      However, the foreseeability of injury in a forum "is not a 'sufficient benchmark' for exercising personal jurisdiction." *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen*, 444 U.S. at 295); *see also Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th

DEFENDANTS' MOTION TO DISMISS

Cir. 2012) ("*Calder* 'cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction.'"), *abrogated on other grounds by Axiom Foods*, 874 F.3d 1064.

Specifically, in a case appealed from the Ninth Circuit, the Supreme Court rejected the Ninth Circuit's view that Defendants' "knowledge of [the Plaintiff] 'strong forum connections,'" plus the "foreseeable harm" the Plaintiff suffered in the forum, comprised sufficient minimum contacts. *Walden v. Fiore*, 571 U.S. 277, 289 (2014) (citation omitted). The above rejected approach "impermissibly allow[ed] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* The Supreme Court made clear that the defendant's "own contacts" with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum, drives the jurisdictional analysis. *Id.* at 289–90.

Cadence deviates from established jurisdictional law. Its "purposeful direction" theory rests on two threadbare statements: (1) Defendants circumvented technological measures "in this District," and (2) used "cracked" software "knowing" it would injure Cadence "in California and this District." Compl. at ¶ 13. Neither of the theory is sufficient as a matter of law because they "impermissibly allow[ed] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis."

Defendants have no express aim at the State of California. This is undisputed: All Defendants are *Chinese* companies with no California address, registration, or presence. Compl. at ¶¶ 5–9. No operation, R&D, design, manufacturing, employee, or direct contact tie Defendants to California. Lu Decl. ¶ 4–9. None of Cadence's alleged "technological measures" under 17 U.S.C. § 1201(a)(3)(B) is located here. *See* Section IV.C.1.ii, *infra*. In fact, the Complaint is glaringly silent on what activities those Chinese companies do in California because the Plaintiff can plead none.

9

The Ninth Circuit's decision in a similar case is instructive and controlling. In *Axiom Foods,* the Ninth Circuit affirmed the district court's dismissal for lack of personal jurisdiction, focusing on the fact that the UK defendant conducted no business in California *Id.* at 1070–71. Likewise, no Defendant conducts business or has meaningful contacts with this forum. Therefore, this Court should reach the same conclusion here.

3. Cadence Failed to Adequately Plead Specific Jurisdiction Even if it Sufficiently Plead "Purposeful Direction"

Even if Plaintiff was able to establish purposeful direction, it still must allege sufficient facts to show that (i) the claim "arises out of or relates to the defendant's forum-related activities"; and (ii) the exercise of jurisdiction "comports with fair play and substantial justice, i.e., it is reasonable." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (citation omitted).

For specific jurisdiction to exist over Defendants, Plaintiff's claim "'must be one which arises out of or relates to the defendant's forum-related activities.'" *Axiom Foods*, 874 F.3d at 1068 (quoting *Dole Food Co.*, 303 F.3d at 1111) (emphasis added). This is a claim-tailored inquiry that requires the Court to examine the plaintiff's specific injury and its connection to the forum-related activities in question. *See Bristol-Myers,* 582 U.S. at 262 (explaining that "there must be 'an affiliation between the forum and the underlying controversy'" (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011))); *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1022–23 (9th Cir. 2017) ("In order for a court to have specific jurisdiction over a defendant, 'the defendant's suit-related conduct must create a substantial connection with the forum State.'" (quoting *Walden*, 571 U.S. at 284)). Here, no suit-related conduct could have occurred in California. Lu Decl. ¶ 4–9; *see* Section IV.C.1.ii, *infra*. In other words, there are no forum-related activities carried out by any of Defendants. *Id.* Therefore, this prong of the personal jurisdiction requirements is not met.

