L. Kieran Kieckhefer (SBN 251978)
  kkieckhefer@gibsondunn.com
Christina Myrold (SBN 324183)
  cmyrold@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA  94111-3715
Telephone:  415.393.8200
Facsimile:  415.393.8306

Ilissa Samplin (SBN 314018)
  isamplin@gibsondunn.com
Shaun A. Mathur (SBN 311029)
  smathur@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Ahmed ElDessouki (*admitted pro hac vice*)
  aeldessouki@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Plaintiff*
CADENCE DESIGN SYSTEMS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CADENCE DESIGN SYSTEMS, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>YUNJING INTELLIGENT INNOVATION (SHENZHEN) CO., LTD. (D/B/A NARWAL), YUNJING INTELLIGENCE ROBOTICS (DONGGUAN) CO., LTD. (D/B/A NARWAL), YUNJING INTELLIGENCE TECHNOLOGY DEVELOPMENT (DONGGUAN) CO., LTD. (D/B/A NARWAL), JINGZHI INTELLIGENCE SUPPLY CHAIN (SHENZHEN) CO., LTD. (D/B/A NARWAL), YUNJING INTELLIGENCE (SHENZHEN) CO., LTD. (D/B/A NARWAL),<br><br>    Defendants. | CASE NO. 3:25-cv-00317-AMO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY PENDING RESOLUTION OF DEFENDANTS' MOTION TO DISMISS**<br><br>Date:    August 7, 2025<br>Time:    2:00 p.m.<br>Ctrm:    10, 19th Floor<br>Judge:  Hon. Araceli Martínez-Olguín<br><br>Action Filed:  January 9, 2025<br>Trial Date:    None Set |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1
II. BACKGROUND ............................................................................................................... 2
    A. Cadence Files This Lawsuit to Put a Stop to Defendants' Unauthorized Access to and Use of Cadence's Proprietary Software .............................................. 2
    B. Defendants File a Motion to Dismiss and an Accompanying Lu Declaration That Attempts to Dispute the Facts Alleged in Cadence's Complaint .......................... 3
    C. The Court Admonishes Defendants That a Motion to Dismiss Does Not Automatically Stay Discovery and Issues a Scheduling Order ..................................... 4
    D. Cadence Serves Discovery Tailored to the Factual Assertions in the Lu Declaration ..................................................................................................................... 5
    E. Defendants File a Motion to Stay Discovery Pending Resolution of the Motion to Dismiss ..................................................................................................................... 5
III. LEGAL STANDARD ....................................................................................................... 5
IV. ARGUMENT .................................................................................................................... 6
    A. Defendants' Motion to Dismiss Will Not Dispose of the Case .................................... 6
    B. Defendants' Motion to Dismiss Invites Factual Disputes That Cannot Be Resolved Without Discovery ........................................................................................ 9
    C. Cadence Will Be Prejudiced If Discovery Is Stayed, but Defendants Will Not Be Prejudiced If Discovery Continues ................................................................. 11
V. CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. AllianceOne, Inc.*,
   2008 WL 11336721 (S.D. Cal. Oct. 22, 2008) ..................................................................6

*Allegiant Travel Co. v. R2 Soln's LLC*,
   2022 WL 7686760 (D. Nev. Oct. 13, 2022) ....................................................................11

*Barrett v. Apple Inc.*,
   2020 WL 13815568 (N.D. Cal. Oct. 22, 2020) ............................................................8, 12

*Estate of Bock v. Cty. of Sutter*,
   2012 WL 94618 (E.D. Cal. Jan. 9, 2012) ..........................................................................9

*Cazares v. Pac. Shore Funding*,
   2006 WL 149106 (C.D. Cal. Jan. 3, 2006) .....................................................................10

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ............................................................................................8

*Freeny v. Bank of Am. Corp.*,
   2015 WL 12535021 (C.d. Cal. Nov. 19, 2015) ...............................................................10

*Gray v. First Winthrop Corp.*,
   133 F.R.D. 39 (N.D. Cal. 1990) .......................................................................................9

*Hall v. Tilton*,
   2010 WL 539679 (N.D. Cal. Feb. 9, 2010) ......................................................................9

*Hamilton v. Rhoads*,
   2011 WL 5085504 (N.D. Cal. Oct. 25, 2011) ..................................................................9

*Heck v. Amazon.com, Inc.*,
   2022 WL 16579372 (N.D. Cal. Nov. 1, 2022) .................................................................9

*Hub Int'l Nw. LLC v. Larson*,
   2023 WL 2527150 (W.D. Wash. Mar. 15, 2023) ...........................................................11

