1   L. Kieran Kieckhefer (SBN 251978)
        kkieckhefer@gibsondunn.com
2   Christina Myrold (SBN 324183)
        cmyrold@gibsondunn.com
3   GIBSON, DUNN & CRUTCHER LLP
    One Embarcadero Center, Suite 2600
4   San Francisco, CA  94111-3715
    Telephone:    415.393.8200
5   Facsimile:    415.393.8306

6   Ilissa Samplin (SBN 314018)
        isamplin@gibsondunn.com
7   Shaun A. Mathur (SBN 311029)
        smathur@gibsondunn.com
8   GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
9   Los Angeles, CA  90071-3197
    Telephone:    213.229.7000
10  Facsimile:    213.229.7520

    Ahmed ElDessouki (*admitted pro hac vice*)
        aeldessouki@gibsondunn.com
    GIBSON, DUNN & CRUTCHER LLP
    200 Park Avenue
    New York, NY  10166-0193
    Telephone:    212.351.4000
    Facsimile:    212.351.4035

11  *Attorneys for Plaintiff*
    *CADENCE DESIGN SYSTEMS, INC.*

12

13              IN THE UNITED STATES DISTRICT COURT

14          FOR THE NORTHERN DISTRICT OF CALIFORNIA

15                  SAN FRANCISCO DIVISION

16  CADENCE DESIGN SYSTEMS, INC.,          CASE NO. 3:25-cv-00317-AMO

17              Plaintiff,                  **PLAINTIFF'S OPPOSITION TO**
                                           **DEFENDANTS' MOTION TO DISMISS**
18      v.                                 **COMPLAINT**

19  YUNJING INTELLIGENT INNOVATION         Date:      August 28, 2025
    (SHENZHEN) CO., LTD. (D/B/A NARWAL),   Time:      2:00 PM
20  YUNJING INTELLIGENCE ROBOTICS          Ctrm:      10, 19th Floor
    (DONGGUAN) CO., LTD. (D/B/A NARWAL),   Judge:     Hon. Araceli Martínez-Olguín
21  YUNJING INTELLIGENCE TECHNOLOGY
    DEVELOPMENT (DONGGUAN) CO., LTD.       Action Filed:    January 9, 2025
22  (D/B/A NARWAL), JINGZHI INTELLIGENCE   Trial Date:      None Set
    SUPPLY CHAIN (SHENZHEN) CO., LTD.
23  (D/B/A NARWAL), YUNJING
    INTELLIGENCE (SHENZHEN) CO., LTD.
24  (D/B/A NARWAL),

25              Defendants.

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND ................................................................................................2

    A.    Cadence Protects Its Proprietary Software By, Among Other Measures, Employing License Files Generated In California ......................................................2

    B.    Defendants Steal Cadence's Software By Circumventing Cadence's License Files Generated In California ................................................................3

III.  LEGAL STANDARD ........................................................................................4

IV.   ARGUMENT ....................................................................................................5

    A.    The Court Has Personal Jurisdiction Over Defendants ...........................6

        1.    Cadence And Defendants Entered Into A Valid Contract .............................6

        2.    Cadence Has Adequately Alleged A Binding Forum Selection Clause ...........7

        3.    Cadence Has Also Made A Prima Facie Showing Of Specific Personal Jurisdiction ......................................................8

        4.    If Any Questions Remain, The Court Should Defer The Issue Of Jurisdiction To Trial Or Order Jurisdictional Discovery ......................14

    B.    Venue Is Proper In This District ................................................15

    C.    Cadence Has Plausibly Alleged Its DMCA And Contract Claims ...........17

        1.    Cadence Plausibly Alleges A Domestic Application Of The DMCA..............17

        2.    Cadence Plausibly Alleges Its Breach Of Contract Claim ...........20

    D.    At Minimum, The Court Should Grant Cadence Leave To Amend ...........25

V.    CONCLUSION..................................................................................................25

1
2

**TABLE OF AUTHORITIES**
**Cases**

3

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*,
   125 F. Supp. 3d 945 (N.D. Cal. 2015)...................................................................20, 21, 22

4

*Albert's Organics, Inc. v. Holzman*,
   445 F. Supp. 3d 463 (N.D. Cal. 2020).............................................................................. 20

5
6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................................. 5

7

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
   571 U.S. 49 (2013)............................................................................................................. 16

8
9

*Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd.*,
   191 F. Supp. 3d 1007 (N.D. Cal. 2016)...........................................................9, 11, 13

10
11

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
   874 F.3d 1064 (9th Cir. 2017) .................................................................................. 12, 13

12

*Battle v. Taylor James, LLC*,
   607 F. Supp. 3d 1025 (C.D. Cal. 2022) ............................................................................ 4

13
14

*Blizzard Entm't, Inc. v. Bossland GmbH*,
   2017 WL 412262 (C.D. Cal. Jan. 25, 2017) ........................................................4, 12, 13

15

*Brennan v. Nat'l Tel. Directory Corp.*,
   850 F. Supp. 331 (E.D. Pa. 1994) .................................................................................... 21

16
17

*Briskin v. Shopify, Inc.*,
   135 F.4th 739 (9th Cir. 2025) (en banc) .....................................4, 8, 9, 10, 11, 12, 13

18

*C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*,
   213 F.3d 474 (9th Cir. 2000) ............................................................................................ 24

19
20

*Cadence Design Sys., Inc. v. Pounce Consulting, Inc.*,
   4:17-cv-04732-PJH (N.D. Cal. Nov. 1, 2017) .................................................................. 7

21

*Cadence Design Sys., Inc. v. Suzhou Tianzhun Tech. Co., Ltd.*,
   5:24-cv-00816-EKL (N.D. Cal. May 1, 2025) ................................................................ 21

22
23

*Cadence Design Sys., Inc. v. Syntronic AB*,
   2021 WL 4222040 (N.D. Cal. Sept. 16, 2021) .............................................................. 14

24

*Cadence Design Systems, Inc. v. Pounce Consulting, Inc.*,
   2019 WL 1095838 (N.D. Cal. Jan. 23, 2019)................................6, 7, 9, 11, 12, 13, 23

25
26

*Cazares v. Pac. Shores Funding*,
   2006 WL 149106 (C.D. Cal. Jan. 3, 2006) ..................................................................... 25

27

*Century Sur. Co. v. Master Design Drywall, Inc.*,
   2009 WL 3425326 (S.D. Cal. Oct. 21, 2009) ................................................................ 22

28

Gibson, Dunn &
Crutcher LLP

ii

*Chodos v. W. Publ'g Co.*,
   292 F.3d 992 (9th Cir. 2002) ................................................................................................. 25

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
   880 F. Supp. 2d 1045 (N.D. Cal. 2012) .............................................................................. 21

*CollegeSource, Inc. v. AcademyOne, Inc.*,
   653 F.3d 1066 (9th Cir. 2011) .......................................................... 4, 9, 10, 11, 12, 13, 14

*Craigslist, Inc. v. Doe 1*,
   2011 WL 1897423 (N.D. Cal. Apr. 25, 2011) ....................................................................... 7

*Craigslist, Inc. v. Naturemarket, Inc.*,
   694 F. Supp. 2d 1039 (N.D. Cal. 2010) ............................................................................ 7, 8

*Crown Beverage Co., Inc. v. Cerveceria Moctezuma, S.A.*,
   663 F.2d 886 (9th Cir. 1981) ............................................................................................... 15

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
   557 F.2d 1280 (9th Cir. 1977) ............................................................................................. 14

*Docksider, Ltd. v. Sea Tech., Ltd.*,
   875 F.2d 762 (9th Cir. 1989) ................................................................................................. 8

*Drag v. Motion Picture Indus. Health Plan for Active Participants*,
   144 F. Supp. 3d 1097 (N.D. Cal. 2015) .............................................................................. 13

*Eventbrite, Inc. v. Loranger*,
   2019 WL 11499335 (N.D. Cal. Nov. 19, 2019) ................................................................. 16

*Focht v. Sol Melia S.A.*,
   2010 WL 3155826 (N.D. Cal. Aug. 9, 2010) ..................................................................... 14

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   592 U.S. 351 (2021) ............................................................................................................... 4

*Fredianelli v. Jenkins*,
   931 F. Supp. 2d 1001 (N.D. Cal. 2013) .............................................................................. 24

*Freeny v. Bank of Am. Corp.*,
   2015 WL 12535021 (C.D. Cal. Nov. 19, 2015) ................................................................. 25

*Gjovik v. Apple Inc.*,
   2024 WL 4369656 (N.D. Cal. Oct. 1, 2024) ...................................................................... 20

*Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
   972 F.3d 1101 (9th Cir. 2020) ............................................................................................... 5

*Handy v. Lane County*,
   585 F. App'x 570 (9th Cir. 2014) ....................................................................................... 25

*Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) ............................................................................................. 14

Gibson, Dunn &
Crutcher LLP

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
   72 F.4th 1085 (9th Cir. 2023) .................................................................................. 11

*I.C. v. Zynga, Inc.*,
   2021 WL 3271187 (N.D. Cal. July 30, 2021) ........................................................... 23

*InteliClear, LLC v. ETC Global Holdings, Inc.*,
   978 F.3d 653 (9th Cir. 2020) .................................................................................. 22

