Jack Shaw (Bar No. 309382)
jshaw@cjsjlaw.com
CHERRY JOHNSON SIEGMUND JAMES PC
8140 Walnut Hill Lane, Suite 105
Dallas, TX 75231
Tel.: (254) 732-2242
Fax: (866) 627-3509

J. Benjamin Bai (*appearance pro hac vice*)
benjamin.bai@cn.kwm.com
King & Wood Mallesons LLP
50th Floor, 500 Fifth Avenue
New York, NY 10110
Tel.: (212) 319-4755
Fax: (917) 591-8167

Haolu Feng (*appearance pro hac vice*)
harry.feng@cn.kwm.com
King & Wood Mallesons
17th Floor, One ICC, Shanghai ICC
999 Middle Huai Hai Road, Xuhui District
Shanghai 200031 China
Tel.: +86 21 2352 6585
Fax: +86 21 2412 6150

*Attorneys for Defendants*
YUNJING INTELLIGENT INNOVATION (SHENZHEN)
CO., LTD., et al.

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CADENCE DESIGN SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> YUNJING INTELLIGENT INNOVATION (SHENZHEN) CO., LTD. (D/B/A NARWAL), YUNJING INTELLIGENCE ROBOTICS (DONGGUAN) CO., LTD. (D/B/A NARWAL), YUNJING INTELLIGENCE TECHNOLOGY DEVELOPMENT (DONGGUAN) CO., LTD. (D/B/A NARWAL), JINGZHI INTELLIGENCE SUPPLY CHAIN (SHENZHEN) CO., LTD. (D/B/A NARWAL), YUNJING INTELLIGENCE (SHENZHEN) CO., LTD. (D/B/A NARWAL), <br><br> Defendants. | Case No. 3:25-cv-00317-AMO <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT** <br><br> Judge: Hon. Araceli Martínez-Olguín <br> Date: Thursday, August 28, 2025 <br> Time: 2:00 PM <br> Courtroom: 10 (19th Floor) |

**TABLE OF CONTENTS**
Page

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................2

    A. Plaintiff Cannot Establish Personal Jurisdiction Over Defendants ...........................2

        1. Plaintiff's Forum Selection Clause Theory of Jurisdiction Fails........................2

        2. Plaintiff's Purposeful Direction Theory of Jurisdiction Fails............................4

    B. Plaintiff Failed to State Plausible Claims to Relief ......................................................8

        1. Plaintiff Failed to State Plausible DMCA Claim.................................................8

        2. Plaintiff Failed to State Plausible Breach of Contract Claim ...........................13

III. PERSONAL JURISDICTION AND TERRITORIALITY ARE THRESHOLD ISSUES THE COURT SHOULD RESOLVE FIRST .......................................................14

IV. CONCLUSION ...................................................................................................................15

# TABLE OF AUTHORITIES

Page

**CASES**

*Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd.*, 191 F. Supp. 3d 1007, 1012 (N.D. Cal. 2016) .................................................................................................................................... 6, 7

*Blizzard Ent., Inc. v. Bossland GmbH*, 2017 WL 412262 (C.D. Cal. Jan. 25, 2017) ......................... 6

*Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 (9th Cir. 2025) .......................................................... 6, 7

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 264 (2017) ......................................................................................................................................... 5, 7

*Cadence Design Systems, Inc. v. Pounce Consulting, Inc.*, 2019 WL 1095838 (N.D. Cal. Jan. 23, 2019) ................................................................................................................................. 3, 13, 14

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir. 2011) ........................................ 6

*Craigslist, Inc. v. Doe 1*, 2011 WL 1897423 (N.D. Cal. Apr. 25, 2011) ............................................ 3

*Craigslist, Inc. v. Meyer*, 2011 WL 1884555 (N.D. Cal. May 18, 2011) ........................................... 3

*Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1052–53 (N.D. Cal. 2010) ................. 3

*Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085 (9th Cir. 2023) ............................................ 6

*J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 883 (2011) ......................................................... 4

*Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984) ................................................................ 6, 7

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011) .......................................... 6

*Mwani v. Bin Laden*, 417 F.3d 1 (D.C. Cir. 2005) ............................................................................. 8

*Oki Semiconductor Co. v. Wells Fargo Bank Nat'l Ass'n*, 298 F.3d 768, 775–76 (9th Cir. 2002) ..... 7

*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) ...................................................... 6

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) ................................ 7

*Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, 2022 WL 18213536 (C.D. Cal. Dec. 6, 2022) ........................................................................................................................................ 9, 10

*Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, 2024 WL 3616945 (9th Cir. Aug. 1, 2024) ............................................................................................................................ 1, 2, 8, 9, 10

*Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, No. 2:22-cv-00299-MWF-JC (C.D. Cal. Nov. 14, 2024) .................................................................................................... 11

*Synopsys, Inc. v. AzurEngine Techs., Inc.*, 401 F. Supp. 3d 1068 (S.D. Cal. 2019) .................. 11, 12

