# EXHIBIT C-2

# Civil Complaint

Plaintiff: Narwal Intelligent Innovation (Shenzhen) Co., Ltd., domiciled at A2901, Yunzhongcheng, Phase 6, Vanke Yuncheng, Dashi 2nd Road, Xili Community, Xili Sub-district, Nanshan District, Shenzhen.

Legal representative: Zhang Junbin, Chairman and General Manager.

**Defendant 1**: Cadence Enterprise Management (Shanghai) Co., Ltd., domiciled at 10th Floor, No. 1, Lane 221, Dongyu Road, China (Shanghai) Pilot Free Trade Zone (actual floor is 9th Floor).

Legal representative: Arnold Foster Jensen, Chairman.

**Defendant 2**: Shanghai Cadence Electronics Technology Co., Ltd., domiciled at Floors 5-9 (actual floors are 4-8th Floors), No. 1, Lane 221, Dongyu Road, China (Shanghai) Pilot Free Trade Zone.

Legal representative: Arnold Foster Jensen, Chairman.

**Subject matter:** Dispute involving abuse of market dominance

**CLAIMS:**

1. Request confirmation that the two Defendants have a dominant market position in the relevant market identified in this case;

2. An order for the Defendants to immediately cease the monopolistic abuse of a dominant market position;

3. Request that the two Defendants be ordered to publish a public statement in a prominent location on the front page of the Cadense [sic] China website (http://www.cadence.com/cn) and in the China Intellectual Property News to eliminate the adverse effects caused by monopolistic behavior;

4. An order for the two Defendants to compensate the Plaintiff for the economic losses and reasonable rights protection costs of 90 million yuan in total due to their monopoly;

5. The costs of the proceedings in this case are borne by the two Defendants.

**Facts and Rationale:**

Electronic Design Automation (EDA) software consists of computer tools that support the design and verification of integrated circuits. Mainstream tools cover circuit design, simulation and printed circuit board (PCB) drawing. It runs through the entire process of chip design, manufacturing and packaging testing. It is called the "mother of chips", and without EDA software tools, the design and manufacturing of any modern chip cannot be completed. Among the global EDA software manufacturers, Synopsys Technology (Synopsys), Cadence Electronics (Cadence), and Siemens have long occupied absolute market advantages in the world and China.

The relevant market in this case is defined as the EDA software market in China in 2023 and 2024.

**I. The two Defendants have a dominant market position**

According to multiple public reports, for a long time, the global EDA software market and the EDA software market share in China have shown a highly monopolistic pattern. The three leading companies, Synopsys, Cadence, and Siemens, together occupy about 80% of the market share. This market shows typical characteristics of high concentration and oligopoly, and is a market that lacks competition. As one of the oligarchs in this market, the behavior of Cadence is not subject to effective competition constraints. Based on this, it can be concluded that Cadence has a dominant market position in combination with the factors stipulated in Article 23 of the Anti-Monopoly Law for the following reasons:

1. The financial and technical conditions of the operator, and the ease with which other operators can enter the relevant market

EDA software is the upstream industry of chip design. It is the software used to complete the functional design, synthesis, verification, and other processes of ultra-large-scale integrated circuit chips. It is a technology-intensive industry, requiring massive investment and long-term accumulation of cutting-edge technology for its R&D. This creates very high technical barriers, making it difficult for new entrants to have the technical strength and product integrity to compete with the defendants in the short term.

2. The extent to which other operators rely on this operator for transactions, and the operator's ability to control the sales market

EDA software is deeply coupled with upstream and downstream tools, intellectual property libraries, and foundry process files, forming a tight ecosystem. Once the chip manufacturer adopts the EDA software of Cadence for design, its accumulated design data, intellectual property, and process flow will be deeply embedded in Cadence's EDA software ecology. Switching to other competitors' EDA platforms will involve huge transition costs, effectively locking users into the EDA software ecosystem provided by Cadence, and making them extremely dependent on the EDA software provided by Cadence.

3. The development and optimization of EDA software relies on a large number of user feedback and data. With its first-mover advantage and large customer base, Cadence has created powerful economies of scale, giving it a dominant market position.

In summary, the Defendant has a dominant position in the relevant market.

**II. The Defendants engaged in monopolistic practices by abusing its dominant market position**

The two Defendants are the only two wholly-owned subsidiaries established by Cadence in China. They are jointly responsible for the affairs of Cadence in the EDA software market in China, and are specifically responsible for the technical development, technical consultation, technical service, and software sales of Cadence EDA software in China. The Defendants are the actual operators of Cadence in the relevant market in China and the monopoly was exercised by the Defendants against Chinese companies in China. The Defendants used their dominant position to engage in a number of abusive practices in violation of Article 22 of the Anti-Monopoly Law.

