Chao "Wendy" Wang (SBN 289325)
wendy.wang@bakerbotts.com
Chuantong Wang (SBN 359121)
leon.wang@bakerbotts.com
**BAKER BOTTS L.L.P.**
1001 Page Mill Road, Bldg. 1, Suite 200
Palo Alto, California 94304
Telephone: (650) 739-7500

Alison Karol Sigurdsson (SBN 308043)
alison.sigurdsson@bakerbotts.com
**BAKER BOTTS L.L.P.**
101 California Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 291-6200

Zhe Wang (*pro hac vice*)
philip.wang@bayes.law
Kris Teng (*pro hac vice*)
kris.teng@bayes.law
BAYES PLLC
8260 Greensboro Dr., Suite 625
McLean, VA 22102
Tel: (703) 995-9887

J. Benjamin Bai (*pro hac vice*)
benjamin.bai@cn.kwm.com
King & Wood Mallesons LLP
50th Floor, 500 Fifth Avenue
New York, NY 10110
Tel.: (212) 319-4755
Fax: (917) 591-8167

Haolu Feng (*pro hac vice*)
harry.feng@cn.kwm.com
King & Wood Mallesons
17th Floor, One ICC, Shanghai ICC
999 Middle Huai Hai Road, Xuhui District
Shanghai 200031 China
Tel.: +86 21 2352 6585
Fax: +86 21 2412 6150

*Counsel for Defendants*
*YUNJING INTELLIGENT INNOVATION (SHENZHEN) CO., LTD., et al.*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CADENCE DESIGN SYSTEMS, INC., | Case No. 3:25-cv-00317-AMO |
| Plaintiff, | **OPPOSITION TO PLAINTIFF CADENCE DESIGN SYSTEMS, INC.'S MOTION TO SUPPLEMENT THE RECORD** |
| v. | Judge: Hon. Araceli Martínez-Olguín |
| YUNJING INTELLIGENT INNOVATION (SHENZHEN) CO., LTD. (D/B/A NARWAL), YUNJING INTELLIGENCE ROBOTICS (DONGGUAN) CO., LTD. (D/B/A NARWAL), YUNJING INTELLIGENCE TECHNOLOGY DEVELOPMENT (DONGGUAN) CO., LTD. (D/B/A NARWAL), JINGZHI INTELLIGENCE SUPPLY CHAIN (SHENZHEN) CO., LTD. (D/B/A NARWAL), YUNJING INTELLIGENCE (SHENZHEN) CO., LTD. (D/B/A NARWAL), | Hearing Date: May 28, 2026, at 2:00 pm[1] Action Filed: January 9, 2025 |
| Defendants. | |

---

[1] The parties have agreed that this motion can be decided on the papers and no hearing is necessary. Wang Decl. Ex. A.

**INTRODUCTION**

Defendants, Yunjing Intelligent Innovation (Shenzhen) Co., Ltd., Yunjing Intelligence Robotics (Dongguan) Co., Ltd., Yunjing Intelligence Technology Development (Dongguan) Co., Ltd., Jingzhi Intelligence Supply Chain (Shenzhen) Co., Ltd., Yunjing Intelligence (Shenzhen) Co., Ltd. (collectively, "Defendants" or "Yunjing"), submit this opposition to Plaintiff Cadence Design Systems, Inc.'s ("Plaintiff" or "Cadence") "motion to supplement the record[.]" Dkt. 85.

Cadence's motion to supplement the record is a procedurally improper attempt to reopen briefing on the motion to dismiss that the parties have fully submitted. After the parties completed briefings, Cadence filed a freestanding motion seeking to inject new, irrelevant materials into the record—materials drawn from foreign litigation which Cadence selectively presented to cast Yunjing in a negative light. Cadence failed to obtain prior Court approval before filing a post-reply motion, so Cadence's motion should be denied for this reason alone. Allowing such a filing would undermine the orderly resolution of motions and invite precisely the kind of serial, piecemeal briefing that the Civil Local Rules are designed to prevent.