Plaintiff bears the burden on the first two prongs of (1) purposeful availment and (2) relatedness. *Schwarzenegger*, 374 F.3d at 802. If they are met, then the defendant "must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* Because Plaintiff fails its burden on the first two prongs, Defendants need not address the third prong of reasonableness of exercising jurisdiction. *Id.*

**B.     Cadence Failed to Plead Facts to Establish Proper Venue**

Cadence claimed that this venue is proper on two bases. The first basis is personal jurisdiction over Defendants. Compl. at ¶ 14. The second basis is the forum selection clause of the SLMA. Compl. at ¶ 14. *Id.* The first basis fails because Cadence insufficiently pleaded personal jurisdiction over Defendants and also because no suit-related activities could have occurred in this forum. Lu Decl. ¶ 4–9. The second basis also fails because there is no valid contract, let alone the forum selection clause, between Cadence and any of Defendants. *See* Section IV.C.2.i, *infra*.

Even *assuming*—which Defendants do not concede—the personal jurisdiction is proper, this Court is still an improper venue due to *forum non conveniens* because all suit-related conducts occurred entirely in China. *See* Section IV.C.1.ii, *infra*. "The applicable law is the copyright law of the state in which the infringement occurred, not that of the state of which the author is a national or in which the work was first published." *Creative Tech*, 61 F.3d at 700 (citing *Subafilms, Ltd. v. MGM–Pathe Comm.,* 24 F.3d 1088, 1097 (9th Cir.1994) (*en banc*) (quoting 3 David Nimmer and Melville B. Nimmer, Nimmer on Copyright § 17.05 at 17–39 (1994)).

Here, a court in China is an adequate alternative forum because China is a signatory to the Universal Copyright Convention (U.C.C.) since 1992,[3] and a signatory to the Berne Convention for

---

[3] https://www.unesco.org/en/legal-affairs/universal-copyright-convention-appendix-declaration-relating-article-xvii-and-resolution-concerning ("[T]he instrument of accession [to U.C.C.] was

11

the Protection of Literary and Artistic Works (Berne Convention) since 1992.[4] Both U.C.C. and Berne Convention mandate a policy of national treatment in which copyright holders are afforded the same protection in foreign nations that those nations provide their own authors. *See* U.C.C. Art. II; Berne, Art. V. As Chinese companies, all of Defendants are amenable to service of process in Chinese courts. Also, Chinese courts permit litigation of breach of contract and circumvention claim similar to 17 U.S.C. § 1201. *See* Copyright Law of the People's Republic of China, Art. 49.[5] Even if Chinese law does not offer exactly the same remedy to Cadence as under U.S. law, courts in China are free to apply United States laws to Cadence's claims should the need arise.

The balance of private and public interest factors also favors a dismissal under *forum in conveniens*. While private factor (4) is neutral, private factors (1), (2) and (3) are favorable for dismissal because all suit-related conducts occurred in China, and all witnesses (if any) and Defendants' facilities are located in China. *See* Section IV.C.1.ii, *infra*; *Zipfel*, 832 F.2d at 1485. Regarding public interest factors, factor (1) is favorable for dismissal because this Court is overburdened; factors (2) to (4) are favorable because the alleged wrongful acts occurred entirely in China; factor (5) is neutral because an application of foreign law is at some point inevitable regardless which court eventually adjudicates this case.

### C.    Cadence Failed to State Any Plausible Claims

To survive a motion to dismiss under Rule 12(b)(6), Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

---

deposited by the Government of People's Republic of China on 30 July 1992").
[4] https://www.wipo.int/wipolex/en/treaties/notifications/details/treaty_berne_140 ("the deposit by the Government of the People's Republic of China, on July 10, 1992, of its instrument of accession to the [Berne]").
[5] https://www.wipo.int/wipolex/en/legislation/details/21065 (English translation by WIPO); https://www.gov.cn/guoqing/2021-10/29/content_5647633.htm (official text).