*I.C. v. Zynga, Inc.*,
   2021 WL 3271187 (N.D. Cal. July 30, 2021) ..................................................................8

*Jacksonville Police Officers & Fire Fighters Health Ins. Tr. v. Gilead Sciences, Inc.*,
   2022 WL 17418970 (N.D. Cal. Dec. 5, 2022) .................................................................9

*Kor Media Grp., LLC v. Green*,
   294 F.R.D. 579 (D. Nev. 2013) ................................................................................11, 12

*Maxtor Corp. v. Read-Rite (Thailand) Co.*,
   2003 WL 24902406 (N.D. Cal. Dec. 4, 2003) ................................................................10

*Meta Platforms, Inc. v. Voyager Labs Ltd.*,
   2023 WL 4828007 (N.D. Cal. July 26, 2023) ........................................... 1, 5, 6, 8, 11, 12

ii

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Novelposter v. Javitch Canfield Grp.*,
  2014 WL 12618174 (N.D. Cal. May 23, 2014) ................................................................. 6

*Optronic Techs., Inc. v. Ningbo Sunny Electronic Co.*,
  2018 WL 1569811 (N.D. Cal. Feb. 16, 2018) ............................................. 6, 8, 9, 11, 12

*Palantir Tech. Inc. v. Abramowitz*,
  2020 WL 13548687 (N.D. Cal. Jan. 30, 2020) ................................................................ 8

*Pearl v. Coinbase Global, Inc.*,
  2023 WL 1769190 (N.D. Cal. Feb. 3, 2023) ................................................................. 12

*Rutman Wine Co. v. E. & J. Gallo Winery*,
  829 F.2d 729 (9th Cir. 1987) ........................................................................................... 9

*Singh v. Google, Inc.*,
  2016 WL 10807598 (N.D. Cal. Nov. 4, 2016) ...................................................... 2, 9, 12

*Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*,
  2024 WL 3616945 (9th Cir. Aug. 1, 2024) .................................................................. 1, 7

*Tavantzis v. Am. Airlines, Inc.*,
  2024 WL 812012 (N.D. Cal. Feb. 23, 2024) ........................................................ 2, 6, 10

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2023) ......................................................................................... 10

*Yamasaki v. Zicam LLC*,
  2021 WL 3675214 (N.D. Cal. Aug. 19, 2021) ................................................................ 9

**Statutes**

17 U.S.C. § 1201(a)(3)(A) .................................................................................................... 7

**Rules**

Fed. R. Civ. P. 12(d) ........................................................................................................... 10

Fed. R. Civ. P. 56(d)(2) ...................................................................................................... 10

## I. INTRODUCTION

Defendants' motion to stay discovery pending resolution of their baseless motion to dismiss is without merit and should be denied. For years, Defendants have sought to avoid accountability for their extensive, unauthorized access to and use of Cadence's proprietary software. Even after Cadence brought this lawsuit, Defendants have continued to skirt responsibility for, and seek to hide the full scope of, their misconduct. For instance, after the parties conducted the Rule 26(f) conference on March 25, 2025, Defendants took the position that discovery had not yet opened—a position this Court correctly labeled "preposterous." May 1, 2025 Hr'g Tr. at 4:6-7. Defendants' motion to stay discovery to further delay Cadence's right to discover the full extent of their misconduct is meritless and should be denied for at least three reasons.

*First*, Defendants have not come close to meeting their heavy burden to show that Cadence's claims for violation of the Digital Millennium Copyright Act ("DMCA") and breach of contract are "utterly frivolous" or filed merely to "conduct a fishing expedition" or extract a nuisance settlement, as required to justify a stay of discovery. *Meta Platforms, Inc. v. Voyager Labs Ltd.*, 2023 WL 4828007, at *1 (N.D. Cal. July 26, 2023) (Martínez-Olguín, J.). Defendants' attacks on Cadence's claims ignore the relevant law and facts. For instance, Defendants argue that Cadence's DMCA claim targets wholly extraterritorial conduct. But Defendants ignore that the location of the "lock" is determinative of whether a claim targets domestic or extraterritorial conduct (*Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, 2024 WL 3616945, at *2 (9th Cir. Aug. 1, 2024)), and that the license file needed to access Cadence's software is the relevant "lock" and is generated **in this District**. Defendants also argue that they did not agree to any contract with Cadence, but they ignore the body of law governing the enforceability of clickwrap agreements and Cadence's detailed allegations explaining that Cadence's software cannot be downloaded without a user accepting Cadence's clickwrap agreement. Defendants' motion to dismiss is destined to fail, and thus there is no reason for this Court to stay discovery pending its resolution.