*JUUL Labs Inc. v. Chou*,
   2022 WL 2165411 (C.D. Cal. Feb. 11, 2022) ........................................................... 23

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984) ............................................................................................ 11, 12

*Lang Van, Inc. v. VNG Corp.*,
   40 F.4th 1034 (9th Cir. 2022) .............................................................................. 13, 16

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) .................................................................... 5, 16, 20, 21

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972) ................................................................................................. 8, 15

*Madsen v. Buffum*,
   2013 WL 12139139 (C.D. Cal. July 17, 2013) ......................................................... 14

*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006) .................................................................................. 21

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
   647 F.3d 1218 (9th Cir. 2011) ............................................................................. 4, 11

*Maxtor Corp. v. Read-Rite (Thailand) Co., Ltd.*,
   2003 WL 24902406 (N.D. Cal. Dec. 4, 2003) ......................................................... 24

*Metabolife Int'l, Inc. v. Wornick*,
   264 F.3d 832 (9th Cir. 2001) .................................................................................. 22

*Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*,
   874 F.3d 604 (9th Cir. 2017) .................................................................................. 22

*Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*,
   686 F. Supp. 2d 1318 (S.D. Fla. 2010) .................................................................... 24

*Nat'l Equip. Rental, Ltd. v. Szukhent*,
   375 U.S. 311 (1964) ................................................................................................. 7

*Nexon Am., Inc. v. S.H.*,
   2011 WL 13217951 (C.D. Cal. Dec. 13, 2011) ........................................................ 24

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ................................................................................ 23

Gibson, Dunn &
Crutcher LLP

*Oki Semiconductor Co. v. Wells Fargo Bank Nat'l Ass'n*,
   298 F.3d 768 (9th Cir. 2002) ........................................................................................... 10

*Panavision Int'l, L.P. v. Toeppen*,
   141 F.3d 1316 (9th Cir. 1998) ......................................................................................... 10

*Pebble Beach Co. v. Caddy*,
   453 F.3d 1151 (9th Cir. 2006) ........................................................................................... 4

*Ravelo Monegro v. Rosa*,
   211 F.3d 509 (9th Cir. 2000) ............................................................................................. 5

*RJR Nabisco v. Eur. Cmty.*,
   579 U.S. 325 (2016) ........................................................................................................ 17

*San Joaquin Gen. Hosp. v. United Healthcare Ins. Co.*,
   2017 WL 1093835 (E.D. Cal. Mar. 23, 2017) ................................................................ 24

*Schmitz v. Mars, Inc.*,
   261 F. Supp. 2d 1226 (D. Or. 2003) ............................................................................... 20

*Snukal v. Flightways Mfg., Inc.*,
   23 Cal. 4th 754 (2000) .................................................................................................... 24

*Stewart v. Screen Gems-EMI Music, Inc.*,
   81 F. Supp. 3d 938 (N.D. Cal. 2015) ....................................................................... 20, 21

*Sundby v. Marquee Funding Grp., Inc.*,
   2020 WL 434487 (S.D. Cal. Jan. 28, 2020) ................................................................... 22

*Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*,
   2024 WL 3616945 (9th Cir. Aug. 1, 2024) .........................................................17, 18, 19

*Synopsys, Inc. v. AzurEngine Techs., Inc.*,
   401 F. Supp. 3d 1068 (S.D. Cal. 2019) .......................................................................... 18

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
   2017 WL 3485881 (N.D. Cal. Aug. 15, 2017) .................................................................. 8

*Teed v. Chen*,
   2022 WL 16839496 (N.D. Cal. Nov. 9, 2022) ................................................................ 25

*Title Guarantee & Trust Co. v. Hammond Lumber Co.*,
   62 Cal. App. 245 (1923) .................................................................................................. 24

*Tradin Organics USA, LLC v. Advantage Health Matters, Inc.*,
   2015 WL 1306929 (N.D. Cal. Mar. 23, 2015) ........................................................... 15, 16

*Twitter, Inc. v. Skootle Corp.*,
   2012 WL 2375486 (N.D. Cal. June 22, 2012) .................................................................. 8

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ..................................................................................... 20, 22

Gibson, Dunn &
Crutcher LLP

v

*Walden v. Fiore*,
    571 U.S. 277 (2014) .................................................................................................... 12

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
    655 F.3d 1039 (9th Cir. 2011) ..................................................................................... 25

*Yei A. Sun v. Advanced China Heathcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018) ..................................................................................... 15

*Zazueta Perez v. Hal Hays Constr., Inc.*,
    2016 WL 9308014 (C.D. Cal. Aug. 22, 2016) ............................................................ 21

**Statutes**

17 U.S.C. § 1201 ................................................................................................................. 17, 19

28 U.S.C. § 1391 ................................................................................................................... 5, 15

28 U.S.C. § 1406(a) ..................................................................................................................... 4

Digital Millennium Copyright Act .......................................... 1, 2, 5, 6, 10, 13, 14, 16, 17, 18, 19

**Rules**

Fed. R. Civ. P. 12 .................................................................... 4, 5, 14, 16, 20, 21, 22

Federal Rule of Evidence 201 .......................................................................................... 20, 21

Rule 4(k)(2) ............................................................................................................................. 13

Rule 56(d) ............................................................................................................................... 22

**Treatises**

Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1366 ....................................................... 22

Gibson, Dunn &
Crutcher LLP

vi

# I.     INTRODUCTION

This case arises from Defendants' widespread theft and unauthorized use of Cadence's copyrighted software.  Cadence has repeatedly requested that Defendants cease their illegal use of Cadence's software and, given their clear need for the software, become a legitimate, paying Cadence customer.  Defendants repeatedly ignored Cadence's outreach and continued their illegal conduct, forcing Cadence to file this lawsuit and assert claims for Defendants' repeated violations of the Digital Millennium Copyright Act ("DMCA") and breaches of the Cadence license agreement.

Defendants **do not deny** their widespread theft of Cadence's copyrighted software.  Instead, Defendants ask the Court to dismiss Cadence's claims based on purported pleading deficiencies.  Relying on misinterpretations of the law and mischaracterizations of the factual allegations in the Complaint, Defendants challenge personal jurisdiction and venue and argue that the Complaint does not plausibly allege DMCA and breach of contract claims.  These arguments should be rejected.

*First*, this Court has personal jurisdiction over Defendants.  A valid contract exists between Cadence and Defendants, the Software License and Maintenance Agreement ("SLMA"), which Defendants agreed to when they accessed and used Cadence's software.  Defendants expressly agreed to the jurisdiction of this Court pursuant to the mandatory forum selection clause in the SLMA.  The Court also independently has personal jurisdiction over Defendants under traditional principles of specific personal jurisdiction because Defendants expressly aimed their wrongful conduct at, and knowingly caused harm to Cadence in, California, and have sought to cultivate a market throughout the United States, including in California.

*Second*, venue is proper in this District for two independent reasons:  (1) this Court has personal jurisdiction over Defendants, and (2) Defendants are bound by the SLMA's forum selection clause.  Defendants seek to escape this forum based on the doctrine of *forum non conveniens*, but fail to meet their heavy burden under that doctrine, including because the SLMA contains a mandatory forum-selection clause and provides for application of California law.

*Third*, the Complaint plausibly alleges a DMCA claim.  Defendants challenge only one aspect of that claim—whether the Complaint pleads a permissible domestic application of the statute.  The Ninth Circuit's recent decision in *Superama* unequivocally confirms that it does.  Defendants argue

OPPOSITION TO MOTION TO DISMISS
CASE NO. 3:25-CV-00317-AMO

Gibson, Dunn &
Crutcher LLP

that any unauthorized access of Cadence's software could have only occurred in China, but *Superama* concluded that the relevant inquiry focuses on the location of the protective *technological measure* Defendants circumvented, not where Defendants accessed Cadence's software. Here, the protective technological measure that was circumvented is the Cadence license file, which is generated and located *in this District*. The Complaint thus adequately pleads a domestic application of the DMCA.

*Last*, the Complaint plausibly alleges a breach of contract claim. Relying on an impermissible fact declaration—which the Court should ignore at the pleading stage—Defendants assert that there was no mutual assent to the SLMA. But this argument is against the great weight of this Circuit's authority enforcing clickwrap agreements, including the SLMA itself. Defendants' unconscionability arguments likewise fail because they require factual inquiries inappropriate on a motion to dismiss.

The Court should deny Defendants' motion to dismiss in its entirety.

## II.    BACKGROUND

### A.    Cadence Protects Its Proprietary Software By, Among Other Measures, Employing License Files Generated In California

Cadence is a California-based leader in Electronic Design Automation software, which is used by customers in nearly every industry, including automotive, mobile, aerospace, consumer electronics, and healthcare. Compl. ¶ 2. Cadence has invested hundreds of millions of dollars and expended considerable resources researching, designing, and refining its software. *Id.* ¶ 17.

Cadence has taken several steps to protect its proprietary software from unauthorized use. For instance, Cadence owns registered U.S. copyrights to protect its proprietary software from unauthorized use. Compl. ¶ 2. Cadence also has limited the use of its software products to customers who execute a license agreement and pay license fees. *Id.* ¶¶ 21, 23, 27. And Cadence has implemented security measures to prevent unauthorized use of its software. *Id.* ¶ 20.