*van't Rood v. Cnty. of Santa Clara*, 113 Cal. App. 4th 549, 572 (2003) .......................................... 13

**STATUTES**

17 U.S.C. 1201(a)(1)(A) ................................................................................................................ 11

28 U.S.C. § 1391(b) ........................................................................................................................ 1

Cal. Civ. Code § 2307 ................................................................................................................... 13

**RULES**

Federal Rule of Civil Procedure 4(k)(2) ......................................................................................... 8

Rule 12(b)(2) ................................................................................................................................... 1

Rule 12(b)(3) ................................................................................................................................... 2

Rule 12(b)(6) ................................................................................................................................... 2

Rule 4(k)(2) ..................................................................................................................................... 8

## I. **INTRODUCTION**

To set the record straight and to respond to Plaintiff's repeated "do-not-deny" arguments in the Opposition (Dkt. 49), Defendants categorically deny any alleged violations of U.S. law (despite not yet required to answer Plaintiff's allegations). Plaintiff's Opposition now exposes what its Complaint attempted to hide—asking this Court to adjudicate a DMCA circumvention claim based solely on conduct occurring outside the United States. The Complaint alleges no facts showing the relevant technological measure was located within the United States—let alone in California. This is fatal deficiency for jurisdiction, venue, and stating a claim. Plaintiff relies on *Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, 2024 WL 3616945 (9th Cir. Aug. 1, 2024), yet contrives to recast the technological measure as a single license file. It then asserts without factual or legal support that *Superama* authorizes a permissible domestic application under these circumstances. Those readings conflicts with *Superama* itself, Plaintiff's own citation, the factual allegations of its Complaint, and the procedural record.

Plaintiff likewise fabricates its breach of contract claim. It *twice* evaded Defendants' core challenges that Cadence was *not* the offeror of the contract in dispute. Plaintiff admits that Defendants obtained the software from third parties (Compl. ¶ 39), yet cites no authority and pleads no facts demonstrating it extended the offer itself, or that those third parties acted as its authorized agents, privies, or representatives. Absent resolution of this threshold deficiency in contract formation, Plaintiff's claim fails as a matter of law, and the Court need not proceed further.

The Court should grant Defendants' Motion to Dismiss. *First*, Plaintiff fails to meet its burden to establish personal jurisdiction. Its initial reliance on a purported forum selection clause fails because no valid contract exits—Plaintiff was not the offeror. Plaintiff next invokes traditional specific jurisdiction principles, alleging purposeful direction under Internet-jurisdiction cases. But those cases are inapplicable to these brick-and-mortar Defendants and raise serious Due Process concerns. Critically, controlling Supreme Court precedent with closely analogous facts precludes the exercise of specific jurisdiction here. Therefore, the action must be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2).

*Second*, venue in this District is improper under 28 U.S.C. § 1391(b). Plaintiff has not carried

its burden to establish personal jurisdiction over Defendants. Therefore, the action must be dismissed for improper venue pursuant to Rule 12(b)(3).

*Third*, Plaintiff fails to state a plausible DMCA claim under Rule 12(b)(6), and amendments would be futile. To avoid the DMCA's bar on extraterritorial application, Plaintiff improperly reduces the required "technological measure" to a single license file. It then contends this characterization creates a permissible domestic application. That theory contradicts *Superama*, Plaintiff's own citation, the factual allegations of its Complaint, and the procedural record. The DMCA claim is jurisdictionally and substantively deficient, warranting dismissal with prejudice.

Fourth, Plaintiff fails to state a breach of contract claim under Rule 12(b)(6), and amendment would be futile. Plaintiff cannot overcome its own admission that Defendants obtained the software from third parties—*not* from Plaintiff. Compl. ¶ 39. Having *twice* declined to dispute that it was not the offeror, Plaintiff cannot now plead otherwise. It remains implausible that Plaintiff extended the offer necessary for contract formation. This fatal defect warrants dismissal of this claim with prejudice.

Finally, the Court must reject Plaintiff's request to defer resolution of the fatal jurisdictional deficiencies until trial. Whether the alleged conduct constitutes a U.S. activity sufficient to overcome the DMCA's bar on extraterritorial application is a threshold jurisdictional determination, not an issue intertwined with the merits. Similarly, whether Plaintiff was the offeror necessary for contract formation is a distinct jurisdictional fact. Plaintiff bears the burden to plead sufficient facts establishing these jurisdictional prerequisites. It has failed to do so. Proceeding to the merits when Plaintiff has failed to plead essential jurisdictional facts is improper. Plaintiff cannot prevail on these threshold issues, and the claims must be dismissed—at this stage.