First, the Defendants sent a notice to the Plaintiff by mail in 2023 to obtain a software license and pay the license fee. Subsequently, the Plaintiff and Defendants engaged in multiple rounds of negotiations regarding the licensing fees for Cadence's EDA software. However, during the negotiation process, the Defendants insisted on charging the plaintiff for EDA software license fees that far exceed the reasonable level. Its pricing did not reflect the normal value and reasonable profit of the product, but instead, by virtue of its market dominance, took advantage of the dilemma of customers being locked up due to excessive transition costs to seize unfairly high profits, which violated the provisions of Paragraph 1 (1) of Article 22 of the Anti-Monopoly Law.

Secondly, when the Plaintiff made a purchase offer at fair market value with a view to achieving arm's length terms, the Defendants categorically rejected the Plaintiff's reasonable request without any valid reason. Rather than acting based on normal business considerations, the Defendants abused its dominant position to force its trading partners to accept unreasonable trading conditions, which was in essence a disguised refusal to deal on reasonable terms, in violation of Paragraph 1 (3) of Article 22 of the Anti-Monopoly Law.

Finally, upon investigation by the Plaintiff, it was found that the Defendants had significantly differentiated treatment in terms of core trading conditions such as software license price and discount policy when trading with a number of domestic EDA software users with similar conditions and the same trading volume, and such differential treatment lacked reasonable justification. Such behavior undermined the principle of fairness in market competition and violated the provisions of Paragraph 1(6) of Article 22 of the Anti-Monopoly Law.

**III. The Defendants' abuse of market dominance seriously excludes or restricts competition in the relevant market and they shall bear the corresponding legal liability**

The Defendants' abuse of market dominance increased the operating costs across the entire industry, made it difficult for potential competitors to enter due to the difficulty of obtaining sufficient market space and profits, hindered technological innovation and market entry, and ultimately led to a high concentration and insufficient competitive vitality in the Chinese EDA software market. This not only directly harms the legitimate rights and interests of chip manufacturers including the Plaintiff, increases production costs, in the long run, it will also inhibit the technological progress and innovation development of the EDA software market, harm the overall competitiveness of China's chip industry, and cause serious harm by excluding and restricting competition in the EDA software market within China. Due to the monopolistic conduct of the Defendants, the Plaintiff will be forced to adopt the products of other EDA software manufacturers, and will have to pay huge conversion costs and economic losses.

According to Article 60 of the Anti-Monopoly Law, "operators who carry out monopolistic practices and cause losses to others shall bear civil liability according to the law. The Defendants are liable for their abuse of their dominant market position.

In summary, the Defendants engaged in monopolistic acts by abusing their dominant market position, excluded and restricted competition in the relevant market, disrupted the fair competition order in the relevant market, and caused huge economic losses to the Plaintiff. In order to protect its legitimate rights and interests, the Plaintiff has filed this lawsuit in accordance with the Anti-Monopoly Law and other relevant regulations, and implore the court to support all the plaintiffs' claims, defend the plaintiffs' legitimate rights and interests, and maintain the competition order in the relevant market.

    Respectfully
Shanghai Intellectual Property Court

[seal:] Narwal Intelligent Innovation (Shenzhen) Co. 4403056239800 Ltd.

        Plaintiff: Narwal Intelligent Innovation (Shenzhen) Co., Ltd.

        Legal Representative: [stamp:] Zhang Junbin

        October 30, 2025



I, KELLY LEE, hereby certify that I am competent to translate from Chinese to English and that the attached translation is, to the best of my knowledge and belief, a true and accurate translation of the following document from Chinese to English. My qualifications include: completion of Chinese language course at the Hong Kong University of Science and technology; and completion of Chinese language certificate program at the Shanghai International Studies University.

Civil Complaint filed by Cloud Whale Intelligent Innovation (Shenzhen) Co., Ltd. against Kaideng Enterprise Management (Shanghai) Co., Ltd., et al

_____
KELLY LEE

Sworn to before me this
January 26, 2026

_____
Signature, Notary Public

KAREN LEE
Notary Public, State of New York
No. 02LE6270452
Qualified in Kings County
Commission Expires 3/20/29

_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS
1250 BROADWAY, 7TH FLOOR, NEW YORK, NY 10001 | T 212.689.5555 | F 212.689.1059 | WWW.TRANSPERFECT.COM
OFFICES IN 92 CITIES WORLDWIDE