Allowing such a filing would also be prejudicial to Yunjing. Cadence cannot establish good cause to supplement the record with materials unrelated to the personal-jurisdiction inquiry and improperly seeks judicial notice of disputed factual assertions drawn from foreign pleadings. The motion should therefore be struck or alternatively denied.

**RELEVANT BACKGROUND**

On January 9, 2025, Cadence filed the instant Complaint with two counts. The first count premises its DMCA claim under 17 U.S.C. § 1201 on the allegations that Defendants circumvented the technological measures that control access to Cadence's proprietary software ("Cadence Software") by "bypassing" the required entry of a license file and/or using "counterfeit" license files. Dkt. 1 at ¶¶ 3, 15 & 48 ("Compl."). In a thinly-veiled effort to bootstrap extraterritorial conduct into this forum, Cadence further asserts that Defendants breach the clickwrap Software License and Maintenance Agreement ("SLMA") allegedly associated with the Cadence Software and the Cadence License Manager (described as "a software management tool that controls use of the Cadence Software")." *Id.* at ¶¶ 12, 21, 27, 31–32 & 55–57. The Complaint's second count is a breach

of contract claim that hinges on the bare assertion that Defendants "accepted" SLMA terms by installing unauthorized software. *Id.* at ¶ 28.

On April 21, 2025, Yunjing moved to dismiss Cadence's Complaint on multiple grounds, arguing that Cadence failed to sufficiently plead facts establishing personal jurisdiction over Defendants, including by inadequately alleging a binding forum-selection clause, failing to plead purposeful direction toward this forum, and failing to establish specific jurisdiction even if purposeful direction were adequately alleged, failed to plead facts establishing proper venue, and failed to state any plausible claims, including by inadequately pleading DMCA violations in the United States and failing to adequately plead breach of contract. Dkt. 32.

Cadence filed its opposition to the motion to dismiss. Dkt. 49. Yunjing filed its reply. Dkt. 51. On July 29, 2025, the Court limited discovery to jurisdictional issues during the pendency of the motion to dismiss. Dkt. 62. The Court additionally indicated that the parties could submit supplemental briefing by stipulation or administrative motion. *Id.*

On about November 13, 2025, Defendants filed two antitrust lawsuits in China against Cadence's two Shanghai-based subsidiaries. Dkts. 86-2, 86-4, 86-6, 86-8. Yunjing's Chinese Lawsuits allege that Cadence abused its dominant position in China's EDA software market by charging Narwal unfairly excessive license fees, refusing to deal on reasonable terms, and discriminatorily pricing licenses, thereby excluding competition and causing substantial economic harm in violation of China's Anti-Monopoly Law. Dkts. 86-2, 86-4, 86-6, 86-8.

On November 18, 2025, both parties submitted motions for leave to file supplemental briefing regarding personal jurisdiction. Dkts. 77 & 80.  On January 26, 2026, Cadence filed the instant motion to supplement the record. Dkt. 85.

**ARGUMENT**

Cadence attempts to continue briefing on the motion to dismiss by filing the instant motion to supplement, while multiple motions remain submitted and pending before the Court. The motion seeks to paint Yunjing in a negative light through selectively presented materials and would extend briefing into precisely the kind of endless cycle the Civil Local Rules are designed to prevent. Accordingly, Yunjing respectfully requests that the Court strike, or alternatively deny, the motion

2

Case No. 3:25-CV-00317-AMO

because Cadence (I) failed to obtain Court approval as required by the Civil Local Rules; (II) failed to establish good cause to supplement the record; and (III) failed to show that the foreign litigation materials are proper subjects of judicial notice.