(2007). "Facial plausibility" requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

1. <u>Cadence Failed to Adequately Plead DMCA Violations in the United States</u>

A canon of statutory construction is "the presumption against extraterritoriality: Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 325–26 (2016). The Supreme Court establishes a two-step framework to analyze extraterritoriality issues: (1) the Court asks whether the presumption against extraterritoriality has been rebutted; (2) If, and only if, the presumption is not rebutted, the Court examines the statute's "focus" to determine whether the case involves a domestic application of the statute. *Id.* at 326; *see also Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010); *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013). To pass step one, Congress must have "affirmatively and unmistakably instructed" that a statute applies to extraterritorial conduct. *RJR Nabisco*, 579 U.S. at 335. Regarding DMCA, an *en banc* review of the Ninth Circuit held that federal copyright law does not apply to extraterritorial acts of infringement. *Subafilms, Ltd. v. MGM–Pathe Communications Co.,* 24 F.3d 1088, 1095–98 (9th Cir.1994) (*en banc*).

To determine whether the case involves a domestic application of the statute, the statute's focus must be identified. *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407, 413 (2018) (quoting *RJR Nabisco*, 579 U.S. at 337). The "focus" "can include the conduct it seeks to regulate, as well as the parties and interests it seeks to protect or vindicate." *Id.* at 414 (quoting *Morrison*, 561 U.S. at 267) (internal quotation marks omitted). The "focus" of 17 U.S.C. § 1201(a)(1) is "to prevent circumvention of technological measures to gain access to copyrighted works." *Synopsys, Inc. v.*

13

*AzurEngine Techs., Inc.*, 401 F. Supp. 3d 1068, 1073 (S.D. Cal. 2019).

"If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the relevant conduct occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless [of] whether other conduct occurred in U.S. territory." *RJR Nabisco*, 579 U.S. at 326.

Here, the DMCA does not rebut the presumption against extraterritoriality under settled case law and this Court must move to step two of the inquiry based on examining the focus of § 1201(a). Therefore, the core of the inquiry is what conduct is "relevant" to the focus of § 1201(a) and where it occurred.

> i. *The conduct relevant to the focus of 17 U.S.C. § 1201(a) is circumvention, not surveillance of circumvention.*

The focus of 17 U.S.C. § 1201(a) is to "prevent circumvention." *See AzurEngine Techs.*, 401 F. Supp. 3d at 1073. Thus, the circumvention itself is the conduct relevant to the focus of § 1201(a). The "circumvention" means to "descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A). The "technological measure" effectively "controls access" to a work if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to "gain access" to the work. 17 U.S.C. § 1201(a)(3)(B). Federal district courts of California have found license-control methods, where a software will not run without a licensee "checking out" a license key from a license server designed to only grant such a key to approved licensees, satisfy the "effectively controls" requirement of 17 U.S.C. § 1201(a)(3)(B). *AzurEngine Techs.*, 401 F. Supp.

DEFENDANTS' MOTION TO DISMISS

3d at 1072. The use of counterfeit license keys, among other things, constituted "circumvention" under the § 1201(a). *Synopsys, Inc. v. InnoGrit, Corp.*, 2019 WL 2617091, at *3 (N.D. Cal. 2019).

Here, Cadence alleged that a valid license file is entered into the Cadence License Manger to indicate "how many licenses are available." *Id.* at ¶ 24. Per the Complaint, users install and "maintain" Cadence License Manager on a "License Server" networked to computers running Cadence Software. *Id.* at ¶ 22. Clearly, when the required entry of a valid license file is "bypassed" or an unauthorized license file is used, Cadence License Manager is bypassed, and thus Cadence's technological measure is "circumvented" under 17 U.S.C. § 1201(a). *Id.* at ¶ 48. In fact, Cadence did allege that Defendants used "counterfeit license files" to circumvent Cadence License Manager. *Id.* at ¶ 40. The statements in the Complaint make it clear that Cadence's License Manager is the type of device satisfying the "effectively controls" requirement as described in *AzurEngine Techs.*, and thus is the "technological measure" under 17 U.S.C. § 1201(a)(3)(B).