*Second*, Defendants' motion to dismiss presents numerous fact-dependent issues that will require discovery to resolve. In fact, Defendants submitted a declaration with their motion to dismiss in an attempt to contradict the allegations in the Complaint and to introduce additional facts on which

Defendants rely in seeking dismissal. Defendants' submission of evidence outside the four corners of the Complaint alone "undermines [their] argument that the motion to dismiss can be decided without discovery." *Tavantzis v. Am. Airlines, Inc.*, 2024 WL 812012, at *2 (N.D. Cal. Feb. 23, 2024).

*Third*, Defendants have failed to show that they would be prejudiced if discovery continues. Besides invoking the general burden inherent in all civil litigation, Defendants "offer[] no particular or specific facts to support [their] assertion that a stay would be necessary to spare the parties or the Court from the 'burden' of discovery." *Singh v. Google, Inc.*, 2016 WL 10807598, at *2 (N.D. Cal. Nov. 4, 2016). By contrast, Cadence would be prejudiced if discovery is stayed, as any further delay of its ability to seek redress for Defendants' widespread theft risks evidence being lost, memories fading, and witnesses becoming unavailable. A stay of discovery also would prejudice the parties' ability to mediate their dispute, as discovery is essential for the parties to engage in fruitful negotiations. *See* May 1, 2025 Hr'g Tr. at 6:10–15:4 (Court and parties discussing whether early ADR would be fruitful).

Defendants' motion to stay discovery should be denied.

## II.     BACKGROUND

**A.     Cadence Files This Lawsuit to Put a Stop to Defendants' Unauthorized Access to and Use of Cadence's Proprietary Software**

Cadence is a California-based leader in Electronic Design Automation software, which is used by customers in nearly every industry, including automotive, mobile, aerospace, consumer electronics, and healthcare. Compl. ¶ 2. Cadence has invested hundreds of millions of dollars and expended considerable resources researching, designing, and refining its software. *Id.* ¶¶ 2, 17.

Cadence has taken several steps to protect its proprietary software from unauthorized use. For instance, as part of its intellectual property portfolio, Cadence owns registered U.S. copyrights to protect its proprietary software from unauthorized use. Compl. ¶ 2. Cadence also has limited the use of its software products to customers who execute a license agreement and pay license fees. *Id.* ¶¶ 21, 23, 27. Cadence has implemented security measures to prevent unauthorized use of its software. *Id.* ¶ 20. Cadence requires anyone who seeks to use one of its software products to install the Cadence License Manager on its server, obtain a license file that is generated in this District and associated with the user's server, and accept the terms of Cadence's clickwrap agreement (i.e., the Software License

and Maintenance Agreement ("SLMA")) when installing the Cadence License Manager and any software product. *Id.* ¶¶ 21, 23–25, 27–28, 34–35.

Despite Cadence taking these measures, software pirates have learned to "crack[]" its software to circumvent the security measures that limit access to authorized users with valid license files. Compl. ¶ 25. To protect against theft of its valuable intellectual property, Cadence uses a Phone Home System that detects and identifies unauthorized use of Cadence's software and transmits data regarding such unauthorized use to Cadence. *Id.* ¶ 26.

Using the Phone Home System, Cadence has detected more than 200,000 instances of Defendants' unauthorized use of Cadence's software. Compl. ¶ 42. By using Cadence's software without authorization and circumventing Cadence's technological measures, Defendants have avoided paying Cadence millions of dollars in license fees, all while profiting from the use of Cadence's software to manufacture their smart cleaning robots and sell them around the world, including in the United States. *Id.* ¶¶ 36, 43.

Cadence sent multiple letters to Defendants demanding that they cease their unauthorized use of the Cadence Software and compensate Cadence for Defendants' previous unauthorized use. Compl. ¶ 44. Defendants did not take any of Cadence's demands seriously and instead continued their unauthorized access to and illegal use of Cadence's software. *Id.* As a result, Cadence filed its Complaint on January 9, 2025, seeking relief for Defendants' willful violations of the DMCA and breach of contract. *See id.* ¶¶ 46–58.

B. **Defendants File a Motion to Dismiss and an Accompanying Lu Declaration That Attempts to Dispute the Facts Alleged in Cadence's Complaint**

On April 21, 2025, Defendants filed their motion to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim. Dkt. 32. Defendants also filed the Declaration of Panbing Lu ("Lu Declaration") in support of their motion to dismiss. Dkt. 33.