In particular, Cadence requires anyone who seeks to use one of its software products to install the Cadence License Manager, which is a tool that controls use of the Cadence software to ensure a customer does not exceed the number of licenses purchased. Compl. ¶ 21. To install the Cadence License Manager, the user must first accept the terms of Cadence's SLMA. *Id.* ¶¶ 27–28, 34–35. After the user purchases Cadence's software—that is, after a user pays Cadence pursuant to a valid license—

Cadence generates a license file associated with the user's server, such that the license file can work only on that particular server. *Id.* ¶ 23. Critically, Cadence generates those license files *in this District*. *Id.* ¶¶ 23, 25. The license files from this District act as the key to the Cadence License Manager, which unlocks the customer's ability to use the Cadence software. *Id.* ¶¶ 24–25. Once the license file is entered into the Cadence License Manager, the user may then access the licensed software only if the user "again accept[s] the terms of the SLMA." *Id.* 35.

If a user does not accept the terms of the SLMA, it cannot install the Cadence License Manager or the Cadence software. Compl. ¶¶ 34–35. Defendants entered into at least two versions of the SLMAs, each providing that the user "submit[s] to exclusive jurisdiction in the federal and state courts of California, U.S.A. in the event of a dispute," that any dispute shall be governed by "the laws of the State of California," and that Cadence's principal place of business is located in San Jose, California. *Id.* ¶¶ 12–13; *see* Dkts. 28-1, 28-2.

Despite Cadence taking these measures, software pirates have learned to "crack[]" its software to circumvent the security measures that limit access to authorized users with valid license files. Compl. ¶ 25. To protect against theft of its valuable intellectual property, Cadence uses a Phone Home System that detects and identifies unauthorized use of Cadence's software and transmits data regarding such unauthorized use to Cadence. *Id.* ¶ 26. Cadence uses this data to engage with infringers that are unlawfully using Cadence's software in an effort to turn those infringers into lawful customers; if those efforts are unsuccessful, Cadence uses the data to enforce its intellectual property and other rights.

**B.    Defendants Steal Cadence's Software By Circumventing Cadence's License Files Generated In California**

Defendants manufacture smart cleaning robots, which are sold in the United States and other countries. Compl. ¶¶ 1, 36. To make these products, Defendants rely in part on Cadence's proprietary software. But no Defendant is a customer of Cadence or has ever obtained a valid license from Cadence to access and use Cadence's copyrighted software. *Id.* ¶¶ 2, 37. Instead, Defendants have engaged in a scheme to illegally obtain, copy, reproduce, and use Cadence's copyrighted software without authorization. *Id.* ¶¶ 38–41. For years, Defendants have modified the Cadence License Manager, the Cadence software, and/or the associated license files to bypass the required entry of a legitimate license

file.  *Id.* ¶¶ 38–41, 48.  Using its Phone Home System, Cadence has collected evidence indicating that Defendants have in the aggregate committed more than 200,000 instances of unauthorized use of Cadence's software.  *Id.* ¶ 42.  By engaging in such theft, Defendants have stolen millions of dollars in license fees from Cadence, and have for years unlawfully reaped the benefits of Cadence's valuable intellectual property without payment or authorization, and in violation of the law.  *Id.* ¶ 43.

## III.    LEGAL STANDARD

**Rule 12(b)(2)**.  When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that jurisdiction exists.  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011).  "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'"  *Id.*  To make this prima facie showing, the plaintiff may rely on the uncontroverted allegations in the complaint.  *See id.*; *Battle v. Taylor James, LLC*, 607 F. Supp. 3d 1025, 1036 (C.D. Cal. 2022).  Only if the defendant presents evidence controverting the complaint's allegations bearing on jurisdiction does the plaintiff have to "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction."  *Blizzard Entm't, Inc. v. Bossland GmbH*, 2017 WL 412262, at *2 (C.D. Cal. Jan. 25, 2017).  Conflicts in the evidence must be resolved in the plaintiff's favor.  *CollegeSource*, 653 F.3d at 1073.

"[P]ersonal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process."  *Pebble Beach Co. v.* Caddy, 453 F.3d 1151, 1154–55 (9th Cir. 2006).  California's long-arm statute is coextensive with federal due process requirements, "so the jurisdictional analyses under state law and federal due process are the same."  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  Due process requires that a defendant have "minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750 (9th Cir. 2025) (en banc).  A nonresident defendant may be subject to "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction."  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021).

**Rule 12(b)(3)**.  A court may dismiss an action filed in an improper venue.  *See* 28 U.S.C.

§ 1406(a).  Generally, proper venue is one in which (1) "any defendant resides, if all defendants are residents of the State in which the district is located" or (2) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated."  28 U.S.C. §§ 1391(b)(1)–(2).  If there is no district that satisfies either condition, then venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391(b)(3).

*Forum non conveniens* is "an exceptional tool to be employed sparingly, [not a] ... doctrine that compels plaintiffs to choose the optimal forum for their claim."  *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000).  A party moving to dismiss based on *forum non conveniens* bears the burden of showing (1) that there is "an adequate alternative forum," and (2) that "the balance of private and public interest factors favors dismissal." *Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1111 (9th Cir. 2020).  The standard applied to a motion for dismissal on the ground of *forum non conveniens* is whether defendants have made a "clear showing of facts which ... establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Ravelo Monegro*, 1211 F.3d at 514.

**Rule 12(b)(6)**.  To survive a Rule 12(b)(6) motion, a complaint need only plead sufficient "factual content that allows the court to draw the reasonable inference that [Defendants are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  "All factual allegations set forth in the complaint" must be "taken as true and construed in the light most favorable" to the plaintiff. *Id.*

## IV.    ARGUMENT

Defendants' challenges to personal jurisdiction and venue, and arguments that the Complaint does not plausibly plead DMCA and breach of contract claims, should all be rejected.  This Court has personal jurisdiction over Defendants because a valid contract (the SLMA) exists between Cadence and Defendants, and because Defendants expressly consented to the exclusive jurisdiction of this Court when they accepted the terms of the SLMA.  Personal jurisdiction also independently exists because Defendants expressly aimed their conduct at the forum state, knowing that it would cause harm to

1    Cadence here.  Because personal jurisdiction is proper, venue is also proper in this District.  The
2    Complaint also plausibly alleges DMCA and breach of contract claims.  In arguing that Cadence's
3    DMCA claim cannot reach their illegal conduct in China, Defendants ignore that the Complaint pleads
4    that Defendants circumvented protective technological measures located in *this District*.  Further,
5    Defendants' argument that Cadence fails to plead its breach of contract claim because Defendants did
6    not consent to the SLMA's terms is contrary to case law in this Circuit clearly holding otherwise.

7    ### A.    The Court Has Personal Jurisdiction Over Defendants

8         Defendants' lead argument is that they are not subject to personal jurisdiction in this Court, and
9    thus may not be held accountable for their widespread theft of Cadence's software.  Defendants are
10   wrong.  This Court has personal jurisdiction over Defendants because Cadence and Defendants entered
11   into a valid contract, the SLMA, and Defendants consented to exclusive jurisdiction in this forum when
12   they accepted the SLMA.  Independent from that, specific personal jurisdiction is also proper because
13   Defendants expressly aimed their wrongful conduct at, and knowingly caused harm in, California.  To
14   the extent the Court has any doubts, it should order jurisdictional discovery.

15        ### 1.    Cadence And Defendants Entered Into A Valid Contract

16        Defendants argue that "Cadence failed to plead any valid contract between it and Defendants."
17   Mot. at 8.  But Cadence alleged that Cadence and Defendants entered into a valid contract, the SLMA.
18   Compl. ¶¶ 12, 27–35.  Cadence alleged that Defendants *twice* agreed to the terms of the SLMA.  *Id.*
19   ¶ 28.  Cadence also pleaded that Defendants could not have installed the License Manager or the
20   Cadence software *unless* the user accepted the terms of the SLMA.  *Id.* ¶¶ 27–28, 34–35.  In other
21   words, Cadence alleged that Cadence's software would not have operated unless Defendants agreed to
22   the SLMA.  Cadence then pleaded that Defendants accessed the software *over 200,000 times*—and
23   thus necessarily accepted the SLMA.  *Id.* ¶ 42.

24        In *Cadence Design Systems, Inc. v. Pounce Consulting, Inc.*, 2019 WL 1095838, at *8 (N.D.
25   Cal. Jan. 23, 2019), the court concluded that another defendant who, like Defendants here, obtained
26   and used cracked and unauthorized versions of Cadence's software "agreed to the terms of [Cadence's]
27   Software License Agreement by installing Cadence's software, because without doing so, [the
28   defendant] would not have been able to access the software."  Critically, the court in that case

considered substantively identical allegations concerning users' inability to access Cadence's software without accepting the SLMA as those in Cadence's Complaint, and had before it the exact same version of the SLMA that Cadence attached to its Complaint. *Compare Cadence Design Sys., Inc. v. Pounce Consulting, Inc.*, 4:17-cv-04732-PJH, Dkt. 25 ¶¶ 26–34 (N.D. Cal. Nov. 1, 2017), *with* Compl. ¶¶ 27–35 (allegations discussing method of accepting SLMA); *compare Pounce*, 4:17-cv-04732-PJH, Dkt. 25-7 (N.D. Cal. Nov. 1, 2017), *with* Dkt. 28-2 (October 2012 version of the SLMA).