## II.   ARGUMENT

### A.   Plaintiff Cannot Establish Personal Jurisdiction Over Defendants

#### 1. Plaintiff's Forum Selection Clause Theory of Jurisdiction Fails

Despite having *two* chances to respond, Plaintiff *still fails to dispute* that it was *not* the offeror of the contract. *See* Plaintiff's Opposition to Defendants' Motion to Stay Discovery, Dkt. 46; Plaintiff's Opposition to Defendants' Motion to Dismiss; Dkt. 49 at 23 (offering no explicit

admission or denial of Cadence being the offeror but an evasive statement of "[r]egardless of where the cracked software was obtained from"). Plaintiff bears the initial burden of proof on this fundamental contract law issue, yet its repeated evasion calls into question, if not forecloses, the existence of any such proof. Indeed, Plaintiff cannot deny its on-record admission that Defendants did *not* acquire the software from Cadence. Compl. ¶ 39. Accordingly, it is uncontroverted that Plaintiff was not the offeror of the SLMA.

Plaintiff's reliance on *Cadence Design Systems, Inc. v. Pounce Consulting, Inc.*, 2019 WL 1095838 (N.D. Cal. Jan. 23, 2019), *report and recommendation adopted,* 2019 WL 1767332 (N.D. Cal. Apr. 22, 2019) is misplaced. *Pounce* is an Amended Report and Recommendation Regarding Application for Default Judgment; the defendant never *actually* litigated. *Pounce*, 2019 WL 1095838 at *3. Plaintiff asserts that the court "**concluded**" that "[Pounce SA] agreed to the terms of [Cadence's] Software License Agreement by installing Cadence's software…" Dkt. 49 at 6, citing *Pounce*, 2019 WL 1095838 at *8 (emphases added). However, a closer look at the pin cite reveals utter cherry-picking:

> "**Given the foregoing, it is reasonable to assume that** Pounce SA agreed to the terms of the Software License Agreement by installing Cadence's software, because without doing so, Pounce SA would not have been able to access to the software."

*Pounce*, 2019 WL 1095838 at *8 (emphases added). Pounce SA's agreement to the SLMA is the court's *assumption*, not an adjudicated finding. This mischaracterization undermines Plaintiff's position and leaves *Pounce* with little, if any, persuasive weight.

Plaintiff's reliance on *Craigslist, Inc. v. Doe 1*, 2011 WL 1897423 (N.D. Cal. Apr. 25, 2011), *report and recommendation adopted sub nom. Craigslist, Inc. v. Meyer*, 2011 WL 1884555 (N.D. Cal. May 18, 2011) and *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1052–53 (N.D. Cal. 2010) is also misplaced. Both rulings address default judgment applications in which the defendant never appeared. *See Craigslist v. Doe 1*, 2011 WL 1897423, at *1; *Naturemarket*, 694 F. Supp. 2d at 1047. Because the underlying issues were never litigated, these cases carry little precedential weight.

Because no valid contract existed between the parties, no forum selection clause binds them.

3

Plaintiff's claim that Defendants must prove the clause unreasonable is a red herring. *See* Dkt. 49 at 7–8. For the same reason, Defendants need not respond to Plaintiff's footnote argument[1] (*see id.*) because Defendants do not "rely on" the Lu Declaration to establish that absence of any contract. Plaintiff's jurisdictional theory, built on the alleged forum-selection clause, therefore fails.

### 2. Plaintiff's Purposeful Direction Theory of Jurisdiction Fails

Plaintiff's purposeful direction theory also fails. "[I]t is the Defendants' actions, not his expectations, that empower a State's courts to subject him to judgment." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 883 (2011). "Freeform notions of fundamental fairness divorced from traditional practice cannot transform a judgment rendered in the absence of authority into law." *Id.* at 880. When facing a State's interest in protecting its citizens, "the Constitution commands restraint before discarding liberty in the name of expediency." *Id.* at 887.

This action alleges DMCA circumvention and breach of contract, but at its core it frames Defendants—foreign entities—as having committed a tort against a California company. In that posture, *McIntyre* offers a clearer and more decisive guide to whether Defendants may be sued in California than Plaintiff's complex inquiry into purposeful direction.

In *McIntyre*, a British machine manufacturer faced suit in New Jersey over injuries caused by one of its machines. "[T]he claim of jurisdiction centers on three facts: The distributor agreed to sell [the Defendants'] machines in the United States; [the Defendants'] officials attended trade shows in several States but not in New Jersey; and up to four machines ended up in New Jersey." *McIntyre Mach.*, 564 U.S. at 886. The Supreme Court further observed that the manufacturer did not sell directly to U.S. buyers, exercised only limited control (*i.e.*, direction and guidance on advertising and sales) over its distributors, maintained no New Jersey office, paid no taxes, owned no property, ran no advertisements, and sent no employees to the State. *Id.* at 878, 886. The Supreme Court held that "[t]hese facts may reveal an intent to serve the U.S. market, but they do not show that J. McIntyre purposefully availed itself of the New Jersey market." *Id.*

Here, the parallels to *McIntyre* are striking. The Complaint contains no allegation that

---

[1] "Argument in footnotes will not be considered by the Court." *See* Standing Order for Civil Cases Before District Judge Araceli Martínez-Olguín, Section H.3 (Revised November 22, 2023) https://www.cand.uscourts.gov/wp-content/uploads/2023/03/AMO-Civil-Standing-Order-11.22.2023-FINAL.pdf.