### I. Striking Is Warranted Because Cadence Supplemented the Record Without Prior Court Approval in Violation of the Civil Local Rules

The Court should strike Cadence's motion "request[ing] leave to supplement the record" for failure to comply with this Court's Civil Local Rules because Cadence did not seek Court approval to file the motion pursuant to Civil Local Rule 7-3(d). "The local rules are structured to deter an endless cycle of filings and counter-filings[.]" *Michael Taylor Designs, Inc. v. Travelers Prop. Cas. Co. of Am.*, 761 F. Supp. 2d 904, 909 (N.D. Cal. 2011), *aff'd*, 495 F. App'x 830 (9th Cir. 2012). Once reply briefing has closed, additional filings are prohibited, absent prior Court approval, except for the two narrow, non-argumentative filings permitted by Civil Local Rule 7-3(d): a timely objection to reply evidence or a notice identifying a newly issued judicial decision. *See Peoples v. Zeidan*, No. 16-CV-04099 LHK (PR), 2018 WL 3995917, at *12 (N.D. Cal. Aug. 20, 2018).

Here, Cadence's motion falls into neither narrow exception permitted by Civil Local Rule 7-3(d) and is therefore procedurally defective. Cadence did not seek or obtain Court approval before filing its motion. Cadence acknowledges that the motion was filed after briefing had closed. Dkt. 85 at 2 & 6. Cadence provides no explanation for bypassing the Local Rules' leave requirement, and the motion fails to show why prior authorization was not sought.

Nor can Cadence avoid these requirements by characterizing its filing as a standalone motion. The instant motion is expressly tied to the motion to dismiss, which has already been submitted for decision, and seeks to further augment the merits of the motion to dismiss. As such, it constitutes an improper attempt to reopen briefing without leave of Court. Indeed, Cadence's counsel confirmed that the motion was filed pursuant to Civil Local Rule 7-2, not as an administrative motion seeking leave. Wang Decl. Ex. A. For the same reason, the Court should deny Cadence's alternate request for judicial notice. *Roshan v. Lawrence*, 689 F. Supp. 3d 697, 703 (N.D. Cal. 2023) (denying post-motion request for judicial notice) (citing *Bias v. Moynihan*, 508 F.3d 1212, 1223–24 (9th Cir. 2007)). Repackaging its argument as a request for judicial notice does not cure such defect.

In sum, Cadence filed a freestanding noticed motion seeking to introduce new evidence after the parties completed briefing, so it is procedurally improper. Notably, Cadence has demonstrated its familiarity with the Civil Local Rules when it suits its interests, including by previously seeking leave of Court before filing a motion to supplement the record. *See* Dkt. 77. However, the Local Rules do not permit such selective compliance. *See* Civil L.R. 11-4(a)(2) (every member of the bar must "[c]omply with the Local Rules of this Court[]"); Civil L.R. 11-3 (pro hac vice attorneys "agree[] to abide by the Standards of Professional Conduct set forth in Civil L.R. 11-4, and to become familiar with the Local Rules"). That approach contravenes Civil Local Rule 7-3(d) and, on that basis alone, the motion should be stricken. *Reyes v. Fed. Express Corp.*, No. 23-CV-00693-AMO, 2023 WL 4183473, at *5–6 (N.D. Cal. June 23, 2023) (denying motion for leave to file a sur-reply where the application failed to comply with Civil L.R. 7-3(d), 7-11, and 7-10); *cf. Emelyanenko v. Strafach*, No. 23-CV-00570-AMO, 2024 WL 4336522, at *5 (N.D. Cal. Sept. 27, 2024) (clarifying that Civil L.R. 7-3(d) bars post-reply filings absent leave, but that a narrow errata correcting clerical errors is not an impermissible supplemental filing).