In contrast, Cadence's Phone Home System is not a "technological measure" under 17 U.S.C. § 1201(a)(3)(B). The statute defines such technological measures as tools that "control access" to a work. *Id.*; *AzurEngine Techs.*, 401 F. Supp. 3d at 1072. The Phone Home System does not. It merely "detects" unauthorized use and "transmits" data back to Cadence. Compl. at ¶ 26. Neither detection nor transmission is control. The statute says nothing about surveillance tools. 17 U.S.C. § 1201(a)(3). Worse, the system fails the "effectively controls" test: Users (authorized or not) can *freely access* Cadence Software *while* the Phone Home System operates. Compl. at ¶ 26. Passive monitoring does not block access. Clearly, the Phone Home System should be excluded from the § 1201(a) analysis.

Even if Cadence insists that the Phone Home System is the statute-defined technological measure, the Phone Home System is not circumvented anyway. Cadence conceded that the system worked as it is designed and reported back Defendants' alleged "unauthorized use." Compl. ¶ 42.

15

Indeed, if the Phone Home System is circumvented, Cadence would not even be able to maintain connection to its software.

       ii.    *Cadence failed to plead that the conduct relevant to the focus of § 1201(a) occurred in the United States.*

Cadence offers a single, threadbare allegation, asserting that "Defendants have repeatedly circumvented technological measures in this District." *Id.* at ¶ 13. Cadence's single-line allegation is deficient for at least two reasons. First, the allegation is nothing more than a conclusory recital. Cadence offers *zero* fact or examples that would nudge this bare assertion "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570). Second, Cadence has *actual data* about whether there was any DMCA violation in the United States. Cadence pleaded at-length about the Phone Home System, alleging that it has "made significant investments in technological measures designed to track unauthorized use." Compl., ¶ 26. "When unauthorized use is detected…, license compliance reporting software sends information concerning the unauthorized use of Cadence Software back to Cadence." *Id.* Cadence even claims to have "detected over 200,000 instances of Defendants' unauthorized use of the Cadence Software." *Id.* at ¶ 42. If *any* of these "instances" occurred in the United States, Cadence has the data—and the duty—to specify. It did not. Despite alleging a detection system that "sends information… back to Cadence" (*id.* at ¶ 26), the Complaint never claims even *one* U.S.-based circumvention act. *Id*. This silence is telling.

Even *assuming* Cadence's deficient pleading somehow crossed the plausibility threshold and *assuming* Defendants conducted the alleged acts relevant to circumvention—concessions Defendants vigorously dispute—the Complaint still confirms all relevant conducts occurred wholly *outside* the United States. This contradiction is fatal.

Here, Cadence alleged that Defendants obtained the "cracked" or unauthorized copies of

16

Cadence Software from "websites, including filesharing and torrent sites." Complaint ¶ 39. That is a concession that Cadence did not provide Cadence License Manager or License Server to Defendants.

By Cadence's own pleading, a third-party-provided Cadence License Manager is installed on a user's machine because "the user must affirmatively 'click' to accept [the SLMA] to install the software." *Id.* at ¶ 27. The user also maintains the License Server. Compl. at ¶ 24 & 22. A logical conclusion is that the License Server (and the Cadence License Manager—the purported "technological measure") necessarily reside in China because all Defendants are Chinese companies with zero California ties (Compl. ¶¶ 5–9; Lu Decl. ¶¶ 4–9). Indeed, the Complaint never alleges that the third-party-provided Cadence License Manager was bypassed or even installed in California. Thus, even *assuming* Defendants have bypassed the Cadence License Manager (*i.e.,* the alleged conducts relevant to circumvention under § 1201(a)(3)(A)), all those conducts necessarily occurred in China.