As to personal jurisdiction and venue, Defendants contend that all their unlawful acts occurred entirely in China, and that Defendants have no employees or operations in the United States. Dkt. 32 at 1, 9–12. In support, Defendants rely on the Lu Declaration (*id.*)—which asserts that Defendants conduct all operations outside the United States and have no employees in the United States (Dkt. 33

¶ 4–9)—and argue that Cadence can establish jurisdiction only if it presents its own evidence, "by affidavit or otherwise." Dkt. 32 at 4.

As to the DMCA, Defendants argue that Cadence's Complaint targets only extraterritorial conduct, as the Cadence License Manager would have been installed only on Defendants' machines in China. Dkt. 32 at 17. In support, Defendants again rely on the Lu Declaration for the assertion that "all Defendants are Chinese companies with zero California ties." *Id.* (citing Dkt. 33 ¶¶ 4–9).

As for the breach of contract claim, Defendants argue that no binding contract exists between the parties. Dkt. 32 at 19–22. Again, Defendants point to the Lu Declaration to argue that "each Defendant investigated and found no binding contract between Cadence and any Defendant," and that "each Defendant enforces a strict IT/Information Security Policy" that "bar[s] employees from using unlicensed or 'cracked' software" and "mandates that all workplace software … be properly licensed and approved by the company." *Id.* at 22 (citing Lu Decl. ¶¶ 10–12).

Cadence's opposition to Defendants' motion to dismiss is due June 2, 2025, and the motion is scheduled to be heard on August 28, 2025. *See* Dkt. 40.

**C.    The Court Admonishes Defendants That a Motion to Dismiss Does Not Automatically Stay Discovery and Issues a Scheduling Order**

On April 24, 2025, the parties submitted their joint case management statement, in which the parties provided competing positions as to the status of discovery. Dkt. 38 at 6–8. Cadence explained that the parties conducted the Rule 26(f) conference on March 25, 2025, and that discovery is thus open and should continue apace even pending resolution of Defendants' motion to dismiss. *Id.* at 6–7. For their part, Defendants argued that "discovery has not started yet," and that discovery should start only "after the threshold jurisdiction and venue questions are resolved." *Id.* at 7–8.

The parties appeared before the Court for a case management conference on May 1, 2025. At the outset of the hearing, the Court "admonishe[d] Defense counsel that a motion to dismiss does not automatically stay discovery and that discovery is open per the Federal Rules of Civil Procedure." Dkt. 40; *see also* May 1, 2025 Hr'g Tr. at 4:6–16 (Court stating: "The idea that discovery is not open yet is preposterous…. [I]t is not stayed. It is open.").

The Court next discussed with the parties whether the case should be referred to early ADR.

*See* May 1, 2025 Hr'g Tr. at 6:10–15:4. Ultimately, the Court deferred referring the case to ADR now, so "that there's enough time to engage in whatever discovery [the parties] need to make the ADR fruitful." *Id.* at 13:1-19, 14:21–15:4.

The Court issued a scheduling order at the end of the hearing. *See* Dkt. 40.

### D.  Cadence Serves Discovery Tailored to the Factual Assertions in the Lu Declaration

On May 2, 2025, Cadence served 44 document requests. *See* Dkt. 43-2. Contrary to Defendants' representation that Cadence's "discovery requests are in no way tethered" to the motion to dismiss (Mot. at 2), Cadence's document requests seek documents relating to the factual assertions made in the Lu Declaration that Defendants submitted with their motion to dismiss. *Compare id.* at 9–13 (RFP Nos. 5–14, 18–21, 33–34), *with* Dkt. 33 ¶¶ 4–14. For example, Cadence requested that Defendants produce documents relating to the Lu Declaration's claim that Defendants conduct all operations outside the United States (Dkt. 43-2 at 10 (RFP No. 10)), that no Defendant has any computer in the United States (*id.* at 11 (RFP No. 14)), and that all Defendants have contract approval policies (*id.* (RFP No. 19)). Defendants' response to Cadence's document requests is due June 2, 2025.

### E.  Defendants File a Motion to Stay Discovery Pending Resolution of the Motion to Dismiss

On May 5, 2025, Defendants filed a motion to stay discovery or, alternatively, limit discovery to jurisdictional evidence pending resolution of their motion to dismiss. Dkt. 42. Defendants argue that a stay is warranted because (1) their motion to dismiss "potentially disposes of" Cadence's claims, (2) "discovery is not necessary" to resolve the motion to dismiss notwithstanding their submission of the Lu Declaration, and (3) Cadence would not be prejudiced by a stay whereas Defendants would be prejudiced by being forced "to incur undue burdens and significant expenses." *Id.* at 2–3.

Defendants noticed their motion to stay discovery for hearing on August 7, 2025 (Mot. at 1)—more than two months after their responses are due to Cadence's first set of document requests.