Indeed, the Complaint here, like the amended complaint in *Pounce*, explains that the SLMA is a "clickwrap" agreement that Defendants had to accept in order to install the Cadence License Manager and Cadence's software. Compl. ¶¶ 27–35. As explained further below (*infra* Section IV.C.2), courts have resoundingly upheld the enforceability of clickwrap agreements like the SLMA. *See*, *e.g.*, *Craigslist, Inc. v. Doe 1*, 2011 WL 1897423, at *3 (N.D. Cal. Apr. 25, 2011) (enforcing forum selection clause where plaintiff alleged defendant agreed to terms of use and thus assented to jurisdiction); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1052–53 (N.D. Cal. 2010) (enforcing forum selection clause where defendants had to accept the terms of use to access the website).

Defendants also claim that no contract exists because Cadence pleaded that Defendants "are not customers of Cadence and have never obtained a valid license from Cadence to access and use the Cadence Software." Mot. at 19 (quoting Compl. ¶ 37). Defendants confuse concepts. Defendants accessed the Cadence software over 200,000 times. Compl. ¶ 42. Defendants *could not have* accessed the software *without* agreeing to the terms of the SLMA. *Id.* ¶¶ 27–28, 34–35. Defendants therefore agreed to the terms of the contract—i.e., the SLMA—to obtain access to the software they used. That is distinct from the fact that Defendants never paid for the software and therefore are not customers of Cadence and never obtained *valid license files* for the software. Instead, Defendants bypassed the security measures and/or otherwise used unauthorized or "cracked" license files to obtain access to the copyrighted software without paying for it. *See id.* ¶¶ 41–43, 48. The SLMA is a binding contract between Cadence and Defendants.

### 2. Cadence Has Adequately Alleged A Binding Forum Selection Clause

Parties "may agree in advance to submit to the jurisdiction of a given court" by entering into a contract containing a forum selection clause. *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316

Gibson, Dunn & Crutcher LLP

(1964). Mandatory forum selection clauses like Cadence's "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *see Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 763–64 (9th Cir. 1989); *Twitter, Inc. v. Skootle Corp.*, 2012 WL 2375486, at *4 (N.D. Cal. June 22, 2012). The party resisting enforcement of a forum selection clause bears the burden of proving the clause is unreasonable. *Naturemarket, Inc.*, 694 F. Supp. 2d at 1052.

Here, Cadence alleged that Defendants necessarily accepted the SLMA when they installed the Cadence License Manager and Cadence's software (Compl. ¶¶ 27–35), and that the SLMA contains a forum selection clause that expressly provides that the user "agree[s] to submit to exclusive jurisdiction in the federal and state courts of California, U.S.A. in the event of a dispute" (*id.* ¶ 12; *see also* Dkt. 28-1 at 8 (January 2011 version of SLMA); Dkt. 28-2 at 8 (October 2012 version of SLMA). Cadence's forum selection clause is prima facie valid and enforceable, and Defendants cannot prove it is unreasonable. Defendants do not even attempt to do so. Defendants do not argue the forum selection clause is unreasonable, nor do they dispute that Cadence's claims fall within the scope of the forum selection clause. Cadence has plausibly alleged that Defendants agreed to the SLMA and its forum selection clause and in doing so consented to personal jurisdiction in this Court.[1]

### 3. Cadence Has Also Made A Prima Facie Showing Of Specific Personal Jurisdiction

The Court need not go any further to conclude that personal jurisdiction exists. But the Court independently has personal jurisdiction under traditional principles of specific personal jurisdiction. In cases sounding in tort, a court may exercise specific jurisdiction over a nonresident defendant if: (a) the defendant "purposefully direct[ed] [its] activities" at the forum state, (b) the plaintiff's claim "arises out of or relates to the defendant's forum-related activities," and (c) the exercise of jurisdiction "comport[s] with fair play and substantial justice." *Briskin*, 135 F.4th at 750–71 & n.10. If the plaintiff

---

[1] To the extent Defendants rely on the Lu Declaration to argue they could not have agreed to the SLMA and its forum selection clause in light of Defendants' contract approval policies (Lu Decl. ¶¶ 11–12), Defendants cite no authority that allows a defendant to avoid personal jurisdiction simply "based on factual assertions that contradict the heart and theory of the plaintiff's complaint. 'They did not do it' because I would have known about it will not suffice." *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 2017 WL 3485881, at *26 (N.D. Cal. Aug. 15, 2017).

Gibson, Dunn &
Crutcher LLP

pleads allegations that satisfy the first two parts of the test, the burden shifts to the defendant to "present a compelling case" that the exercise of specific jurisdiction would be "unreasonable." *Id.* at 751. Here, the first two parts of the test are easily satisfied, and Defendants do not even try to satisfy the third part.

### a.     Defendants Purposefully Directed Their Misconduct At California

"[T]he purposeful direction test requires that the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." *Briskin*, 135 F.4th at 751. Although Defendants say they have no physical presence in California (Mot. at 9), "[t]his test does not require that the defendant be physically present in the forum state." *Briskin*, 135 F.4th at 751–52. Rather, the test "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Id.* at 751. In fact, a defendant's forum contacts may "be in the form of electronic contacts," and "the Supreme Court has consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Id.* at 752. All three requirements of the foregoing test are met here.

*1. Defendants committed intentional acts.* "An intentional act is 'an external manifestation of the actor's intent to perform an actual, physical act in the real world.'" *Pounce*, 2019 WL 1095838, at *5. Defendants do not dispute they committed intentional acts, as they knowingly obtained, copied, reproduced, and used "cracked" copies of Cadence's software without authorization, and willfully circumvented protective technological measures—including the need for a legitimate license file generated in this District—that control access to Cadence's software. Compl. ¶¶ 2, 13, 38–41, 47–49; *see Pounce*, 2019 WL 1095838, at *5 (finding similar allegations sufficient); *CollegeSource*, 653 F.3d at 1077 (element met where defendant downloaded plaintiff's property through the internet).

*2. Defendants expressly aimed at California.* The express aiming requirement is satisfied where the defendant misappropriates intellectual property from the plaintiff, knowing the plaintiff is a resident of the forum, as part of the defendant's business that exploits the forum market for commercial gain. *See Briskin*, 135 F.4th at 752–55 (discussing cases); *see Pounce*, 2019 WL 1095838, at *5 ("it is sufficient for a plaintiff, filing suit in its home state against an out-of-state defendant, to allege that defendant intentionally infringed its intellectual property rights while the defendant knew that plaintiff is located in the forum state"); *Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd.*, 191 F. Supp. 3d

9

1007, 1016 (N.D. Cal. 2016) (same). That the defendant's conduct occurs entirely through "electronic means" is immaterial, as "there would be no doubt that California courts would have specific personal jurisdiction over a third party who physically entered a Californian's home by deceptive means" to take the California's property "for its own commercial gain." *Briskin*, 135 F.4th at 756–57.

In *CollegeSource*, for example, a Pennsylvania corporation, which operated nationwide websites that helped students and educational institutions navigate the college transfer process, misappropriated a California corporation's college catalogues by downloading them from the California corporation's website and republishing the catalogues on its own nationally accessible websites. *See* 653 F.3d at 1070–72. Even though the Pennsylvania corporation had no physical presence in California (*id.* at 1072), the Ninth Circuit held that it aimed its tortious conduct at California because it was "alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant kn[ew] to be a resident of the forum state." *Id.* at 1077; *see also Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1318–22 (9th Cir. 1998) (defendant expressly aimed tortious conduct at California where he misappropriated plaintiff's trademark to register a domain name, offered to cease using the domain name if plaintiff paid a ransom fee, and knew plaintiff resided in California and would be harmed here).

Here, too, Defendants expressly aimed their conduct toward California because they (1) misappropriated Cadence's proprietary software, (2) knowing Cadence resides and would feel the effects of their misconduct in California, and (3) used the software to design and manufacture smart cleaning robots that they sell in California.

*First*, Defendants misappropriated Cadence's intellectual property by willfully circumventing Cadence's protective technological measures in this District to obtain unauthorized access to Cadence's proprietary software. Compl. ¶¶ 2, 13, 38–41, 47–49; *see Oki Semiconductor Co. v. Wells Fargo Bank Nat'l Ass'n*, 298 F.3d 768, 775–76 (9th Cir. 2002) (an employer is generally liable for its employee's acts committed within scope of employment); *infra* Section IV.C.1 (explaining that the relevant protective technological measure under the DMCA, the license file, is generated in this District). Although the Lu Declaration generally avers that Defendants' *policies* prohibit their employees from using unlicensed software or cracked licenses (Lu Decl. ¶ 10), the Declaration does not specifically dispute Cadence's allegations concerning Defendants' circumvention of Cadence's protective

technological measures and unauthorized use of Cadence's software. Accordingly, Cadence's allegations concerning Defendants' circumvention and unauthorized use are uncontroverted, and may be relied on to support the exercise of personal jurisdiction. *See Blizzard Entm't, Inc.*, 2017 WL 412262 at *2 ("To make this prima facie showing, the plaintiff may rely on the uncontroverted allegations in the complaint."); *Briskin*, 135 F.4th at 755 n.11 (declining to consider defendant's evidence that contested allegations relating to the merits but not personal jurisdiction).