Defendants maintain U.S. offices, that they own properties in the United States, that they employ personnel here, that their officials or employees attended trade shows in this country, that they sell their products directly to U.S. consumers (rather than distributors), that any of their products reached California, or that they controlled their distributors. *See* Complaint. Plaintiff instead offers the Samplin Declaration (Dkt. 50 with Exs. A–I) to suggest that Defendants "conduct business" in California (*see* Dkt. 49 at 12, 13), but that declaration is not incorporated into the Complaint and should be disregarded for jurisdictional inquiry in the first place. Moreover, Best Buy, Home Depot, and Lowe's—which "can" (Dkt. 49 at 12) sell a product in San Jose—are not pleaded to be controlled by Defendants; at most, they are independent downstream distributors. *See* Dkt. 49 at 12. Critically, the Samplin Declaration itself does not show that any product was *actually* delivered to California. *See* Samplin Decl. ¶¶ 8–16, Exs. A–I.

Given the closely parallel facts, the inquiry should end here: *McIntyre* governs and forecloses jurisdiction. Even were *McIntyre* deemed non-dispositive, a premise which Defendants reject, Plaintiff's convoluted purposeful direction theory still collapses for multiple, independent reasons.

First, Plaintiff's purposeful direction test, particularly its second, "expressly aimed" factor, rests on contacts unrelated to the claims, such as "business that exploits the forum market for commercial gain." *See* Dkt. 49 at 11. That approach contravenes Supreme Court authority. "[T]here must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that **takes place in the forum State**" before a court may exercise specific jurisdiction. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 264 (2017) (emphases added). A court may not relax "the strength of the requisite connection between the forum and the specific claims" "if the defendant has extensive forum contacts that are **unrelated to those claims**" because it "resembles **a loose and spurious form of general jurisdiction**." *See id.* at 264. "A corporation's continuous activity of some sorts within a state ... is not enough to support the demand that the corporation be amenable to suits **unrelated to that activity**." *Id.* (emphases added). Plaintiff's single-sentence, general assertion that Defendants "conduct business" in California to satisfy the "expressly aimed" factor is exactly the practice *Bristol-Myers Squibb* condemns. Therefore, the Court should reject Plaintiff's purposeful direction argument.

5

Second, it appears that Plaintiff frames this inquiry as an Internet-jurisdiction dispute and relies almost exclusively on that body of law. Its lead authority is *Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 (9th Cir. 2025), a case where the defendant is "an e-commerce platform that facilitates online sales" (*Briskin*, 135 F.4th at 747). Yet none of the authorities Plaintiff cites—including those discussed at Dkt. 49 at 8–13—bears the factual resemblance to *McIntyre* that this action does. For clarity, the cases Plaintiff invokes for each purposeful direction discussion are summarized below.

| Cite Location | Plaintiff-Cited Case | Facts in Cited Case |
|---|---|---|
| Dkt. 49 at 9 (introducing purposeful direction test) | *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) | Defendant being "an e-commerce platform that facilitates online sales" for its contracted merchants. *See* 135 F.4th at 747. |
| Dkt. 49 at 9–11 (discussing "intentional acts" factor and "expressly aimed" factor) | *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir. 2011) | Defendant operating nationwide websites and engaging in the same business with the plaintiff. *See* 653 F.3d 1066. |
| Dkt. 49 at 9, 11 (discussing "expressly aimed" factor) | *Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd.*, 191 F. Supp. 3d 1007, 1012 (N.D. Cal. 2016) | Defendant directly acquired software from plaintiff. *See* 191 F. Supp. 3d at 1012. |
| Dkt. 49 at 10 (discussing "expressly aimed" factor) | *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) | Defendant "register[ed] Panavision's trademarks as his domain names on the Internet." 141 F.3d at 1318. |
| Dkt. 49 at 11 (discussing "expressly aimed" factor) | *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011) | Defendant operated a famous website "court[ing] national audience." 647 F.3d at 1222. |
| Dkt. 49 at 11 (discussing "expressly aimed" factor) | *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984) | Defendant "produces a national publication aimed at a nationwide audience." 465 U.S. at 781. |
| Dkt. 49 at 11 (discussing "expressly aimed" factor) | *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085 (9th Cir. 2023) | Defendant "in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to [California]." 72 F.4th at 1088. |
| Dkt. 49 at 12 (discussing "knowing" factor) | *Blizzard Ent., Inc. v. Bossland GmbH*, 2017 WL 412262 (C.D. Cal. Jan. 25, 2017) | Defendant operates a website accessible from Internet. 2017 WL 412262, at *1. |