## II. Cadence Fails to Show Good Cause Because Its Purported Factual Statements Rest on Third-Party, Context-Stripped Statements Unrelated to Personal Jurisdiction Inquiry

The Court should deny Cadence's motion for leave to supplement the record because Cadence cannot establish good cause. Good cause, in part, requires a showing that the proffered material bears a direct relationship to the issue currently pending before the Court. *FTC – Forward Threat Control, LLC v. Dominion Harbor Enters.*, LLC, No. 5:19-CV-06590-EJD, 2020 WL 5545156, at *3 (N.D. Cal. Sept. 16, 2020).[2]

Cadence attempts to paint Yunjing in a negative light by selectively quoting four isolated sentences from just three pages of a Chinese complaint and exhibit list, and presenting them as purported admissions of authorized Cadence software use. Those snippets are extracted from a much broader foreign action containing numerous pleadings and exhibits, but Cadence relies on them in

---

[2] The *FTC* decision, which Cadence relies on in their motion, was determined on an administrative motion requesting leave to supplement, underscoring the very procedural prerequisite Cadence ignored here. *FTC – Forward Threat Control, LLC*, 2020 WL 5545156 at *3. The posture of the case itself confirms that seeking leave is the necessary first step.

isolation, divorced from their surrounding allegations and evidentiary posture, to elevate third-party commentary and generalized allegations into something they are not. In doing so, Cadence seeks to manufacture a contradiction in Yunjing's position and to invite the Court to resolve that manufactured dispute in Cadence's favor as a basis for exercising jurisdiction. That effort fails: the cited materials do not contradict Yunjing's sworn statements, and selective quotation cannot create an inconsistency where none exists.

Yunjing's position in its motion to dismiss for lack of personal jurisdiction is that it has no meaningful contacts with California because Defendants are Chinese entities with no California presence, registration, or employees, and it did not purposefully direct any conduct toward the forum. *See* Dkt. 32. Yunjing further argues that all accused conduct occurred entirely in China and that any purported shrinkwrap or clickwrap agreement is invalid and non-binding because its employees never assented to the terms, and any alleged installation would have occurred abroad by unauthorized users lacking authority to bind the companies. *See id.*

The Court should dismiss each phrase Cadence relies on for "good cause" for either being a third-party statement or taken out of context. First, Cadence's reliance on phrases such as "deeply tied to Cadence's tools" and "letting the entire engineering team learn a new language and rebuilding all workflows at significant cost and risk" is misplaced because those statements do not come from Yunjing. Dkt. 86-4 at 3. From the face of the exhibit, this quote comes from a Xueqiu.com, third-party industry article describing general switching costs in the EDA market. Dkt. 86-4 at 3 ("An article from Xueqiu.com titled 'A Simple Explanation of What Cadence (CDNS) Does as a Company'"). Such background commentary illustrates market dynamics; it is not evidence of Yunjing's authorized conduct, assent to Cadence's SLMA, or purposeful forum-directed activity.

Second, Cadence's reliance on the phrase "deeply embedded in Cadence's EDA software ecology" is misplaced. Dkt. 85 at 6. The cited language creates no contradiction when read at both the paragraph and sentence level. *See* Dkt. 86-2 at 3. The paragraph in the Chinese complaint explains general EDA market dynamics—how EDA ecosystems function and why switching costs arise. *Id.* ("EDA software is deeply coupled with upstream and downstream tools, intellectual property libraries, and foundry process files, forming a tight ecosystem."). It does not purport to describe any

1    particular company's authorized decision-making, assent to license terms, or forum-directed
2    conduct. *See id.*

3    Third, Cadence's reliance on the phrases "[s]witching to other competitors' EDA platform
4    will involve huge transition costs" and "extremely dependent on the EDA software provided by
5    Cadence" ignores the full context in which those statements appear. Dkt. 85 at 6. As with the prior
6    citation, the surrounding paragraph explains general EDA ecosystem dynamics and switching costs,
7    not Yunjing's conduct or corporate intent. Dkt. 86-2 at 3 ("EDA software is deeply coupled with
8    upstream and downstream tools, intellectual property libraries, and foundry process files, forming a
9    tight ecosystem.").