Indeed, DMCA's territoriality requirement is elemental, yet Cadence is deliberately silent about where Cadence License Manager was installed and circumvented despite having the heavily-invested Phone Home System. Cadence's failure to plead *any* U.S.-focused conduct—coupled with its implicit statements that Defendants' acts are foreign—dooms its claim. *See Shropshire v. Canning*, 2011 WL 90136, at *3-4 (N.D. Cal. Jan. 11, 2011) (dismissing copyright claim in part where "the Court can discern no act of infringement that occurred entirely within the United States."); *Sound N Light Animatronics Co., LTD. v. Cloud b, Inc.*, 2016 WL 7635950, at *5 (C.D. Cal. Nov. 10, 2016) (dismissing copyright infringement counterclaims because the counter-plaintiff "does not plausibly allege that infringing products were distributed within the United States"); *Danjaq, S.A. v. MGM/UA Comms., Co.*, 773 F. Supp. 194, 202-03 (C.D. Cal. 1991) (dismissing copyright claim for performing copyrighted James Bond films on European television without authorization); *Vander*

17

*Music v. Azteca Int'l Corp.*, 2011 WL 13177301, at *3-4 (C.D. Cal. Jan. 21, 2011) (dismissing claims for direct and contributory copyright infringement that took place in Mexico); *New Name, Inc. v. Walt Disney Co.*, 2007 WL 5061697, at *2-4 (C.D. Cal. Dec. 3, 2007) (dismissing a copyright infringement claim for sales that occurred in Canada).

This factual and legal hollow is dispositive. When a complaint's "facts" contradict its legal conclusions, courts need not indulge in fiction. *See, e.g., Alamilla v. Hain Celestial Group, Inc.*, 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014) ("Courts need not accept as true allegations contradicting documents that are referenced in the complaint"); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) (holding that the court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit).

### 2.  Cadence Failed to Adequately Plead Breach of Contract

Contract validity depends on governing law. Defendants' alleged conduct occurred exclusively within China—not the United States. *See* Lu Decl. ¶ 4–9. In accordance with the Complaint, the License Server (and thus the alleged Cadence License Manager) necessarily resides in China, and Cadence Software is necessarily installed in China. *See* Section IV.C.1.ii, *supra*. Even under Cadence's clickwrap theory, any purported contractual acceptance—assuming *arguendo* such acceptance occurred—could only have transpired in China.

This Court need not resolve choice-of-law disputes at this stage. Judicial efficiency demands deferring this analysis unless and until Cadence plausibly alleges domestic DMCA violations. Premature adjudication of foreign contract law would waste resources on claims that may yet fail threshold jurisdictional and substantive tests. Defendants expressly preserve all choice-of-law defenses. No waiver is intended.

18

DEFENDANTS' MOTION TO DISMISS

i.    *Cadence failed to plead any valid contract.*

Similar to its DMCA claim, Cadence's breach of contract claim collapses under the weight of its own contradictions.

First, Complaint *expressly* admits that "Defendants *are not customers* of Cadence and *have never obtained a valid license* from Cadence to access and use the Cadence Software." Compl. ¶ 37 (emphases added). By using the present perfect tense, Cadence accurately concedes the very simple fact that Defendants did not and do not have any valid contract with it. By using the present tense, Cadence also correctly admits that it does not consider Defendants as current customers. Yet Cadence simultaneously alleges Defendants "accepted" SLMA terms by installing software. *Id.* ¶ 27. This is a disingenuous fiction. If Defendants "have never" licensed Cadence's software and "are not" customers, *how could they possibly be bound by a customer contract*? This blatant inconsistency—pleading both the existence *and* nonexistence of a contract—renders Cadence's claim facially implausible.

Courts need not accept such self-cancelling allegations. *See, e.g., Alamilla v. Hain Celestial Group, Inc.*, 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014) ("Courts need not accept as true allegations contradicting documents that are referenced in the complaint") (quoting *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008)). Therefore, Cadence has failed to adequately plead the breach of contract claim simply by its self-contradictory statements on the existence of the contract.