### III.    LEGAL STANDARD

"The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending." *Meta Platforms, Inc. v. Voyager Labs Ltd.*, 2023 WL 4828007, at *1 (N.D. Cal. July 26, 2023) (Martínez-Olguín, J.). "[A] party seeking a stay of discovery carries the heavy burden of making a strong showing why discovery should be

denied." *Tavantzis v. American Airlines, Inc.*, 2024 WL 812012, at *1 (N.D. Cal. Feb. 23, 2024). "[M]otions to stay discovery are not favored" because they "undercut[] the Federal Rules liberal discovery provisions." *Adams v. AllianceOne, Inc.*, 2008 WL 11336721, at *2 (S.D. Cal. Oct. 22, 2008); *see also Novelposter v. Javitch Canfield Grp.*, 2014 WL 12618174, at *1 (N.D. Cal. May 23, 2014) ("[c]ourts have not looked favorably upon granting stays of discovery" pending "the disposition of a dispositive motion").

In deciding whether to grant a stay of discovery, "courts in this district analyze two prongs: (1) whether the pending motion is potentially dispositive of the entire case, and (2) whether the pending motion can be decided absent additional discovery." *Meta*, 2023 WL 4828007, at *1. This two-part test "is not satisfied by superficial statements or vague articulations demonstrating nothing more than the traditional burdens of litigation." *Id.* Rather, the moving party must make a "particular and specific" showing on each prong. *Optronic Techs., Inc. v. Ningbo Sunny Electronic Co.*, 2018 WL 1569811, at *1 (N.D. Cal. Feb. 16, 2018). If "either prong of this test is not established, discovery proceeds." *Meta*, 2023 WL 4828007, at *1.

## IV. ARGUMENT

Discovery in this case is open, and Defendants cannot meet their heavy burden to show that discovery should be stayed. *First*, Defendants' motion to dismiss is meritless and fails to show that Cadence will be unable to state a claim for relief. *Second*, Defendants submitted a declaration along with their motion to dismiss that invites factual disputes that cannot be resolved without discovery. *Third*, Defendants fail to demonstrate that they would be prejudiced in the absence of a stay of discovery. Defendants' motion to stay discovery fails at every turn and should be denied.

### A.  Defendants' Motion to Dismiss Will Not Dispose of the Case

Defendants fail to show that their motion to dismiss is potentially dispositive of the entire case. To do so, Defendants must demonstrate that Cadence "will be unable to state a claim for relief," and that its Complaint "is utterly frivolous" or filed merely to "conduct a fishing expedition or for settlement value." *Meta*, 2023 WL 4828007, at *2 (citations omitted).

In their motion, Defendants do not argue that Cadence's Complaint is frivolous or filed merely to extract a nuisance settlement. Instead, Defendants contend that "[t]he flaws and inconsistencies" in

Cadence's DMCA and breach of contract claims warrant a discovery stay, and that at minimum their motion to dismiss will narrow the issues in dispute. *See* Mot. at 2, 6–7. Both arguments lack merit and are insufficient to satisfy Defendants' heavy burden in any event.

To begin, Defendants' attacks on Cadence's DMCA and breach of contract claims fail, as Cadence will further explain in its opposition to Defendants' motion to dismiss that is due on June 2, 2025. As to the DMCA claim, Defendants argue that Cadence impermissibly targets only extraterritorial conduct, as the Complaint alleges that the Cadence License Manager "operates on Defendants' machines in China." Mot. at 1, 7. Defendants misconstrue the relevant law and the facts.

"When determining whether the case involves a domestic application of the statute," courts look to "the statute's focus." *Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, 2024 WL 3616945, at *2 (9th Cir. Aug. 1, 2024). As the Ninth Circuit explained in *Superama*, a circumvention claim under the DMCA "targets the evasion of technological measures preventing access to a copy." *Id.*; *see also* 17 U.S.C. § 1201(a)(3)(A) ("to 'circumvent a technological measure' means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner."). The Ninth Circuit concluded the focus of the statute "is the location of the *lock*," i.e., the password, "not the location of the tool used to circumvent it." *Superama*, 2024 WL 3616945, at *2 (emphasis added).

Under this standard, that Defendants may have been physically located abroad is largely irrelevant, as Defendants hacked Cadence's technological measures *located in the United States*. The Complaint alleges that Cadence's software will not operate unless a user first installs the Cadence License Manager, and that the Cadence License Manager will not operate without a valid *license file*. Compl. ¶¶ 20–25. The license file—i.e., the "lock" or "password" to the Cadence License Manager and Cadence software—is the relevant technological measure and is generated **in this District**. *Id.* ¶¶ 23, 25. The Complaint alleges that Defendants unlawfully circumvented this technological measure by using counterfeit license files or "cracked" versions of Cadence's software. *Id.* ¶¶ 39–43. Defendants do not address these allegations, and completely ignore that the license file is the relevant technological measure. Cadence's allegations concerning the license file are more than adequate to plead a domestic application of the DMCA under Ninth Circuit law.