*Second*, Defendants knew that Cadence is a California company and that their "circumvention and unauthorized use would cause injury to Cadence in California and this District." Compl. ¶ 13. After all, the SLMA expressly states that Cadence's principal place of business is in San Jose, California. *Id.*; Dkt. 28-1 at 8–9; Dkt. 28-2 at 8. And "given that a large portion of the software industry is located in northern California, it [is] reasonable to assume that Defendant[s'] activities were directed at California." *Pounce*, 2019 WL 1095838, at *5; *see also Autodesk*, 191 F. Supp. at 1016 (similar). Again, Defendants do not dispute that they knew that Cadence is a California company or that their conduct would cause harm to Cadence in California, and thus Cadence's allegations are uncontroverted and may be relied on to support jurisdiction. *See CollegeSource*, 653 F.3d at 1073.

*Third*, Defendants circumvented Cadence's protective technological measures and used Cadence's software as part of their "exploitation of the California market for [their] own commercial gain." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011). In *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773–74, 781 (1984), for example, the Supreme Court held that New Hampshire courts had specific jurisdiction over Hustler, an Ohio corporation, because it "continuously and deliberately exploited the New Hampshire market" by regularly selling magazines there. Relying on *Keeton*, the Ninth Circuit similarly held in *Mavrix* that an Ohio company was subject to specific jurisdiction in California because it had misappropriated plaintiff's copyrighted photos and used the photos to build a customer base in California from which it could profit. *See id.* at 1222–23, 1229–31; *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1088–89, 1093–94 (9th Cir. 2023).

The same is true here. As alleged in the Complaint, Defendants used unauthorized copies of Cadence's software to design and manufacture smart cleaning robots that they sell around the world, including in the United States. Compl. ¶¶ 1, 36. Defendants do not present any evidence disputing

that they use Cadence's software to design their smart cleaning robots and sell them in the United States, including in California. *See CollegeSource*, 653 F.3d at 1073 (court may rely on uncontroverted allegations). Nor could they, since a Narwal smart cleaning robot can be purchased at Best Buy, Home Depot, and Lowe's locations within driving distance from the federal courthouse in San Jose. *See* Samplin Decl. ¶¶ 8–16, Exs. A–I. Given Defendants' exploitation of the California market, there is "no unfairness in calling [them] to answer" for their misconduct here. *Keeton*, 465 U.S. at 781.

**3.    *Defendants knew harm would be suffered in California.*** The third part of the test—that Defendants caused harm they knew would be suffered in California (*Briskin*, 135 F.4th at 751)—also is met. Cadence's principal place of business is in California and "it is foreseeable that the loss will be inflicted … where the copyright holder has its principal place of business." *Pounce*, 2019 WL 1095838, at *5; *Blizzard*, 2017 WL 412262, at *4 (same). Moreover, Cadence alleged that it suffered economic loss in California because of Defendants' circumvention of Cadence's protective technological measures and unauthorized use of its software, and that Defendants "kn[ew] that such circumvention and unauthorized use would cause injury to Cadence in California and this District." Compl. ¶¶ 13, 43. Defendants do not dispute that Cadence suffered harm in California.

In fact, Defendants hardly address the purposeful direction test at all, and instead say this case is like *Walden v. Fiore*, 571 U.S. 277 (2014), and *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017). Mot. at 9–10. But in *Walden*, "none of the parties were in the forum when the operative events transpired." *Briskin*, 135 F.4th at 758–59 (citations omitted). By contrast, Cadence has resided in California during the entire duration of Defendants' unlawful conduct, and Defendants circumvented Cadence's protective technological measures in this District to obtain unauthorized access to Cadence's software that they used to design their smart cleaning robots that they sell in the United States and in California. Moreover, *Walden* "did not address the situation presented here, 'where intentional torts are committed via the Internet or other electronic means,'" and emphasized that the case did "not present the very different questions whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State." *Id.* at 759 (citation omitted).

Similarly, *Axiom Foods* did not turn, as Defendants contend, on the fact that the defendant "conduct[s] no business in California." Mot. at 10. The Ninth Circuit found jurisdiction lacking

12

Gibson, Dunn &
Crutcher LLP

1  because the defendant's allegedly infringing newsletter—which reached no more than 10 recipients in

2  California—at most created a contact with "persons who reside [in California]," not "with the forum

3  State itself."  874 F.3d at 1070.  In any event, Defendants *do* conduct business in California, as their

4  smart cleaning robots are available at stores in California.  *See* Samplin Decl. ¶¶ 8–16, Exs. A–I.

5       **b.    Cadence's Claims Arise From Or Relate To Defendants' Forum Contacts**

6       "The second requirement for specific jurisdiction is that plaintiff's claims 'must arise out of or

7  relate to the defendant's contacts' with the forum State."  *Briskin*, 135 F.4th at 760.  Here, Cadence's

8  claims arise out of and relate to Defendants' circumvention of protective technological measures in this

9  District and unauthorized use of Cadence's software, since Cadence would not have been injured but

10  for Defendants' conduct directed toward California.  *See CollegeSource*, 653 F.3d at 1079; *Pounce*,

11  2019 WL 1095838, at *5; *Blizzard*, 2017 WL 412262, at *6; *Autodesk*, 191 F. Supp. 3d at 1018.

12       **c.    Defendants Have Not Shown That Exercising Jurisdiction Would Be
13             Unreasonable**

14       Because Cadence has plausibly alleged the first two requirements for specific jurisdiction, the

15  burden shifts to Defendants "to 'present a compelling case' that the exercise of jurisdiction is not

16  reasonable."  *Briskin*, 135 F.4th at 760–61.  Defendants do not address whether exercising jurisdiction

17  here would be unreasonable, and have thus forfeited any opportunity to do so.  *See Dragu v. Motion*

18  *Picture Indus. Health Plan for Active Participants*, 144 F. Supp. 3d 1097, 1113 (N.D. Cal. 2015).

19                              *     *     *

20       To the extent the Court concludes that Defendants purposefully directed their conduct at, and

21  have minimum contacts with, the United States as a whole (*e.g.*, Compl. ¶¶ 1, 36), but not necessarily

22  with California, the Court may exercise personal jurisdiction under Rule 4(k)(2) because (1) Cadence's

23  DMCA claim arises under federal law, (2) Defendants do not contend they are subject to the personal

24  jurisdiction of any state court of general jurisdiction, and (3) the Court's exercise of personal

25  jurisdiction comports with due process because Defendants have sufficient minimum contacts with the

26  nation as a whole, as they purposefully directed their conduct at the United States.  *See*, *e.g.*, *Lang Van*,

27

28

*Inc. v. VNG Corp.*, 40 F.4th 1034, 1040–43 (9th Cir. 2022); *Blizzard*, 2017 WL 412262, at *3–7.[2]

### 4.    If Any Questions Remain, The Court Should Defer The Issue Of Jurisdiction To Trial Or Order Jurisdictional Discovery

Defendants are subject to personal jurisdiction based on the forum selection clause in the SLMA they necessarily accepted when installing the Cadence License Manager and Cadence software, as well under the purposeful direction test.  To the extent the Court has any doubts—and especially since the jurisdictional arguments are intertwined with the merits of Cadence's DMCA and breach of contract claims—the Court should defer the issue of jurisdiction until trial.  *See* Fed. R. Civ. P. 12(i); *see also Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.2 (9th Cir. 1977) (explaining that it is "preferable" that jurisdictional issues be decided at trial when "the jurisdictional facts are enmeshed with the merits"); *Madsen v. Buffum*, 2013 WL 12139139, at *4 (C.D. Cal. July 17, 2013) (citing cases explaining same).

If the Court is not inclined to wait until trial, it should order jurisdictional discovery on Defendants' acceptance of the SLMA and contacts with California.  *See Focht v. Sol Melia S.A.*, 2010 WL 3155826, at *1–2 (N.D. Cal. Aug. 9, 2010) ("[j]urisdictional discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted … or where a more satisfactory showing of the facts is necessary").  The Ninth Circuit, for example, has required jurisdictional discovery where "[f]urther discovery on [the] issue might well demonstrate facts sufficient to constitute a basis for jurisdiction." *Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003); *see also Cadence Design Sys., Inc. v. Syntronic AB*, 2021 WL 4222040, at *8 (N.D. Cal. Sept. 16, 2021) (granting request for jurisdictional discovery regarding specific jurisdiction over foreign defendants); Dkt. 42 (Defendants' motion to stay discovery recognizing that, at minimum, Cadence should be permitted to conduct jurisdictional discovery).

---

[2]  Although the above analysis largely focuses on the facts giving rise to Cadence's DMCA claim and Cadence also asserts a state-law claim for breach of contract, "[u]nder the doctrine of pendent personal jurisdiction, the [C]ourt may also exercise jurisdiction over … [the breach of contract] claim[], which arise[s] out of a common nucleus of operative facts" as the DMCA claim.  *CollegeSource*, 653 F.3d at 1076.