By contrast, the defendants in most of Plaintiff's authorities operated nationally-accessible websites that maintained direct, virtual contacts with California. The Complaint alleges no comparable electronic or physical contact here. That distinction is critical: in Internet-jurisdiction cases, nationwide accessibility and "electronic contact" form the factual predicate that separates pre-Internet precedents and drives the doctrine. *See Briskin*, 135 F.4th at 752–55 (discussing cases establishing that "something more" than mere passive ***nationwide accessibility*** was required to show express aiming at the forum state and, thus, satisfy due process) (emphases added). Tests developed for Internet enterprises therefore do not fit these brick-and-mortar Defendants, who have had no contact—either physically or electronically—with California, a fact that is not alleged in the Complaint. *Autodesk* and *Keeton* do not change that conclusion. In *Autodesk*, the defendant entered a valid contract and directly purchased software from plaintiff. *See Autodesk*, 191 F. Supp. 3d at 1012. Here, Plaintiff admits Defendants did not obtain the software from Plaintiff, so no contract exists. Compl. ¶ 39. In *Keeton*, the defendant directly ran "a national publication aimed at a nationwide audience." *Keeton*, 465 U.S. at 781. That nationwide accessibility and direct linkage to the publisher echo the facts prerequisite in the Internet-jurisdiction cases. Both cases are thus inapposite.

Notably, throughout the discussions of the purposeful direction, Plaintiff fails to distinguish Defendants from their employees, relying only on *Oki Semiconductor Co. v. Wells Fargo Bank Nat'l Ass'n*, 298 F.3d 768, 775–76 (9th Cir. 2002) for the proposition that "an employer is generally liable for its employee's acts committed within scope of employment." *See* Dkt. 49 at 10–11. Yet the Complaint pleads no facts establishing that any alleged acts fell within an employee's "scope of employment." These omissions undercut Plaintiff's purposeful direction theory and reinforce that *McIntyre* should control the jurisdictional inquiry.

Plaintiff's single-sentence "but for" assertion (Dkt. 49 at 13) cannot satisfy the relatedness requirement. It identifies no activity or occurrence in California, contravening *Bristol-Myers Squibb* that demands such a forum link. *See Bristol-Myers Squibb* 582 U.S. at 264. As shown below, the alleged DMCA circumvention and any purported breach of contract occurred entirely outside California. Because Plaintiff cannot meet its burden on relatedness—or on purposeful availment—

Defendants need not reach the third "reasonableness" prong. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

Plaintiff's attempt to invoke Rule 4(k)(2) likewise fails. Federal Rule of Civil Procedure 4(k)(2), adopted in 1993, prevents foreign defendants that have violated United States federal laws from escaping suit for lack of personal jurisdiction. *See, e.g., Mwani v. Bin Laden*, 417 F.3d 1 (D.C. Cir. 2005). But Plaintiff cannot plausibly establish a violation of the U.S. federal laws, personal jurisdiction under Rule 4(k)(2) is therefore unavailable.

### B. Plaintiff Failed to State Plausible Claims to Relief

#### 1. Plaintiff Failed to State Plausible DMCA Claim

Plaintiff's Opposition rests on two assertions: that "the protective technological measure is the license file" and that the file is "generated and located in California." Dkt. 49 at 17. Neither rescues the DMCA claim. The license file must be used in China because the software itself resides there (*i.e.*, the alleged downloading occurred in China). More importantly, the Complaint never pleads that the license file is the relevant technological measure, so the new claim carries no weight in this dismissal analysis. *See* Complaint. Plaintiff's positions in the Complaint, its Opposition, and its declarations cannot be reconciled. Even accepting that the license file was the technical measure, Plaintiff still fails to allege that the license file was used in California.

*First*, Plaintiff mistakenly leans on *Superama* to claim that the relevant technological measure is located in California. *See* Dkt. 49 at 18. Plaintiff selectively quotes the Ninth Circuit, invoking phrases such as "the download is deemed to have happened in Japan" and "the hacking and ripping of the U.S.-based video occurred here in the U.S" (*Superama*, 2024 WL 3616945, at *3). *See* Dkt. 49 at 18. Yet Plaintiff overlooks the case's materially different facts. A closer look at the "lock" in *Superama* shows why the analogy fails: "TBS applied ... hacking techniques to Superama's **servers in the United States**, circumventing their **U.S.-based protection** in order to permit a streamlined and unauthorized download of [Superama's] work." *Id.* (emphases added). As the district court explained in its Order Granting Defendants' Motion to Dismiss,

> "Plaintiff adds allegations in the CAC in this action regarding the means by which Plaintiff believes Defendant was able to download the Copyrighted Work from

8

YouTube. Plaintiff alleges that **YouTube employs 'a series of technological protection measures to make it more difficult' for viewers to download copyrighted work. These technological measures applied to the allegedly downloaded Copyrighted Work.** 'On information and belief,' Plaintiff alleges that Defendant went to Superama's website and/or its YouTube channel and employed 'hacking and stream ripping' technology to 'circumvent YouTube's technological protection measures, stripping the work of its technological protection measures.' Further, '[o]n information and belief,' Plaintiff alleges that Defendant applied these hacking techniques to **Plaintiff's 'servers in the United States,'** to permit an unauthorized download of the Copyrighted Work."

*Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, 2022 WL 18213536, at *2 (C.D. Cal. Dec. 6, 2022), *aff'd in part, rev'd in part and remanded*, 2024 WL 3616945 (9th Cir. Aug. 1, 2024) (internal citation omitted). Clearly, YouTube's "series of technological protection measures to make it more difficult for viewers to download copyrighted work" is the relevant "lock" in *Superama*. That "lock" is hosted on YouTube's servers that are in turn "in the United States." *Superama*, 2024 WL 3616945, at *2. TBS bypassed those *U.S.-server based* measures to download Superama's video from YouTube. *Superama*, 2022 WL 18213536, at *2. On those facts, the Ninth Circuit concluded that Superama stated a permissible domestic application of the DMCA.

Here, by contrast, no U.S.-based server—or any domestically hosted technological measure—is involved. Defendants have explained that the relevant "technological measure" is the Cadence License Manager working in tandem with the license file, not the license file standing alone. Dkt. 32 at 15. The Complaint necessarily and inherently alleged that the location of the Cadence License Manager is in China. *Id.* at 17. Plaintiff's attempt to redefine the measure as the license file alone misreads its own pleading and misapplies *Superama*. The Complaint states: "**As part of Cadence's copyright protection system**, the Cadence Software **will not operate unless** a user first installs **Cadence License Manager**, which is a software management tool that **controls** use of the Cadence Software." Compl. ¶ 21 (emphases added). That plain language makes three points clear: (1) Cadence's "copyright protection system" has multiple parts and is not limited to a single license

file, which Plaintiff tries to refute in its Opposition (*see* Dkt. 49 at 18); (2) one such part is the Cadence License Manager, which Plaintiff blatantly criticizes as "makes no sense" (*see id.*); (3) Cadence License Manager controls access to Cadence Software, which Plaintiff *does not deny* (*see id.*). Indeed, Cadence License Manager is designed solely for copyright protection and has no other function for Cadence Software. *See* Compl. ¶ 21. Without Cadence License Manager, a license file confers no access to Cadence Software.

Plaintiff attempts to escape this contradiction by asserting, outside the pleadings, that "the protective technological measure is the license file" and by claiming that the file is "located in California." *See* Dkt. 49 at 17, 18. It appears to argue that the file is "located" here merely because it was "generated in this District." *See id.* This reasoning, which seeks to sidestep the Complaint's own allegations, is flawed. First, under *Superama*, the place where the license file is generated is analogous to the lock factory, not the lock itself. As Defendants explained in their reply in support of a stay of discovery, the Complaint necessarily and inherently alleged that the license file is not in California. *See* Dkt. 48 at 4–6. Confusing the location of the lock with that of the lock factory epitomizes the fatal flaw in Plaintiff's Opposition.

Plaintiff asserts that the license file's post-generation location is "irrelevant" because *Superama* addresses no "transfer." *See* Dkt. 49 at 19. This misstatement flies in the face of the law established by *Superama*. Of course the *actual* location of the "lock" is relevant under *Superama*, no matter the "lock" is transferred or not—what is irrelevant is the generation location of the lock. *Superama* omits any discussion of transfer simply because none occurred: YouTube's "series of technological protection measures" were located in its "servers in the United States." *See Superama*, 2022 WL 18213536, at *2. Here, by contrast, Cadence's license files, assuming they constitute the technological measure, must be distributed worldwide and thus reside at global locations, including locations outside the United States. *Superama* does not have basis to address any "transfer," but that does not change the law that the *actual* location of the "lock" matters for this analysis. The controlling question is where the lock exists when the alleged circumvention occurs, not where it was generated.

Notably, in *Superama*, the Ninth Circuit affirmed in part the district court's finding that Superama's complaint was defective by failing to sufficiently plead that any circumvention *actually*

took place in the U.S. *See Superama*, 2024 WL 3616945, at *3. In response, Superama submitted an amended complaint to supplement with more details regarding the alleged circumvention of YouTube's technological measures. *See* Amended Complaint & Demand for Jury Trial at 8–12, *Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, No. 2:22-cv-00299-MWF-JC (C.D. Cal. Nov. 14, 2024), Dkt. No. 45. Here, Plaintiff's Complaint contains no comparable detail. *Compare id. with* Complaint.

Second, Plaintiff clouds the threshold question whether any license file existed to be circumvented. A license file is generated only "[u]pon the purchase of the Cadence Software." Compl. ¶ 23. That is, without a purchase, it is designed "as part of [Cadence's] copyright system" that no license file is generated. *Id.* On the other hand, Plaintiff also alleged that "Defendants are not customers of Cadence." *See* Compl. ¶¶ 37. Therefore, no license file existed, and none could have been circumvented. If, as Plaintiff contends, the license file is the technological measure, then no measure was breached—a flaw that undermines Plaintiff's theory. Cadence's protection system nonetheless persists because the mandatory Cadence License Manager "controls use of the Cadence Software." Compl. ¶ 21. The Cadence License Manager, not a nonexistent file, "effectively controls access to a work" under 17 U.S.C. 1201(a)(1)(A).