10   Moreover, the sentence explains how switching costs may "effectively lock[] users[,]" a
11   generalized category, into the Cadence ecosystem, without identifying Yunjing or any authorized
12   corporate decision. *Id.* ("Switching to other competitors' EDA platforms will involve huge transition
13   costs, effectively locking *users* into the EDA software ecosystem provided by Cadence, and making
14   them extremely dependent on the EDA software provided by Cadence."). Generalized references to
15   "users" do not constitute admissions of authorized use, assent, or purposeful availment by Yunjing.

16   Finally, Cadence relies on the phrases "had to seek alternative EDA software products[,]"
17   "replace all the relevant infrastructure," "highly dependent on [Cadence's] EDA software," and
18   "huge economic losses and transition costs." Dkt. 85 at 4. Read in full context, however, the sentence
19   does not address whether any use of Cadence software was authorized or whether any individual had
20   authority to bind Yunjing. Instead, the focus was on Yunjing's pre-licensing investment in the midst
21   of settlement negotiations and forced switching to another EDA software product due to Cadence's
22   monopolistic conduct. Dkt. 86-4 at 5 ("Due to the monopolistic conduct of [Cadence], [Yunjing] had
23   to seek alternative EDA software products, resulting in the [Yunjing] having to replace all the
24   relevant infrastructure that is highly dependent on the [Cadence] EDA software products, which will
25   result in huge economic losses and transition costs."). The passage describes alleged antitrust harm
26   and compelled migration—not voluntary adoption, assent, or authorized use.

27   None of the cited statements admit that Yunjing authorized employees to use Cadence
28   software without a license. To the contrary, the cited language reflects (1) third-party commentary

offered to illustrate Cadence's market power, (2) industry-wide realities regarding EDA software dependence, and (3) economic consequences associated with abandoned, pre-licensing investments—not admissions of authorized or unlawful use. Cadence's argument depends on selective quotation from a small portion of foreign pleadings, stripped of context, to manufacture admissions that do not exist. The Court should reject it.

Ultimately, Cadence cannot establish "good cause" to supplement the record. The proffered materials are irrelevant to the Rule 12(b)(2) personal-jurisdiction inquiry, do not bear a direct relationship to the issues currently before the Court, and are instead selectively quoted from foreign litigation to advance merits-based arguments and manufacture a purported factual dispute where none exists. Allowing supplementation on this basis would improperly expand the jurisdictional inquiry beyond Defendants' forum-directed contacts and invite precisely the kind of serial, piecemeal briefing the Local Rules are designed to prevent. *See Michael Taylor Designs, Inc.*, 761 F. Supp. 2d at 909 (noting that the Local Rules are structured to deter "an endless cycle of filings and counter-filings"). Because Cadence has failed to meet its burden of establishing "good cause," its motion for leave to supplement the record should be denied.

### III. Cadence's Request for Judicial Notice Must Be Denied Because It Improperly Seeks to Establish Disputed Facts

Cadence's alternative request for judicial notice must be denied because it seeks judicial notice of disputed facts. Judicial notice permits a court to recognize the existence of certain documents or the fact that statements were made—not to accept the truth, accuracy, or legal effect of disputed assertions contained within those documents. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999–1000 (9th Cir. 2018). "[I]t is appropriate to take judicial notice only of the contents in the submitted documents that are relevant to the issues presented[.]" *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020). There is no doubt that court documents are susceptible to judicial notice; however, "[J]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth. *Khoja*, 899 F.3d at 999.

Here, Cadence's request fails on the merits because it rests on a contradiction of its own making: Cadence asks the Court to take judicial notice of foreign court documents while simultaneously relying on disputed assertions in those documents to establish "good cause" to supplement the record. In other words, Cadence seeks to use judicial notice to do what the doctrine forbids: establish disputed facts. Indeed, judicial notice permits a court to recognize the existence of filings or the fact that statements were made—not to credit disputed factual assertions. *Id.*

Cadence's briefing makes it clear that it does not seek judicial notice only for purportedly "contradictory" statements. Dkt. 85 at 7. Cadence expressly relies on the cited foreign pleadings as substantive facts, arguing that they "demonstrate[] that Narwal's actual policy and company directive is *to use* Cadence's software without authorization" and that Yunjing employees acted "with authority to bind the company." *Id.* at 6. Those assertions are not offered simply to show what was filed in a foreign court; they are offered to inject factual material into the record in order to create a dispute—precisely the use judicial notice forbids.