Second, even if Cadence's glaring contradiction about contract existence was ignored, Cadence still failed to adequately plead mutual assent of the parties by its own factually correct concession that it has not made any offer to Defendants. Cadence alleged that Defendants "contractually agree to" (or "expressly agree to") the "clickwrap" SLMA by affirmatively selecting an "I agree" option, as the only option, to proceed with the installation of Cadence Software and

19

Cadence License Manager. Compl. ¶¶ 12, 27, 34–35 & 54. But Cadence simultaneously admits Defendants obtained the "cracked" or unauthorized copies of software from "websites, including filesharing and torrent sites"—*not* from Cadence. Complaint ¶ 39. Cadence cannot have it both ways. A clickwrap agreement requires *Cadence* to present the terms—not a torrent site. Therefore, it would be illogical to accept both as true that Cadence has made an offer and that it did not and could not make such an offer. *See SF Motors*, No. 2:20-CV-00352-MJH, 2021 WL 22453, at *4 (finding no meeting of the minds in plaintiff's pirated clickwrap licenses clicked by defendant). This disingenuous doublespeak, along with other contradictions that permeate the Complaint, eviscerates any plausible claim of mutual assent. Therefore, Cadence has failed to adequately plead the breach of contract claim further by its self-contradictory statements on whether it has made any offer to Defendants.

Besides the above two contradictions that alone warrants the dismissal of the breach of contract claim, even if *assuming* Cadence did make an offer of the SLMA to Defendants—which Defendants vigorously dispute—Cadence also failed to adequately plead that Defendants accepted it. As an initial matter, the terms of the offer Cadence made, *e.g.,* the two versions of SLMAs, surprisingly omit some essential terms like license pricing or any pricing mechanism. Dkt. 28, Exs. 1–2. Cadence has failed to plead why Defendants had sufficient awareness of the terms of the offer before accepting it. Worse, Cadence alleges that Defendants *have never obtained a valid license* from Cadence—so apparently, *no acceptance occurred*.

Further, even if affording Cadence with the benefit of the doubt, Cadence still leaves a hole in its position by failing to show the contracting employee's authority to bind Defendants. Only persons having actual or apparent authority could enter into a contract that would bind a Defendant and thereby "accept" the forum selection clause. *See Title Guarantee & Trust Co. v. Hammond*

20

DEFENDANTS' MOTION TO DISMISS

*Lumber Co.*, 62 Cal. App. 245, 254-55 (1923) ("[A] corporation is not bound by any act or acts of its officers or employees unless they are by the corporation vested with general authority to transact any and all of the business falling within the scope of its corporate purposes, or vested with special authority, through formal action of its board of directors, to do some particular act within the limits of its charter powers, or unless the corporation has held such officers or employees out to the public as possessing authority to act for it according to the general usage, practice, and course of its business."); *Snukal v. Flightways Mfg. Inc.*, 23 Cal. 4th 754, 779 (2000) ("At common law, the party seeking to enforce a contract with a corporation generally has the burden of establishing the contracting officer's authority to bind the corporation.").[6]

Cadence did not plead any employee's authority to bind Defendants. *See Snukal*, 23 Cal. 4th at 779. Cadence did not even plead any name or identity who approved or ratified the SLMA. Compl. at ¶ 12. *See Fredianelli v. Jenkins*, 931 F. Supp.2d 1001, 1017-19 (N.D. Cal. 2013) (under California law an agent may only bind a principal to a contract if he has actual or ostensible authority to do so); *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1321-22 (S.D. Fla. 2010) (finding that two employees accepting "click-to-accept" agreements did not bind their employer because they lacked authority to enter into the agreements); *Nexon Am., Inc. v. S.H.*, No. CV 10-9689 PA (JCX), 2011 WL 13217951, at *8 (C.D. Cal. Dec. 13, 2011) (holding that plaintiff failed to establish that downloaders assented to plaintiff's license or that there was existing contracts between the two based on downloaders' download of modified versions of plaintiff's software from

---

[6] Even if the Uniform Electronic Transactions Act, Cal. Civ. Code section 1633.1 *et seq.* ("UETA") applied to transactions involving Chinese corporations, UETA does not address the issue of authority to bind a corporation. Before UETA even applies, a plaintiff must show that the parties – Yunjing – agreed to conduct a transaction electronically. Civ. Code section 1633.5(b). The evidence presented in the declaration in support of this motion demonstrates that there was no such intent on the part of any Yunjing corporation.