Cadence also adequately pleads its breach of contract claim. Defendants argue that there was no mutual assent because Cadence alleges that Defendants are not customers of Cadence and never obtained a valid license from Cadence. Mot. at 2, 7. Again, Defendants misconstrue the facts and law. Cadence alleged that Defendants agreed to Cadence's clickwrap agreement—the SLMA—when they installed pirated copies of Cadence's software. Compl. ¶¶ 12–13, 27, 34–35, 38, 54. In arguing that the parties did not form an agreement, Defendants disregard the entire body of case law upholding and enforcing clickwrap agreements like the SLMA. *E.g.*, *I.C. v. Zynga, Inc.*, 2021 WL 3271187, at *1 (N.D. Cal. July 30, 2021) (collecting cases). Defendants also ignore that a user can agree to the SLMA without becoming a valid Cadence customer. Indeed, the SLMA governs the *use* of the software. That is why, rather than employ the word "customer," Cadence alleges that "[w]hen attempting to install the Cadence License Manager, a *user* must select 'I accept,'" and that "[w]hen the *user* installs the Cadence software, the *user* must … accept the terms of the SLMA." Compl. ¶¶ 34–35 (emphases added).[1]

Even if Defendants' motion to dismiss had any merit (and it does not), Defendants fail to explain why the alleged defects could not be cured by amendment. After all, "leave to amend should be freely given" (*Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016)), and courts regularly deny motions to stay discovery where, as here, the moving party improperly assumes leave to amend would not be granted. *E.g.*, *Meta*, 2023 WL 4828007, at *2 (denying motion to stay discovery where defendant's attacks on plaintiff's claim could be cured by amendment rather than dismissal with prejudice at the pleading stage); *Barrett v. Apple Inc.*, 2020 WL 13815568, at *2 (N.D. Cal. Oct. 22, 2020) (denying motion to stay discovery where it was "possible that certain of the claims will survive or that certain claims will be dismissed with leave to amend such that the case will continue"); *Palantir Tech. Inc. v. Abramowitz*, 2020 WL 13548687, at *3 (N.D. Cal. Jan. 30, 2020) ("Even if Defendant were correct that Plaintiff's claims must be dismissed as alleged, the Court would consider whether leave to amend should be granted, rendering Defendants' motion not dispositive."); *Optronic*, 2018 WL 1569811, at *1 ("Defendants correctly observe that the pending motion to dismiss could be dispositive of the entire

---

[1] In their motion to stay discovery, Defendants do not invoke their personal jurisdiction argument to suggest that their motion to dismiss is potentially dispositive of the entire case. In any event, this Court has personal jurisdiction over Defendants, as Cadence will explain in their opposition to Defendants' motion to dismiss.

action, *if* granted in its entirety and *if* the court decides that further leave to amend should not be permitted. But those are big 'ifs.'"); *Singh v. Google, Inc.*, 2016 WL 10807598, at *2 (N.D. Cal. Nov. 4, 2016) (denying motion to stay discovery where "Defendant assume[d]" "the Court would not grant Plaintiff leave to amend").

As a fallback, Defendants argue that their motion to dismiss will "narrow the facts and issues in dispute, which will in turn narrow the scope of discovery to be taken." Mot. at 2. But Defendants do not offer anything "outside of their own opinion" explaining how or why that would be the case. *Optronic*, 2018 WL 1569811, at *1. Nor could it, as both of Cadence's claims stem from Defendants' unauthorized use of Cadence's software, which in turn gives rise to multiple independent causes of action. Even if the Court dismissed one claim, the scope of discovery would remain substantially the same.

Defendants' "[i]dle speculation" that their motion to dismiss will dispose of or narrow the case is insufficient as a matter of law to justify staying discovery. *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990).[2]

### B. Defendants' Motion to Dismiss Invites Factual Disputes That Cannot Be Resolved Without Discovery

Defendants' motion to stay discovery should be denied for the independent reason that their motion to dismiss undermines any suggestion that it "hinges upon legal issues, not factual ones," and