14

Gibson, Dunn & Crutcher LLP

**B.    Venue Is Proper In This District**

Defendants next argue that venue in this District is improper.  Mot. at 11.  Again, they are wrong.  Venue is proper either (1) in a "judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," or (2) in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(1)-(2).  If no district satisfies those conditions, then venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391(b)(3).

Defendants argue that this District is not a proper venue because (1) Cadence insufficiently pleaded personal jurisdiction, (2) the forum selection clause does not apply because there is no valid contract, and (3) the *forum non conveniens* factors favor China.  Mot. at 11.  All three arguments fail.

*Personal jurisdiction establishes venue here.*  All that is needed for proper venue here is that the Court have personal jurisdiction over Defendants.  "[A] defendant not resident in the United States may be sued in any judicial district."  28 U.S.C. § 1391(c)(3).  As Defendants are not residents of the United States, "any judicial district in the United States [is] a proper venue."  *See Tradin Organics USA, LLC v. Advantage Health Matters, Inc.*, 2015 WL 1306929, at *9 (N.D. Cal. Mar. 23, 2015).  Indeed, venue is proper where "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391(b)(3).  As discussed above, Cadence has established the Court's personal jurisdiction over all Defendants (*see supra* Section IV.A).  Thus, venue is proper in this District.

*Valid forum selection clause independently establishes venue here.*  The SLMA is a valid and enforceable contract and Defendants are bound by its terms, including the forum selection clause establishing venue here (*infra* Section IV.C.2).  Forum-selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."  *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972); *see Yei A. Sun v. Advanced China Heathcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) (forum-selection controls except in unusual cases).  Defendants do not say enforcement of the clause would be unreasonable; they do not meaningfully contest the clause at all, other than to suggest it is "one-sided" and inconvenient.

Gibson, Dunn & Crutcher LLP

1   Mot. at 23.  But bald assertions that a forum selection clause is "one-sided" and inconvenient are

2   without merit.  *See Crown Beverage Co., Inc. v. Cerveceria Moctezuma, S.A.*, 663 F.2d 886, 888 (9th

3   Cir. 1981) (inconvenience to party of litigating in foreign country insufficient to override forum-

4   selection clause).  And the forum selection clause applies evenhandedly to both parties "in the event of

5   a dispute."  *E.g.*, Dkt. 28-2 at 8.  The Court should honor the parties' forum selection clause.

6          ***The forum non conveniens doctrine does not compel a different result.***  Because there is a

7   valid forum selection clause, Defendants' *forum non conveniens* argument fails.  In deciding a *forum*

8   *non conveniens* motion, courts weigh both private and public interest factors.  *See Eventbrite, Inc. v.*

9   *Loranger*, 2019 WL 11499335, at *5 (N.D. Cal. Nov. 19, 2019) (citation omitted).  Where the parties'

10  contract contains a valid forum selection clause, the private interest factors "weigh entirely in favor of

11  the preselected forum."  *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49,

12  64 (2013).  The party challenging the clause must show that the public interest factors "overwhelmingly

13  disfavor" enforcement.  *Id*. at 67.  Here, there is a valid forum selection clause that expressly provides

14  for venue in California, which means *all the private interest factors weigh in favor of Cadence* and the

15  Court should consider only the public interest factors.  *Id.* at 64.  The public interest factors do not

16  "overwhelmingly disfavor" enforcement of the forum selection clause.  *See id.* at 67.

17         *First*, as courts in this District have found, the court congestion factor "carries little weight."

18  *See Eventbrite*, 2019 WL 11499335, at *5 (there is "no overwhelming problem of court congestion" in

19  the Northern District of California).  *Second*, this Court has a local interest in resolving the controversy,

20  which involves a California-based plaintiff, California-based intellectual property, and harm felt in this

21  District.  *See Lang Van*, 40 F.4th at 1043.  Moreover, there is "a preference for having this Court preside

22  over the action because the [SLMA] contains a choice-of-law provision that invokes California

23  substantive law."  *Tradin Organics USA*, 2015 WL 1306929, at *10.  Even if "courts in China are free

24  to apply United States law to Cadence's claims" (Mot. at 12), there is no guarantee that Chinese courts

25  would be able to adequately apply U.S. copyright law and California law as required for Cadence's

26  breach of contract claim.  Given these considerations, Defendants have not and cannot show that the

27  public-interest factors "overwhelmingly disfavor" keeping this case in California.  The Court should

28  deny Defendants' motion under Rule 12(b)(3) and the doctrine of *forum non conveniens*.

**C.    Cadence Has Plausibly Alleged Its DMCA And Contract Claims**

The Court should deny Defendants' motion to dismiss the DMCA and breach of contract claims because Cadence has sufficiently alleged these claims, taking all factual allegations as true and construing them in the light most favorable to Cadence. *See Lee*, 250 F.3d at 688. Cadence alleges Defendants circumvented protective technological measures located in the United States, which is sufficient to state a plausible DMCA claim. As to the breach of contract claim, Defendants consented to the terms of the SLMA, and their arguments to the contrary rely on an improper fact declaration.

**1.    Cadence Plausibly Alleges A Domestic Application Of The DMCA**

Defendants move to dismiss Cadence's DMCA claim based on a single argument that misconstrues the factual allegations in the Complaint. Defendants say Cadence impermissibly targets only extraterritorial conduct because any unauthorized access of Cadence's software could have only occurred in China. Mot. at 16–17. But the relevant inquiry focuses on the location of the protection for the copyrighted work—i.e., the *protective technological measure*—that Defendants circumvented to access the work, not the location where Defendants accessed Cadence's software. Here, the protective technological measure is the license file, which is generated and located in *California*. If a user does not have a valid license file, Cadence does not permit that user to access the works. Cadence pleaded that Defendants circumvented the requirement of obtaining a valid license file from California to access the copyrighted works. The Complaint pleads a domestic application of the DMCA.

The parties agree on the relevant standard, which requires courts to look to "the statue's focus" to determine whether the case involves a domestic application of the statute. *See* Mot. at 13–14; *Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, 2024 WL 3616945, at *2 (9th Cir. Aug. 1, 2024); *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 337 (2016) ("If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad."). As the Ninth Circuit explained in *Superama*, a circumvention claim under the DMCA "targets the evasion of technological measures preventing access to a copy." *Superama* 2024 WL 3616945, at *2; *see also* 17 U.S.C. § 1201(a)(3)(A) ("[T]o 'circumvent a technological measure' means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the

Gibson, Dunn &
Crutcher LLP

authority of the copyright owner."). The Ninth Circuit concluded that "the focus of [the DMCA's] anti-circumvention provision is the location of the *lock*," i.e., the password, "not the location of the tool used to circumvent it." *Superama,* 2024 WL 3616945, at *2 (emphasis added).

Although Defendants cite the correct case law (*Superama*), Defendants misunderstand it, misapply it, and ignore the key factual allegations in the Complaint. The Complaint alleges that Cadence's software can only be accessed through the Cadence License Manager, and that the Cadence License Manager will not operate (legitimately) without a *valid license file*. Compl. ¶¶ 20–25. The license file—i.e., the "lock" or "password" to the Cadence License Manager and Cadence's software—is the relevant protective technological measure and the Complaint explicitly alleges that the license file is generated *in this District*. *Id*. ¶¶ 23, 25, 26. The Complaint alleges that Defendants unlawfully circumvented this protective technological measure by using counterfeit license files or "cracked" versions of Cadence's software. *Id*. ¶¶ 39–43, 48. Defendants do not address these allegations and completely ignore that the license file is the relevant protective technological measure under *Superama*.

Defendants instead incorrectly point to the Cadence License Manager as the alleged protective technological measure that Defendants bypassed, but that argument makes no sense. The license file is needed to *unlock* and access the Cadence License Manager and Cadences software—and it is thus the license file that is the protective technological measure Defendants circumvented by using counterfeit license files or "cracked" versions of Cadence's software. The fact that Defendants installed the Cadence License Manager on Defendants' machines in China and accessed the Cadence software in China is irrelevant. *See Superama,* 2024 WL 3616945, at *3 (Graber, J., concurring) (relying on the fact that "the download is deemed to have happened in Japan" but "the hacking and ripping of the U.S.-based video occurred here in the U.S." to support the conclusion that a "permissible domestic application" of the statute was alleged); *Synopsys, Inc. v. AzurEngine Techs., Inc.*, 401 F. Supp. 3d 1068, 1073 (S.D. Cal. 2019) (rejecting extraterritorial argument even where access to software occurred on defendant's servers in China). The relevant inquiry is the location of the "lock"—i.e., the license file—that controls access to Cadence's software, which is in *California*. Compl. ¶¶ 23, 25.