Third, Plaintiff's reliance on *Synopsys, Inc. v. AzurEngine Techs., Inc.*, 401 F. Supp. 3d 1068 (S.D. Cal. 2019) is misplaced. Plaintiff asserts that "the court found that the license key was the protective technological measure." *See* Dkt. 49 at 19. *Synopsys* does not stand for that proposition; Plaintiff again misstates the decision.

> "The central feature of these access-control measures is a ***license key system*** that requires licensees to input an encrypted key code that can only be obtained from Synopsys." *Synopsys*, 401 F. Supp. 3d at 1071 (emphases added).
>
> "The software will not run without the licensee 'checking out' a license key from a server that is designed to only grant such keys to approved licensees. Every court to consider the issue has found that similar ***methods of license-control*** satisfy the 'effectively controls' requirement of the DMCA, and this Court does too." *Id.* at 1072 (emphases added).

"These counterfeit keys work by effectively tricking the company's **license-control systems** into thinking AzurEngine is a licensed user. As discussed above, Synopsys' 'call-home data' indicates that individuals associated with AzurEngine have circumvented its **license-control system**." *Id.* (emphases added).

"Because Synopsys has shown that AzurEngine likely circumvented its **license-control systems**, it is irrelevant that AzurEngine believed it had a license to use the software." *Id.* at 1073 (emphases added).

Clearly, Cadence's copyright protection system is similar to Synopsys'. *Synopsys* deems the "license-control ***system***" or "***methods*** of license-control" (emphases added) as the DMCA-required technological measure. *See id.* Nowhere does *Synopsys* state that a single license file is "the protective technological measure" as Plaintiff claims. Indeed, in plain English, a lone file is not a "system" or "methods."[2]

Notably, Plaintiff's parenthetical—"rejecting extraterritorial argument even where access to software occurred on Defendants' servers in China"—misrepresents *Synopsys*. The decision did not turn on the definition or location of any technological measure. Rather, the court rejected the extraterritorial defense because the defendant "is a California-based company with engineers operating in the United States" who "access to Synopsys' software … through its servers in China." *Synopsys*, 401 F. Supp. 3d at 1073 ("Extraterritoriality Is a Red Herring."). The alleged circumvention thus began and ended in California, not entirely outside of the United States. Here, by contrast, the Complaint is devoid of any factual allegation of conduct in California by any of the Defendants.

Procedural history further undercuts Plaintiff's claim that the alleged circumvention occurred in the United States. At the May 1, 2025 Hearing, Plaintiff's Counsel, Ms. Kieckhefer, stated that the Phone Home System can identify "***all*** of the instances of infringement and use of our software" but somehow "additional discovery" is required to inquire "is ***any*** of this [*i.e.*, the alleged circumvention] ***actually*** happening ***in the U.S.***" May 1, 2025 Hr'g Tr. at 10:15–17 (emphases added).

---

[2] *See System*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/system; *Method*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/method.

The Complaint, coupled with this concession, shows that Plaintiff lacked a factual basis for alleging U.S.-based circumvention when it filed suit, and its inconsistent positions continue.

For at least the above reasons, Plaintiff failed to plausibly state the DMCA claim.

### 2. Plaintiff Failed to State Plausible Breach of Contract Claim

At the outset, Plaintiff's labyrinthine attack on the supposedly "impermissible" Lu Declaration is a red herring. *See* Dkt. 49 at 20–23. As Defendants noted in their Reply in Support of Motion to Stay Discovery, which predates Plaintiff's Opposition to Defendants' Motion to Dismiss and previewed Defendants' position, the Lu Declaration simply provides non-essential, helpful facts and is cited only nine times in the Motion to Dismiss. Dkt. 32 at 2, 9–11, 17–18, 22. Those citations supply background (*id.* at 2), confirm the lack of personal jurisdiction (*id.* at 9–11, 17), and offer an *additional* basis to dismiss the breach of contract claim (*id.* at 18, 22). The breach of contract claim fails for at least another independent basis (*i.e.*, there is no valid offer) unrelated to the Lu Declaration. *See* Dkt. 32. Even if taking out the Lu Declaration from the consideration, the four corners of the Complaint and the remaining analysis in the Motion to Dismiss warrant dismissing the Complaint in its entirety. *See* Dkt. 42.