Cadence's own arguments confirm that it seeks to use the Chinese filings to establish disputed facts. Cadence invokes those same materials to argue that they create a factual dispute sufficient to establish "good cause." However, documents offered to create or resolve factual disputes are, by definition, not appropriate subjects of judicial notice. *Khoja*, 899 F.3d at 999. This contradiction is irreconcilable. Cadence cannot simultaneously argue that the foreign pleadings generate disputed facts to substantiate its "good cause" argument and that those same assertions are suitable for judicial notice. Yunjing also disputes Cadence's characterization of the materials as "contradictory" and maintains that they do not undermine Yunjing's motion to dismiss position. This very dispute confirms that the foreign court materials are not appropriate subjects of judicial notice.

In short, this is not a proper request for judicial notice. It is an effort to have the Court accept disputed statements for their truth and legal effect—precisely what judicial notice prohibits. *See Threshold Enters. Ltd.*, 445 F. Supp. 3d at 146–47 (citing *Khoja*, 899 F.3d at 999) ("In fact, dumping large swaths of material into a request for judicial notice has become commonplace."). The request should be denied.

# CONCLUSION

Accordingly, the Court should strike Cadence's procedurally improper motion and, in any event, deny it on the merits because Cadence has shown neither good cause to supplement the record nor any basis for judicial notice of disputed assertions from foreign pleadings.

DATED: January 30, 2026

By: */s/ Chao "Wendy" Wang*
Chao "Wendy" Wang (Bar No. 289325)
wendy.wang@bakerbotts.com
Chuantong "Leon" Wang (Bar No. 359121)
leon.wang@bakerbotts.com
BAKER BOTTS LLP
1001 Page Mil Rd., Ste. 200
Palo Alto, CA 94304
Tel: (650) 739-7514
Fax: (650) 739-7614

Alison Sigurdsson (Bar No. 308043)
alison.sigurdsson@bakerbotts.com
BAKER BOTTS LLP
101 California St., Ste. 3200
San Francisco, CA 94111
Tel: (415) 291-6248

Zhe Wang (*appearance pro hac vice*)
philip.wang@bayes.law
Kris Teng (*appearance pro hac vice*)
kris.teng@bayes.law
BAYES PLLC
8260 Greensboro Dr., Suite 625
McLean, VA 22102
Tel: (703) 995-9887
Fax: (703) 821-8128

J. Benjamin Bai (*appearance pro hac vice*)
benjamin.bai@cn.kwm.com
King & Wood Mallesons LLP
50th Floor, 500 Fifth Avenue
New York, NY 10110
Tel.: (212) 319-4755
Fax: (917) 591-8167

Haolu Feng (*appearance pro hac vice*)
harry.feng@cn.kwm.com
King & Wood Mallesons
17th Floor, One ICC, Shanghai ICC
999 Middle Huai Hai Road, Xuhui District
Shanghai 200031 China
Tel.: +86 21 2352 6585
Fax: +86 21 2412 6150

*Attorney for Defendants Yunjing Intelligent Innovation (Shenzhen) Co., Ltd. (d/b/a Narwal), Yunjing Intelligence Robotics (Dongguan) Co., Ltd. (d/b/a Narwal), Yunjing Intelligence Technology Development (Dongguan) Co., Ltd. (d/b/a Narwal), Jingzhi Intelligence Supply Chain (Shenzhen) Co., Ltd. (d/b/a Narwal), and Yungjing Intelligence (Shenzhen) Co., Ltd. (d/b/a Narwal)*