DEFENDANTS' MOTION TO DISMISS

unauthorized websites).

On the contrary, each Defendant investigated and found no binding contract between Cadence and any Defendant. Lu Decl. at ¶¶ 11–12. None agreed to any forum selection clause. *Id.* In fact, each Defendant enforces a strict IT/Information Security Policy barring employees from using unlicensed or "cracked" software. Lu Decl. at ¶ 10. The Policy mandates that *all* workplace software must be properly licensed and *approved* by the company. *Id.* (emphasis added). Cadence's theory collapses into speculation: It relies on hypothetical rogue individuals who allegedly clicked a clickwrap SLMA without authority, in defiance of corporate policy, and with zero power to bind Defendants. Such unilateral, unauthorized acts—by low-level actors violating express company rules—is not even a close call to bind a corporation to a contract.

No reasonable person would have concluded any meeting of the minds from this Complaint. Cadence's breach claim rests on a phantom contract—one that never materialized from the outset. *Marin Storage & Trucking, Inc.*, 89 Cal.App.4th at 1049 (finding of no mutual assent is equivalent to finding that no contract was formed). As such, there was no mutual assent, and none of Defendants could have breached a contract to which it never agreed. As a result, the dismissal of the breach of contract claim is proper. *See Davaloo v. State Farm Ins. Co.*, 135 Cal.App.4th 409, 418 (2005).

      ii.   *Even if there is a valid contract, at least some terms of the contract are unenforceable.*

Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable. *California Lettuce Growers v. Union Sugar Co.*, 45 Cal. 2d 474, 481 (1955); *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 209 (2006). The absence of price provisions does not render an otherwise valid contract void, if the price can be: (1) fixed by the parties, (2) determined from the prior course of dealings of the parties, and (3) deemed the reasonable price under the circumstances of the particular case. *California*

DEFENDANTS' MOTION TO DISMISS

*Lettuce Growers*, 45 Cal. 2d at 482 (citing Cal. Civ. Code § 1729).

Under California law, a contract provision is unenforceable due to unconscionability only if it is both procedurally and substantively unconscionable. *Shroyer v. New Cingular Wireless Servs., Inc.,* 498 F.3d 976, 981–82 (9th Cir.2007). The procedural element focuses on oppression and surprise due to unequal bargaining power, while the substantive element is satisfied where the results are overly harsh or one-sided. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011) (citing *Armendariz v. Foundation Health Psychcare Servs., Inc.,* 24 Cal.4th 83, 114 (2000)). The oppression component of procedural unconscionability arises from an inequality of bargaining power of the contracting parties and an absence of real negotiation or a meaningful choice on the part of the weaker party. *Pardee Constr. Co. v. Superior Ct.*, 100 Cal. App. 4th 1081, 1088 (2002). The paramount consideration in assessing substantive unconscionability is mutuality. *Abramson v. Jupiter Networks,* Inc., 115 Cal.App. 4th 638, 664 (2004). One form of substantive unconscionability is an agreement's lack of a "modicum of bilaterality." *Little v. Auto Stiegler, Inc.,* 29 Cal.4th 1064, 1071-72 (2003); *see also Armendariz,* 24 Cal.4th at 120 (arbitration agreement imposed in adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate).

Here, even *assuming* a valid contract exists, the contract is unenforceable at least due to indefiniteness of the essential terms on price. Nowhere in the presented two versions of SLMAs include any license price or any pricing mechanism. Dkt. 28, Exs. 1–2. Neither is there prior course of dealings of the parties because Cadence alleged that Defendants "have never sought" a license from it. Compl. ¶ 2. Cadence pleads no "market price" or "prevailing price" for Cadence Software, either. Although unknown, the price is high (*see id.* at ¶ 1, "millions of dollars"). It is intriguing to think that Defendants were willing to enter a million-dollar contract with a single click without quoting or even *knowing the price*. Such an omission makes the contract so uncertain and indefinite

23

that the parties' intention cannot be ascertained. Therefore, even if it exists, the contract is void and unenforceable.