---

[2] None of Defendants' cases support staying discovery, as each is completely inapposite. For example, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987), involved antitrust claims and held that deferring discovery "[i]n antitrust cases … makes sense because the costs of discovery in such actions are prohibitive." *Jacksonville Police Officers & Fire Fighters Health Ins. Tr. v. Gilead Sciences, Inc.*, 2022 WL 17418970, at *2 (N.D. Cal. Dec. 5, 2022), also involved antitrust claims, and the court noted that, unlike here, a scheduling order had not yet issued. *Hall v. Tilton*, 2010 WL 539679, at *1 (N.D. Cal. Feb. 9, 2010), and *Hamilton v. Rhoads*, 2011 WL 5085504, at *1 (N.D. Cal. Oct. 25, 2011), concerned pro se plaintiffs who filed their actions from prison, and the defendants in *Hamilton* moved to dismiss because the plaintiff failed to exhaust his claims. The plaintiff in *Heck v. Amazon.com, Inc.*, 2022 WL 16579372, at *2 (N.D. Cal. Nov. 1, 2022), did not "meaningfully engage with the substance of [d]efendants' arguments regarding the deficiency of the allegations in the complaint," or "dispute that the Court can decide the pending motion to dismiss without discovery," whereas here Cadence does both. In *Estate of Bock v. Cty. of Sutter*, 2012 WL 94618, at *2 (E.D. Cal. Jan. 9, 2012), the court permitted limited discovery and stayed all other discovery for only 30 days—not indefinitely, as Defendants seek here. And in *Yamasaki v. Zicam LLC*, 2021 WL 3675214, at *2 (N.D. Cal. Aug. 19, 2021), the plaintiff brought claims that private litigants are categorically barred from asserting.

can be resolved without discovery. Mot. at 2, 8.

*First*, each argument in Defendants' motion to dismiss relies extensively on the Lu Declaration in an attempt to contradict the Complaint and introduce new facts indicating that Defendants have no operations or property in the United States and maintain policies that prohibit the use of unlicensed software and govern employees' ability to enter into contracts. *See supra* Part II.B; Dkt. 33 ¶¶ 4–14.[3] To date, Cadence has had no opportunity to test the facts asserted in the Lu Declaration, and thus discovery would be necessary before dismissal could even be considered. *See* Fed. R. Civ. P. 12(d) (motion under Rule 12(b)(6) must be converted to motion for summary judgment if matters outside the pleadings are considered); Fed. R. Civ. P. 56(d)(2) (discovery may be permitted where party opposing summary judgment motion has not had an opportunity to take necessary discovery). Importantly, Defendants' "reliance on this evidence undermines [their] argument that the motion to dismiss can be decided without discovery." *Tavantzis*, 2024 WL 812012, at *2 (denying motion to stay discovery where "motion to dismiss relie[d] on evidence outside of the first amended complaint").

*Second*, Defendants' motion to dismiss raises additional factual issues that would require discovery to resolve. For example, as to Cadence's breach of contract claim, Defendants make arguments concerning their employees' contracting authority and the purported unconscionability of certain provisions in the SLMA. *See* Dkt. 32 at 20–25. But questions concerning an employee's authority "are extremely fact-intensive." *Maxtor Corp. v. Read-Rite (Thailand) Co.*, 2003 WL 24902406, at *6 (N.D. Cal. Dec. 4, 2003); *see also Freeny v. Bank of Am. Corp.*, 2015 WL 12535021, at *26 (C.d. Cal. Nov. 19, 2015) ("[w]hether employees' conduct is within the scope of employment is 'generally … a question of fact' not appropriate for resolution in the context of a motion to dismiss"). And "[a] determination of whether a contract is unconscionable requires a consideration of facts that are beyond the scope of a motion to dismiss." *Cazares v. Pac. Shore Funding*, 2006 WL 149106, at *6 n.4 (C.D. Cal. Jan. 3, 2006). Defendants' motion to dismiss thus requires discovery to resolve.

*Third*, even if the Court disregards all the fact-based issues raised in Defendants' motion to

---

[3] The Court should decline to consider the Lu Declaration and deny Defendants' motion to dismiss, because the declaration is not attached to or incorporated into the Complaint or subject to judicial notice. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2023). To the extent the Court considers the declaration, however, the Court should permit Cadence to conduct discovery.

Gibson, Dunn & Crutcher LLP

dismiss and adjudicates the motion based only on the four corners of the Complaint, that still would not justify a stay of discovery. After all, motions to dismiss are generally decided based on the sufficiency of the complaint, but "[t]he mere filing of a motion to dismiss is not ordinarily sufficient to stop the discovery process." *Meta*, 2023 WL 4828007, at *2. If it was, then every case with a pending "motion to dismiss—the large majority of federal actions—would be stayed at some point. That sort of inefficient and chaotic system is not contemplated by the Federal Rules, and is in any event directly at odds with the need for expeditious resolution of litigation." *Optronic*, 2018 WL 1569811, at *2.