Even the *Synopsys* case Defendants rely on supports this conclusion. *See* Mot. at 14 (citing *Synopsys*, 401 F. Supp. 3d 1068). In *Synopsys*, the plaintiff similarly controlled access to its software

18

Gibson, Dunn &
Crutcher LLP

by requiring "a license key from a server that [was] designed to only grant such keys to approved licensees." 401 F. Supp. 3d at 1072. The court found that the *license key* was the protective technological measure that controlled access to the plaintiff's software and satisfied the "effectively controls" requirement of the DMCA. *Id.* Here too, the license file is the protective technological measure that controls access to Cadence's software and is the mechanism Defendants unlawfully circumvented. *See* Compl. ¶ 48 (alleging Defendants "bypass[ed] the required entry of a license file and/or otherwise used unauthorized, 'cracked' license files to circumvent the technological protection measures designed to limit access to the copyrighted software"). Because the license file is generated in the United States, the Complaint adequately pleads a domestic application of the statute.[3]

Defendants have argued in their reply in support of a stay of discovery that the license file is not in California (*see* Dkt. 48 at 4–6), but that is incorrect because it ignores what Cadence pleaded and the case law that Defendants themselves cited. The Complaint pleads that the license file is generated and issued by Cadence in *California*. Compl. ¶¶ 23–25. The fact that the license file is then transferred to the end-user, who may be in a different location, is irrelevant to the analysis. Defendants' argument is not supported by *Superama*, because *Superama* says nothing about the purported "transfer" of the lock. Moreover, no such transfer occurred here in any event because *Defendants bypassed the requirement of obtaining a valid license file. Id.* ¶ 48. Defendants used a "tool" to hack or circumvent the protective technological measure of receiving a valid license file by using counterfeit license keys. *Id.* ¶¶ 40–41, 48. The Ninth Circuit concluded that the location of the tool used to circumvent the plaintiff's protective technological measure is irrelevant to an anti-circumvention claim under the DMCA. *See Superama*, 2024 WL 3616945, at *2 ("[I]n this analogy, the focus of § 1201(a)(1)'s anti-circumvention provision is the location of the lock, not the location of the tool used to circumvent it.").

---

[3]  Defendants also argue that Cadence's Phone Home System is not a "technological measure" under the statute (Mot. at 15–16), but the Complaint does not allege that the Phone Home System is the relevant technological measure that Defendants circumvented. If, however, Defendants circumvent the ability of the Phone Home System to report back to Cadence—a known risk once an entity learns how the Phone Home System works—each instance of circumventing the Phone Home System will be a separate DMCA violation.

OPPOSITION TO MOTION TO DISMISS
CASE NO. 3:25-CV-00317-AMO

Gibson, Dunn & Crutcher LLP

1    What matters is the location of the lock, i.e., the license file, which undisputedly is in California.  *Id.*[4]

2        **2.    Cadence Plausibly Alleges Its Breach Of Contract Claim**

3        The Court should next reject Defendants' attempt to dismiss Cadence's breach of contract

4    claim.  To state a claim for breach of contract, a plaintiff must allege: "(1) existence of the contract;

5    (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to

6    plaintiff as a result of the breach."  *Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 476 (N.D.

7    Cal. 2020).  Cadence has done exactly that.  Compl. ¶¶ 27–44, 54–58.

8        ***Impermissible Declaration.***    To begin, Defendants' motion to dismiss the breach of contract

9    claim improperly relies on the Lu Declaration.  Mot. at 18–25.  The Lu Declaration is neither judicially

10   noticeable nor incorporated into the Complaint, so it may not be considered on a Rule 12(b)(6) motion.

11   The Court should exclude the Lu Declaration and disregard any argument relying on it.[5]

12       "As a general rule, 'a district court may not consider any material beyond the pleadings in ruling

13   on a Rule 12(b)(6) motion.'"  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  Rather, a

14   court "is limited to the complaint," and "[a]ll factual allegations set forth in the complaint" must be

15   "taken as true and construed in the light most favorable" to the plaintiff.  *Id.*  "Indeed, factual challenges

16   to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule

17   12(b)(6)."  *Id.*; *see, e.g.*, *Gjovik v. Apple Inc.*, 2024 WL 4369656, at *2 n.2 (N.D. Cal. Oct. 1, 2024).

18       The two exceptions to this general rule are for documents that are (1) attached to or incorporated

19   by reference in a complaint when the documents' authenticity is not contested, or (2) subject to judicial

20   notice under Federal Rule of Evidence 201.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.

21   2003)); *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 968 (N.D. Cal. 2015).  All other

22   documents submitted with a Rule 12(b)(6) motion should be excluded.  *See* Fed. R. Civ. P. 12(d); *e.g.*,

23
24   [4] In their reply in support of a stay of discovery, Defendants also claim that Cadence does not know
     whether the conduct relevant to Cadence's DMCA claim occurred in the United States.  *See* Dkt. 48
25   at 5.  But Cadence pleaded unequivocally that circumvention of Cadence's protective technological
     measure occurred in the United States.  Compl. ¶¶ 23, 25, 26, 39–43, 48.  Discovery will be necessary,
26   however, to determine whether Defendants also downloaded Cadence's software in the United States,
     which could support the basis for a separate and independent copyright infringement claim.

27   [5]  The portions of Defendants' brief that rely on the Lu Declaration include: page 2, lines 8-14; page 9,
28   lines 22-24; page 10, lines 24-26; page 11, lines 10-12; page 17, lines 6-9; page 18, lines 15-16; page
     22, lines 2-7.

*Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 952 (N.D. Cal. 2015); *Schmitz v. Mars, Inc.*, 261 F. Supp. 2d 1226, 1229 (D. Or. 2003).

The Lu Declaration does not fall within either category of documents that may be considered on a Rule 12(b)(6) motion.  Neither the Lu Declaration nor any of its content is attached to or referenced in the Complaint.  *See Ritchie*, 342 F.3d at 908.  In fact, the Lu Declaration could not have been attached to, and its contents could not have been referenced, in the Complaint since the declaration was created and filed months *after* Cadence filed its Complaint.  *See Marder v. Lopez*, 450 F.3d 445, 448–49 (9th Cir. 2006) (disregarding contents of letter submitted with motion to dismiss that was "created after [the] complaint was filed"); *Cadence Design Sys., Inc. v. Suzhou Tianzhun Tech. Co., Ltd.*, 5:24-cv-00816-EKL, Dkt. 59 at 3–4 (N.D. Cal. May 1, 2025) (declining to consider declaration "created *after* the complaint was filed," and denying Rule 12(b)(6) motion predicated on declaration).

The Lu Declaration also is not subject to judicial notice.  In fact, Defendants did not file a request for judicial notice, which alone precludes consideration of the Lu Declaration.  *E.g.*, *Adobe*, 125 F. Supp. 3d at 967 (declining to take judicial notice of declaration submitted with motion to dismiss where defendant did not ask the court to take judicial notice of the declaration).  In any event, the contents of a declaration submitted by an individual residing in China obviously are not "*undisputed* matters of public record" that are susceptible to judicial notice.  *Lee*, 250 F.3d at 690; *e.g.*, *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1060 (N.D. Cal. 2012).  To the contrary, the Lu Declaration's factual assertions are "subject to reasonable dispute."  Fed. R. Evid. 201(b).  For example, the Complaint alleges that "to install the License Manager and the Cadence Software, Defendants expressly agreed to and became bound by the SLMA corresponding to each version of the Cadence Software that Defendants used without authorization."  Compl. ¶ 54.  In an attempt to contradict that allegation, which must be taken as true on this motion, the Lu Declaration says "[n]one of Defendants has ever agreed to the terms of Plaintiff's SLMA."  Lu Decl. ¶ 12.  As the Ninth Circuit has recognized, courts may not take "judicial notice of *disputed* facts."  *Lee*, 250 F.3d at 689–90.

Defendants do not even try to satisfy either exception to the rule that a Rule 12(b)(6) motion is decided based solely on the complaint.  It therefore would be improper for the Court to consider the Lu Declaration at this stage.  It also would be unfair, "[g]iven the early stage of this litigation" (*Stewart*,

Gibson, Dunn &
Crutcher LLP

81 F. Supp. 3d at 952) and the fact that "little or no discovery [has been] conducted." *Brennan v. Nat'l Tel. Directory Corp.*, 850 F. Supp. 331, 335 (E.D. Pa. 1994); *see also Zazueta Perez v. Hal Hays Constr., Inc.*, 2016 WL 9308014, at *2 (C.D. Cal. Aug. 22, 2016) (consideration of extrinsic evidence on a motion to dismiss "can create duels where defendants are allowed to start shooting before plaintiffs even get to load," which is unlikely "to produce the right winner"). Accordingly, the Court should defer consideration of any extrinsic evidence until Cadence "has had an opportunity to conduct discovery," exclude the Lu Declaration, and disregard all argument that relies on the declaration in ruling on Defendants' motion. *Adobe*, 125 F. Supp. 3d at 968; *see also Sundby v. Marquee Funding Grp., Inc.*, 2020 WL 434487, at *2 (S.D. Cal. Jan. 28, 2020) ("if a claim or defense would benefit from additional discovery, a court is likely to not consider the documents"); *Century Sur. Co. v. Master Design Drywall, Inc.*, 2009 WL 3425326, at *1 (S.D. Cal. Oct. 21, 2009) (collecting cases).