Plaintiff contends that "Cadence's License Manager and software require acceptance" "[r]egardless" of where they are obtained. Dkt. 49 at 23. However, after *two* rounds of briefing—its Oppositions to Defendants' Motion to Stay Discovery and Motion to Dismiss—Plaintiff still *does not deny* that it is *not* the offeror of the SLMA. *See* Dkts. 46 & 49. The Complaint makes the allegation very clear that Defendants acquired the software from "websites, including filesharing and torrent sites" (Compl. ¶ 39)—*not* from Cadence. Those third parties, not Cadence, supplied both the product and the SLMA. *See* Compl. ¶ 27. Plaintiff cites no authority showing that it, rather than the third parties, made the offer, or that those third parties acted as Cadence's agents, privies, or authorized representatives. *See van't Rood v. Cnty. of Santa Clara*, 113 Cal. App. 4th 549, 572 (2003) ("Authority may be granted to an agent either by a precedent authorization or a subsequent ratification.") (citing CAL. CIV. CODE § 2307). Whatever causes of action these facts might support, contract law is not one of them. After all, the Complaint lacks any factual allegation in this regard.

Plaintiff cited no better authority but had to rely on *Pounce* again to salvage the validity of

13

the assent. *See* Dkt. 49 at 23–24. However, as previously pointed out, *Pounce* is a magistrate judge's report recommending default judgment; the point on which Plaintiff's relies was never litigated. *See Pounce*, 2019 WL 1095838 at *8. Notably, Plaintiff omits Judge Kim's qualifying language—"[g]iven the foregoing, it is reasonable to ***assume*** that" (emphases added)—that precedes Plaintiff's parenthetical quotation. *Compare Pounce*, 2019 WL 1095838 at *8 with Dkt. 49 at 24. This omission distorts the opinion and leaves the citation with little, if any, persuasive value.

Because the threshold contract question remains unresolved, the Court needs not consider Plaintiff's remaining arguments. For the reasons set out above, Plaintiff has not plausibly pleaded a breach of contract claim.

### III. PERSONAL JURISDICTION AND TERRITORIALITY ARE THRESHOLD ISSUES THE COURT SHOULD RESOLVE FIRST

Plaintiff has pleaded its DMCA claim inconsistently and has deliberately avoided alleging that it was the contract's offeror. *See* Complaint. Its two oppositions underscore the omission, supplying no facts to support either contention. Territoriality, contract formation, and personal jurisdiction thus remain critical threshold issues that will determine whether this action can proceed in this Court.

When pressed to provide facts showing DMCA circumvention within the United States, Plaintiff pointed only to the allegation that the license file was generated in this District. Compl. ¶ 23. Accepting Plaintiff's own theory—reducing the technological measure to the license file—that allegation does not place the alleged circumvention on U.S. soil. *See* Dkts. 46 & 49. The record therefore offers no basis for personal jurisdiction over these foreign Defendants and no foundation for claims arising from conduct that occurred entirely abroad, a point Plaintiff tacitly conceded at hearing. May 1, 2025 Hr'g Tr. at 10:15–17. Likewise, when asked to substantiate its breach of contract theory, Plaintiff *twice* failed even to allege that it offered the SLMA. *See* Dkts. 46 & 49. Absent that predicate—and thus any valid forum-selection clause—Plaintiff lacks jurisdictional footing, and its contract claim cannot proceed in this Court.

Seeking to sidestep these threshold defects, Plaintiff urges the Court to postpone the personal-jurisdiction analysis until trial and instead presses the merits. *See* Dkt. 49 at 14. That request is

14

improper. As detailed in Defendants' Reply in Support of Motion to Stay Discovery (Dkt. 48), adjudicating the territoriality, contract formation, and personal jurisdiction issues can be based on the four corners of the Complaint, and the jurisdictional inquiry is not substantially intertwined with the merits of the case. *See* Dkt. 48.

Plaintiff's opposition confirms that this dispute pits a U.S. corporation against foreign companies and concerns conduct occurring entirely abroad, with no U.S. activities. Before the case proceeds, Defendants respectfully ask the Court to require Plaintiff to establish both the territoriality that U.S. copyright law demands and personal jurisdiction over these foreign Defendants.

## IV. CONCLUSION

For the reasons discussed above and in the Motion to Dismiss, Defendants respectfully request that the Court dismiss Defendants for lack of personal jurisdiction and/or improper venue, and dismiss the entire Complaint for failure to state a claim.

DATED: June 23, 2025

CHERRY JOHNSON SIEGMUND JAMES PC

By:  */s/ Jack Shaw*
Jack Shaw

KING & WOOD MALLESONS LLP
J. Benjamin Bai (*appearance pro hac vice*)

KING & WOOD MALLESONS
Haolu Feng (*appearance pro hac vice*)

*Attorney for Defendants Yunjing Intelligent Innovation (Shenzhen) Co., Ltd., Yunjing Intelligence Robotics (Dongguan) Co., Ltd., Yunjing Intelligence Technology Development (Dongguan) Co., Ltd., Jingzhi Intelligence Supply Chain (Shenzhen) Co., Ltd., and Yunjing Intelligence (Shenzhen) Co., Ltd.*