Furthermore, even *assuming* a valid contract exists, at least a critical term of the contract is unenforceable due to its unconscionability. First, the take-it-or-leave-it SLMAs as a whole are procedurally unconscionable because Defendants cannot negotiate or change any terms thereof. Compl. ¶¶ 12, 27, 34–35 & 54. There is no meaningful negotiation or choice by Defendants for the SLMAs, so they are procedurally unconscionable.

Second, Clause 27 of either version of the SLMA states: "This Agreement is prepared and executed and *shall be interpreted in the English language only*, and *no translation* of the Agreement into another language *shall have any effect*." Dkt. 28, Exs. 1–2. This English-only mandate is unconscionable on its face. To be clear, having the *option* to seek translation can overcome the unconscionability. *See, e.g., Cardenas v. AmeriCredit Fin. Servs. Inc.*, No. C 09-04978 SBA, 2010 WL 3619851, at *4 (N.D. Cal. Sept. 13, 2010); *Poponin v. Virtual Pro, Inc.*, No. C 06-4019 PJH, 2006 WL 2691418, at *9 (N.D. Cal. Sept. 20, 2006). However, Clause 27 extinguishes that option. By declaring that "no translation … shall have any effect" (Dkt. 28, Exs. 1–2), Cadence oppressed non-English-speaking users by unequal bargaining power. Such inequality is amplified by Cadence's global marketing ("[licensed]…throughout the United States, Europe, Asia, and other parts of the world" Compl. ¶ 18). It targets non-English markets while imposing English-only terms that negate translations. An individual with no legal English fluency cannot "meaningfully choose" to accept terms they cannot read—terms that *by Cadence's own design* defy translation. Therefore, Cadence's SLMAs as a whole, and especially Clause 27, are procedurally unconscionable due to an absence of meaningful choice.

Clause 27 of the SLMAs is also substantively unconscionable. Clause 27 of either version of

DEFENDANTS' MOTION TO DISMISS

5:25-cv-00317-AMO

the SLMA further states: "*You* agree to submit to *exclusive* jurisdiction in the federal and state courts of California, U.S.A. in the event of a dispute." Dkt. 28, Exs. 1–2 (emphases added). However, the same obligation is not placed on Cadence itself. An out-of-forum signer, no matter she is in Alaska, Italy, or Antarctica, will be dragged to this Court all because of a single click. However, Cadence—a global entity purposefully availing itself across the world ("throughout the United States, Europe, Asia, and other parts of the world" Compl. ¶ 18)—enjoys unfettered freedom of global forum shopping, be it here or the signer's home jurisdiction. Clause 27 is a jurisdictional straitjacket depriving the signer of the benefit of forum shopping and balanced litigation power—it can hale foreign defendants into distant, costly U.S. litigation while insulating itself from reciprocal exposure abroad. Such predatory asymmetry extinguishes any semblance of bilaterality, and thus renders the unconscionability in this one-sided clause glaring.

## V.    CONCLUSION

For the reasons stated above, Cadence's Complaint (Dkt. 1) should be dismissed with prejudice in its entirety.

DATED: April 21, 2025

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By:   */s/ Jack Shaw*
Jack Shaw
*Attorney for Defendants Yunjing Intelligent Innovation (Shenzhen) Co., Ltd., Yunjing Intelligence Robotics (Dongguan) Co., Ltd., Yunjing Intelligence Technology Development (Dongguan) Co., Ltd., Jingzhi Intelligence Supply Chain (Shenzhen) Co., Ltd., and Yunjing Intelligence (Shenzhen) Co., Ltd.*