### C. Cadence Will Be Prejudiced If Discovery Is Stayed, but Defendants Will Not Be Prejudiced If Discovery Continues

The Court also should decline to stay discovery because Cadence will be prejudiced if discovery is stayed, but Defendants will not suffer any prejudice if discovery continues.

Although "parties opposing a motion to stay discovery carry no burden to show harm or prejudice if discovery is stayed" (*Allegiant Travel Co. v. R2 Soln's LLC*, 2022 WL 7686760, at *3 (D. Nev. Oct. 13, 2022)), Cadence will be prejudiced if discovery is stayed. Defendants have ignored Cadence's attempts to address Defendants' unlawful conduct, necessitating Cadence's filing of this lawsuit. Compl. ¶ 44. A stay of discovery would only further delay Cadence's ability to seek redress for Defendants' widespread theft, all while increasing the likelihood that evidence is lost, memories fade, and witnesses disappear. *See Kor Media*, 294 F.R.D. at 583 ("motions to dismiss are a frequent part of federal practice and an overly lenient standard for granting motions to stay all discovery is likely to result in unnecessary delay in many cases"). Defendants suggest that any stay would last for only a few months, since the motion to dismiss will be fully briefed and argued by August 28, 2025. Mot. at 2. But of course, there is no guarantee that the motion to dismiss will be decided by then and no guarantee that any stay would be short. *See Hub Int'l Nw. LLC v. Larson*, 2023 WL 2527150, at *4 (W.D. Wash. Mar. 15, 2023) ("While the Court appreciates Defendant's confidence in the Court's ability to speedily resolve the Motion to Dismiss, there is no guarantee that a stay would be 'short.'").

By contrast, Defendants will not be prejudiced by a stay. Defendants argue that a stay would "conserve[] judicial resources" and "spare Defendants the substantial burden of addressing" Cadence's "broad and burdensome" discovery requests. Mot. at 8. But "[t]he resources required to respond to

discovery are part of the traditional burdens of litigation." *Barrett*, 2020 WL 1385568, at *2. And beyond offering vague platitudes, Defendants have not made "a particularized showing" that "discovery in this case is any more burdensome than it is on parties to other civil litigations. Discovery is not stayed just because it imposes *some* burden." *Optronic*, 2018 WL 1569811, at *2; *see also Singh*, 2016 WL 10807598, at *2 (denying motion to stay discovery where movant "offer[ed] no particular or specific facts to support its assertion that a stay would be necessary to spare the parties or the Court from the 'burden' of discovery"). To the extent Defendants believe any of Cadence's 44 targeted document requests is overbroad or unduly burdensome, they are free to raise issues on a case-by-case basis. *See Meta*, 2023 WL 4828007, at *2 (denying motion to stay discovery and stating that the parties may raise discovery disputes as they arise). But Defendants' *ipse dixit* that Cadence's discovery requests are overbroad and burdensome cannot support a discovery stay. *See Kor Media Grp., LLC v. Green*, 294 F.R.D. 579, 583 (D. Nev. 2013) ("The fact that discovery may involve inconvenience and expense is not sufficient, standing alone, to support a stay of discovery.").

Defendants also argue that this case is "strikingly similar" to *Pearl v. Coinbase Global, Inc.*, 2023 WL 1769190 (N.D. Cal. Feb. 3, 2023), but they completely misrepresent the facts of that case. Mot. at 9. Defendants say the defendants' motions in *Pearl* were potentially dispositive, the plaintiff did not identify any particular need for discovery, and the defendants showed a stay of discovery was warranted. *Id.* In truth, the defendant in *Pearl* moved to compel arbitration of plaintiffs' claims and to stay the case pending completion of arbitration. 2023 WL 1769190, at *1. The defendant did *not* move to dismiss or move to stay discovery pending resolution of a motion to dismiss. And the court did not say anything about "the purpose of a Rule 12(b)(6) motion," as Defendants suggest. Mot. at 9. As a result, *Pearl* does not support Defendants' request for a stay of discovery.

## V. CONCLUSION

The Court should deny Defendants' Motion to Stay Discovery.

| | |
|---|---|
| DATED: May 19, 2025 | Respectfully submitted, |
| | GIBSON, DUNN & CRUTCHER LLP |
| | By: */s/ L. Kieran Kieckhefer* |
| | L. Kieran Kieckhefer |
| | Ilissa Samplin |
| | Shaun A. Mathur |
| | Ahmed ElDessouki |
| | Christina Myrold |
| | |
| | *Attorneys for Plaintiff Cadence Design Systems, Inc.* |