Defendants' motion should be denied even if the Court considers the Lu Declaration. If the Court considers the Declaration, it would be required to convert Defendants' motion to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Ritchie*, 342 F.3d at 907; Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1366 Conversion of a Rule 12(b)(6) Motion Into a Summary Judgment Motion (3d ed. June 2024) ("Once the district court decides to accept matters outside of the pleadings, the presence of the word "must" … in subdivision (d) of Rule 12 indicates that the judge must convert the motion to dismiss into one for summary judgment."). If that occurs, the Court should deny Defendants' motion under Rule 56(d) because Cadence has not had the opportunity to conduct the discovery that would enable it to "present facts essential to justify its opposition." Fed. R. Civ. P. 56(d).

Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). A party meets these requirements by showing that "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*, 874 F.3d 604, 619–20 (9th Cir. 2017). Courts routinely deny motions for summary judgment under Rule 56(d) where the "nonmoving party

Gibson, Dunn &
Crutcher LLP

1   has not had the opportunity to discover information that is essential to its opposition." *Metabolife Int'l,*

2   *Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001); *see also InteliClear, LLC v. ETC Global Holdings,*

3   *Inc.*, 978 F.3d 653, 662–64 (9th Cir. 2020) (finding district court abused its discretion in declining to

4   "defer a summary judgment ruling until discovery had proceeded").    Here, as set forth in the

5   accompanying Declaration of Ilissa Samplin, Cadence would need the opportunity to seek facts about

6   Defendants' organizational structure; Defendants' relationships to the United States; Defendants'

7   purported employment, contract approval, and IT policies; the authority Defendants' employees have

8   to enter into contracts; and Defendants' records indicating their acceptance of the SLMA. *See* Samplin

9   Decl. ¶¶ 3–7.   Cadence has had no opportunity to obtain such information or to test Lu's assertions

10  through deposition or otherwise—particularly because Lu appears to live in China. *E.g.*, *JUUL Labs*

11  *Inc. v. Chou*, 2022 WL 2165411, at *6 n.1 (C.D. Cal. Feb. 11, 2022) (noting that depositions generally

12  cannot occur in China for use in foreign courts without permission from the Chinese government).  To

13  prevent Defendants from obtaining judgment in their favor before Cadence has any opportunity to test

14  the facts on which they rely, the Court should deny or, at minimum, defer ruling on Defendants' motion

15  to the extent it is converted to a motion for summary judgment.

16      ***Cadence Sufficiently Alleges Breach of Contract.***   In any event, Cadence has sufficiently

17  pleaded its breach of contract claim, and Defendants' arguments to the contrary are without merit.

18      *First*, Defendants claim there was no mutual assent because Cadence did "not ma[k]e any offer

19  to Defendants."  Mot. at 19.  This makes no sense.  Regardless of where the cracked software was

20  obtained from, both Cadence's License Manager and software require acceptance of the terms of the

21  SLMA, as Cadence alleges in the Complaint.  Compl. ¶¶ 27, 34–35.  This feature—the presentation of

22  the SLMA terms and prompting the user to "accept" those terms—was enabled by Cadence, who is

23  offering users the ability to install and use its software.  *Id.*  Moreover, Defendants' argument that

24  "Defendants [did not have] sufficient awareness of the terms of the offer before accepting it" disregards

25  the entire body of case law upholding clickwrap agreements like the SLMA.  Mot. at 20.  Courts

26  "routinely uphold clickwrap agreements," which require "users 'to click on an "I agree" button after

27  being presented with a list of terms and conditions of use.'"  *I.C. v. Zynga, Inc.*, 2021 WL 3271187, at

28  *1 (N.D. Cal. July 30, 2021) (collecting cases).  In fact, a Court in this District has enforced the very

1  same SLMA presented and accepted in the same manner as here. *See Pounce*, 2019 WL 1095838, at

2  *8 ("Pounce SA agreed to the terms of the Software License Agreement by installing Cadence's

3  software, because without doing so, Pounce SA would not have been able to access to the software").

4      The lack of a definite price term in the agreement does not undermine mutual assent, either.

5  Mot. at 20. While Cadence disputes whether the SLMA lacks "any pricing mechanism"—*see* Dkt. 28-

6  1 at 6; Dkt. 28-2 at 6—"the omission of an essential term in a contract, such as price, does not vitiate

7  contract formation if the parties otherwise manifested their mutual assent." *San Joaquin Gen. Hosp. v.*

8  *United Healthcare Ins. Co.*, 2017 WL 1093835, at *2 (E.D. Cal. Mar. 23, 2017).

9      *Second*, Defendants apparently assert that Cadence fails to state its contract claim because the

10  SLMA was intended for *customers* of Cadence, and Cadence alleges Defendants have never purchased

11  a valid license from Cadence. Mot. at 19; Compl. ¶ 37. But that argument misreads the Complaint,

12  which does not tie the SLMA terms to the point of sale, but rather, to the point of installation of the

13  software. *See* Compl. ¶¶ 27–35. The SLMA here governs, among other things, an individual's *use* of

14  the software. That is why, rather than employ the word "customer," Cadence alleges "[w]hen

15  attempting to install the Cadence License Manager, a ***user*** must select 'I accept,'" and "[w]hen the ***user***

16  installs the Cadence Software, the ***user*** must again accept the terms of the SLMA." Compl. ¶¶ 34–35.

17      Defendants' factual arguments about contracting authority and IT policies are inappropriate at

18  the motion to dismiss stage. Indeed, none of Defendants' cases involve motions to dismiss.[6] And

19  Defendants' arguments improperly rely heavily on the Lu Declaration. "Determinations as to

20  ostensible authority are extremely fact-intensive and therefore often inappropriate" even for summary

21  adjudication, let alone motions to dismiss. *Maxtor Corp. v. Read-Rite (Thailand) Co., Ltd.*, 2003 WL

22  24902406 at *6 (N.D. Cal. Dec. 4, 2003) (denying motion to dismiss centered on whether an individual

23  had authority to bind the defendant in contract); *see also C.A.R. Transp. Brokerage Co., Inc. v. Darden*

24  *Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) ("existence of an agency and the extent of an agent's

---

25
26  [6] Mot. at 20–22; *see Title Guarantee & Trust Co. v. Hammond Lumber Co.*, 62 Cal. App. 245, 246
    (1923) (final judgment); *Snukal v. Flightways Mfg., Inc.*, 23 Cal. 4th 754, 759–60 (2000) (final
27  judgment); *Fredianelli v. Jenkins*, 931 F. Supp. 2d 1001, 1006 (N.D. Cal. 2013) (summary
    judgment); *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322–23 (S.D. Fla.
28  2010) (motion to compel arbitration); *Nexon Am., Inc. v. S.H.*, 2011 WL 13217951, at *1 (C.D. Cal.
    Dec. 13, 2011) (summary judgment).

authority is a question of fact and should not be decided on summary judgment"). Similarly, "[w]hether employees' conduct is within the scope of employment is 'generally … a question of fact' not appropriate for resolution in the context of a motion to dismiss…." *Freeny v. Bank of Am. Corp.*, 2015 WL 12535021, at *26 (C.D. Cal. Nov. 19, 2015) (citation omitted). If the Court is inclined to grant Defendants' motion on this theory, Cadence requests leave to amend to more clearly allege that Defendants are liable for their employees who entered into the SLMA on their behalf. *See Handy v. Lane County*, 585 F. App'x 570, 570 (9th Cir. 2014) ("leave to amend should be freely granted").

*Third*, Defendants' unconscionability arguments do not hold water. It is well-settled that unconscionability, when not a required element of an affirmative cause of action, "requires a consideration of facts that are beyond the scope of a motion to dismiss." *Cazares v. Pac. Shores Funding*, 2006 WL 149106 at *6 n.4 (C.D. Cal. Jan. 3, 2006) ("For this reason alone, the … Defendants cannot obtain a dismissal."); *see Teed v. Chen*, 2022 WL 16839496 at *5 (N.D. Cal. Nov. 9, 2022) ("the question of whether a contract is unconscionable exceeds the scope of a 12(b)(6) motion"). Like unconscionability, matters of contract interpretation—such as whether Clause 27 of the SLMA provides an option to seek translation of the terms (Mot. at 24)—are also "inappropriate" for resolution on a motion to dismiss. *See WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1051 (9th Cir. 2011), *abrogated on other grounds by Lorenzo v. Sec. & Exch. Comm'n*, 587 U.S. 71, 139 S. Ct. 1094, 203 L. Ed. 2d 484 (2019) ("resolution of the disputed meaning of the contract on a motion to dismiss is inappropriate"). Accordingly, the Court should disregard them and deny Defendants' motion.

**D.    At Minimum, The Court Should Grant Cadence Leave to Amend**

To the extent the Court is inclined to conclude that any claim is not adequately pleaded, the Court should grant Cadence leave to amend. The Ninth Circuit has held that leave to amend should be granted with "extreme liberality," especially where, as here, the complaint has not previously been amended. *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002). Thus, Cadence should be provided an opportunity to cure any potential pleading issues.

**V.    CONCLUSION**

The Court should deny Defendants' motion to dismiss in its entirety.

Gibson, Dunn &
Crutcher LLP

DATED: June 2, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ L. Kieran Kieckhefer*
L. Kieran Kieckhefer
Ilissa Samplin
Shaun A. Mathur
Ahmed ElDessouki
Christina Myrold

*Attorneys for Plaintiff Cadence Design Systems, Inc.*